**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IWA-FOREST INDUSTRY PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>   v.<br><br>D-MARKET ELEKTRONIK HIZMETLER VE TICARET ANONIM ŞIRKETI a/k/a D-MARKET ELECTRONIC SERVICES & TRADING d/b/a HEPSIBURADA, MEHMET MURAT EMIRDAĞ, HALIL KORHAN ÖZ, HANZADE VASFIYE DOGAN BOYNER, ERMAN KALKANDELEN, MEHMET EROL ÇAMUR, CEMAL AHMET BOZER, VUSLAT DOĞAN SABANCI, MUSTAFA AYDEMIR, TOLGA BABALI, COLLEEN A. DE VRIES, COGENCY GLOBAL INC., MORGAN STANLEY & CO. LLC, J.P. MORGAN SECURITIES LLC, GOLDMAN, SACHS & CO. LLC, BOFA SECURITIES, INC., UBS SECURITIES LLC, and TURKCOMMERCE B.V.,<br><br>     Defendants. | Case No. 1:21-cv-08634-PKC<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF HEPSIBURADA'S AND THE UNDERWRITER DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT OR ALTERNATIVELY TO STAY THE ACTION**

LATHAM & WATKINS LLP
Jamie L. Wine
Kevin M. McDonough
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200

*Attorneys for Defendant D-MARKET Elektronik Hizmetler ve Ticaret Anonim Şirketi a/k/a D-MARKET Electronic Services & Trading d/b/a/ Hepsiburada*

April 15, 2022

SHEARMAN & STERLING LLP
Daniel Lewis
Agnès Dunogué
Benjamin Klebanoff
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000

*Attorneys for the Underwriter Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ......................................................................................................................4

    A.    Hepsiburada & The Turkish Government's Response to COVID-19 .....................4

    B.    Hepsiburada's Initial Public Offering....................................................................4

    C.    Hepsiburada's Post-IPO Results ...........................................................................6

    D.    This Lawsuit & The Parallel State Litigation .......................................................7

ARGUMENT............................................................................................................................9

I.    PLAINTIFF FAILS TO ALLEGE AN ACTIONABLE MISSTATEMENT OR
OMISSION UNDER THE SECURITIES ACT ............................................................9

    A.    Plaintiff Does Not Allege Any Misstatements In The Registration
Statement...............................................................................................................9

    B.    Hepsiburada Had No Duty To Make Additional Disclosures ...............................11

        1.    No Duty To Disclose Q2 2021 Results.........................................................12

        2.    No Duty To Disclose Additional COVID-Related Information ................15

        3.    No Duty To Disclose Additional Information About Investments,
Discounts, Or Advertising .........................................................................16

    C.    Plaintiff Fails To Allege Any Violation Of Item 303 ...........................................18

    D.    Plaintiff's Challenges To Hepsiburada's Risk Factors Fail..................................20

    E.    If Plaintiff Fails to Amend Within 21 Days, The Complaint Should Be
Dismissed With Prejudice....................................................................................22

II.    ALTERNATIVELY, THE COURT SHOULD STAY OR DISMISS THIS
ACTION UNDER *COLORADO RIVER* .......................................................................24

CONCLUSION.........................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Arfa v. Mecox Lane Ltd.*,
2012 WL 697155 (S.D.N.Y. Mar. 5, 2012), *aff'd*, 504 F. App'x 14 (2d Cir.
2012) ..................................................................................................................18

*Asay v. Pinduoduo Inc.*,
2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020), *aff'd*, 2021 WL 3871269 (2d
Cir. Aug. 31, 2021) ................................................................12, 17, 20, 22

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)...................................................................................1

*Barilli v. Sky Solar Holdings, Ltd.*,
389 F. Supp. 3d 232 (S.D.N.Y. 2019)...................................................................20

*In re Canandaigua Sec. Litig.*,
944 F. Supp. 1202 (S.D.N.Y. 1996)......................................................................17

*Colorado River Water Conservation District v. United States,*
424 U.S. 800 (1976)..............................................................................................24

*In re Coty Inc. Sec. Litig.*,
2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) .......................................14, 20, 21, 22

*De Cisneros v. Younger*,
871 F.2d 305 (2d Cir. 1989)..................................................................................25

*DeMaria v. Andersen*,
318 F.3d 170 (2d Cir. 2003)...........................................................................13, 14

*Densply Sirona, Inc. v. XXX*,
2019 WL 4695724 (N.Y. Sup. Ct. 2019), *aff'd*, 141 N.Y.S.3d 462 (N.Y. App.
Div. 2021) .............................................................................................................16

*In re Express Scripts Holding Co. Sec. Litig.*,
2017 WL 3278930 (S.D.N.Y. Aug. 1, 2017).........................................................16

*Fogel v. Wal-Mart de México SAB de CV*,
2017 WL 751155 (S.D.N.Y. Feb. 27, 2017)...........................................................9

*In re Fyre Festival Litig.*,
399 F. Supp. 3d 203 (S.D.N.Y. 2019)...................................................................23

*Guity v. Santos*,
    2020 WL 4340417 (S.D.N.Y. July 28, 2020) ..........................................................................23

*Hutchison v. Deutsche Bank Sec. Inc.*,
    647 F.3d 479 (2d Cir. 2011)..............................................................................................20

*In re IAC/InterActiveCorp Sec. Litig.*,
    695 F. Supp. 2d 109 (S.D.N.Y. 2010)................................................................................20

*Inn Chu Trading Co. v. Sara Lee Corp.*,
    810 F. Supp. 501 (S.D.N.Y. 1992)....................................................................................25

*Johnson v. Sequans Commc'ns S.A.*,
    2013 WL 214297 (S.D.N.Y. Jan. 17, 2013) .......................................................................11

*Lau v. Opera Ltd.*,
    527 F. Supp. 3d 537 (S.D.N.Y. 2021)......................................................................13, 16, 18

*In re Lone Pine Res., Inc.*,
    2014 WL 1259653 (S.D.N.Y. Mar. 27, 2014) ....................................................................25

*Luo v. Sogou, Inc.*,
    465 F. Supp. 3d 393 (S.D.N.Y. 2020)................................................................................18

*Medina v. Tremor Video, Inc.*,
    2015 WL 1000011 (S.D.N.Y. Mar. 5, 2015), *aff'd*, 640 F. App'x 45 (2d Cir.
    2016) ..............................................................................................................................9

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010)..............................................................................................25

*Mouchantaf v. Int'l Modeling & Talent Ass'n*,
    368 F. Supp. 2d 303 (S.D.N.Y. 2005)................................................................................25

*In re Noah Educ. Holdings, Ltd. Sec. Litig.*,
    2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010) ....................................................................21

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)........................................................................................................10

*In re Proshares Tr. II Sec. Litig.*,
    2020 WL 71007 (S.D.N.Y. Jan. 3, 2020), *aff'd*, 839 F. App'x 649 (2d Cir.
    2021) ..............................................................................................................................17

*In re ProShares Tr. Sec. Litig.*,
    728 F.3d 96 (2d Cir. 2013)................................................................................................16

*Ret. Fund v. Biovail Corp.*,
    615 F. Supp. 2d 218 (S.D.N.Y. 2009)..................................................................................24

*Rubinstein v. Credit Suisse Grp. AG*,
    457 F. Supp. 3d 289 (S.D.N.Y. 2020)........................................................................15, 19, 21

*Rudman v. CHC Grp. LTD.*,
    217 F. Supp. 3d 718 (S.D.N.Y. 2016).................................................................................11

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996)..................................................................................................17

*In re Sanofi Sec. Litig.*,
    87 F. Supp. 3d 510 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816
    F.3d 199 (2d Cir. 2016)......................................................................................................10

*Singh v. Schikan*,
    106 F. Supp. 3d 439 (S.D.N.Y. 2015)..................................................................................11

*Stadnick v. Vivint Solar, Inc.*,
    2015 WL 8492757 (S.D.N.Y. Dec. 10, 2015), *aff'd*, 861 F.3d 31 (2d Cir.
    2017) ........................................................................................................................................9

*Stadnick v. Vivint Solar, Inc.*,
    861 F.3d 31 (2d Cir. 2017)............................................................................................13, 14

*Steinberg v. PRT Grp., Inc.*,
    88 F. Supp. 2d 294 (S.D.N.Y. 2000)...................................................................................22

*In re Turkcell Iletisim Hizmetler A.S. Sec. Litig.*,
    202 F. Supp. 2d 8 (S.D.N.Y. 2001).....................................................................................13

*In re UBS AG Sec. Litig.*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd*, 752 F.3d 173 (2d Cir.
    2014) ......................................................................................................................................12

*Willard v. UP Fintech Holding Ltd.*,
    527 F. Supp. 3d 609 (S.D.N.Y. 2021)................................................................................ *passim*

**STATUTES**

15 U.S.C. § 77g............................................................................................................................12

15 U.S.C. § 77k.............................................................................................................................9

15 U.S.C. § 77*l*............................................................................................................................9

**RULES**

Fed. R. Civ. P. 16................................................................................................................23

**REGULATIONS**

17 C.F.R. § 210.3-12..........................................................................................................12

17 C.F.R. § 229.303 ...........................................................................................................19

Defendant D-MARKET Elektronik Hizmetler ve Ticaret Anonim Şirketi a/k/a D-MARKET Electronic Services & Trading d/b/a/ Hepsiburada ("Hepsiburada" or the "Company") and Defendants BofA Securities, Inc., Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Morgan Stanley & Co. LLC, and UBS Securities LLC (collectively, the "Underwriter Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint (the "Complaint") (Ex. 1, cited as "¶_")[1] of Lead Plaintiff IWA-Forest Industry Pension Plan ("Plaintiff") with prejudice, or alternatively, to stay this action.

## PRELIMINARY STATEMENT

In this case, Plaintiff tries to reverse engineer a class action under the Securities Act of 1933 ("Securities Act") based on a decline in the price of Hepsiburada's shares after the Company pointed to headwinds that it cautioned, in its public disclosures, could affect future performance. But Plaintiff's Complaint fails to state a claim for the fundamental reason that it does not identify any false or misleading statement in the Company's Registration Statement, let alone a *materially* false or misleading statement. Accordingly, the Complaint should be dismissed.

Hepsiburada went public on July 1, 2021, during the long-running and variably spiking COVID-19 pandemic. At the time, Hepsiburada made disclosures in its Registration Statement that were accurate—which even Plaintiff does not dispute—about its financial performance in prior fiscal years and the first quarter of 2021 ("Q1 2021"), the last quarter with finalized results prior to the initial public offering ("IPO"). Those disclosures stated that Hepsiburada had experienced significant growth in revenue and gross merchandise value ("GMV") in the years

---

[1] Unless otherwise indicated herein, all internal citations and quotations are omitted, emphasis is added, and citations to "Ex. __" refer to exhibits attached to the Declaration of Kevin M. McDonough, submitted herewith. The Court may consider any documents incorporated into the Complaint by reference, as well as disclosure documents filed with the SEC. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

leading up to the IPO and that the Company's financial results in 2020 and Q1 2021 (which ended March 31, 2021) had been positively impacted when Turkish consumers shifted to online shopping in response to COVID-19. But the disclosures also made clear that Hepsiburada could not guarantee that its business would continue to grow at the same rate as in prior periods, and included extensive warnings about the uncertainty surrounding COVID-19's impact on future performance.

On August 26, 2021, Hepsiburada announced results for the second quarter of 2021 (which ended June 30, 2021) ("Q2 2021"), and the Company again reported growth in revenue and GMV, even compared to its tremendous growth in the second quarter of 2020 ("Q2 2020")—during which there had been a seismic shift to online shopping in response to the initial outbreak of COVID-19. As Plaintiff neglects to mention, media outlets cheered Hepsiburada's Q2 2021 results, emphasizing that sales had "surged even after strong growth last year." *See, e.g.*, Ex. 9, Aug. 26, 2021 *Reuters* Article, at 1. Regarding its outlook for the third and fourth quarters of 2021, Hepsiburada noted that several developments, including the extension of a July national holiday period and the lifting of COVID-19 restrictions, were adversely impacting consumer behavior in the period *following* the IPO. After that announcement, Hepsiburada's share price declined.

Seizing on that decline, Plaintiff asserts that it followed from the correction of material misstatements made in the Registration Statement. But the Complaint does not identify a *single* inaccurate statement of fact in Hepsiburada's 281-page Registration Statement. Instead, Plaintiff contends the Company's statements were misleading or otherwise violated SEC disclosure requirements because Hepsiburada should have said more than it did. Specifically, Plaintiff alleges Hepsiburada was obligated to disclose "deceleration" in revenue and GMV growth, increased advertising expenses, and declines in gross contribution margin, EBITDA, and EBITDA as a percentage of GMV that occurred in Q2 2021; that this so-called "materially deteriorated" growth

was due to brick-and-mortar businesses reopening, and customers "shifting away" from online shopping, following the alleged lifting of COVID-19 lockdown measures starting in March 2021; and the alleged "implementation" of strategic investments, discounts offered to customers, and increased advertising (and their effect on profitability and margins) prior to the IPO.

Plaintiff's omission theory of liability fails as a matter of law.  As to Hepsiburada's financial results for Q2 2021—the quarter *after* the reporting period covered in the Registration Statement, and for which results were not finalized until eight weeks after the Registration Statement's effective date—the federal securities laws did not require Hepsiburada to supplement the accurate financial information disclosed in the Registration Statement, let alone add yet-to-be-finalized information about a reporting period expressly beyond the Registration Statement's scope.  Moreover, Plaintiff alleges no facts showing that changes in COVID-19 restrictions caused Hepsiburada's growth to "materially deteriorate[]" prior to the IPO or even anything inconsistent with prior fluctuations in the Company's performance; to the contrary, Hepsiburada was still growing in Q2 2021, and documents upon which the Complaint relies confirm that neither the pandemic, nor social distancing measures, ended in March 2021.  And, what Hepsiburada included in the Registration Statement regarding its ongoing "significant" investments and marketing efforts, as well as their impact on the Company's profitability and margins in the near term, was more than sufficient under the securities laws.

At bottom, Plaintiff cannot ignore the language of the Registration Statement or plead an actionable omission merely by declaring that developments post-dating the periods at issue in the Registration Statement (and even post-dating the IPO) somehow made Hepsiburada's accurate statements about the earlier, covered periods materially misleading.  Having failed to allege any actionable misstatement or omission, Plaintiff cannot sustain a Securities Act claim against

3

Hepsiburada or the Underwriter Defendants.  Accordingly, the Complaint should be dismissed. And, should Plaintiff fail to amend by the Court's May 6, 2022 deadline, that dismissal should be with prejudice, as Plaintiff will be unable to show good cause to amend and, in any event, further amendment would be futile.  Alternatively, the Court should exercise its discretion to dismiss or stay this case under the *Colorado River* doctrine in light of a parallel, earlier-filed action.

## BACKGROUND

### A.  Hepsiburada & The Turkish Government's Response to COVID-19

Hepsiburada is a pioneer of e-commerce in Turkey that provides platforms for online shopping across numerous product categories.  ¶¶ 32, 52.  For the past two years, the Company has operated amid the uncertainty caused by the COVID-19 pandemic and the Turkish government's imposing or easing social distancing measures as infection rates surged or declined. *See* ¶¶ 54-55.  The government first implemented significant lockdown measures in response to the pandemic in March 2020.  ¶ 54.  It attempted to ease those restrictions later that year, only to reinstate them in November 2020 after cases rose.  Ex. 4, WSWS Article, at 3; Ex. 3, Lexology Article, at 1 (both cited at ¶ 15 n.6).  After the government's lifting of restrictions in early March 2021 again resulted in increased infections, *see* ¶ 15 & n.6; Ex. 4, WSWS Article, at 1-2, the government re-imposed a lengthy lockdown, which it did not fully lift until July 1, 2021, *see* Ex. 7, Aug. 26, 2021 Form 6-K, at 3 (cited at, *e.g.*, ¶ 74).

### B.  Hepsiburada's Initial Public Offering

After submitting an initial registration statement to the SEC in May 2021, and an amendment thereafter, Hepsiburada filed its final Form F-1 registration statement on June 23, 2021, which the SEC declared effective on June 30, 2021—the last day of Hepsiburada's second quarter of 2021.  ¶¶ 57-59.  The next day, Hepsiburada filed a prospectus and its shares began trading on the NASDAQ.  ¶¶ 11, 59.

4

The registration statement, which included the prospectus (the "Registration Statement") (Ex. 6, cited as "RS"), accurately described Hepsiburada's performance in 2018, 2019, 2020, and Q1 2021. *E.g.*, RS at 3, 12, 67-68, 103-04. As relevant here, the Registration Statement reported that Hepsiburada experienced impressive annual growth in revenue from 2018 through 2020 (33% growth from 2018 to 2019, and 145% from 2019 to 2020), as well as an increase in revenue in Q1 2021 compared to the first quarter of 2020 ("Q1 2020") (by 66%). ¶ 63. In those same periods, Hepsiburada also reported significant annual and quarterly growth in GMV, a key metric used to measure the volume of its operations (56% growth from 2018 to 2019, 111% from 2019 to 2020, and 95% from Q1 2020 to Q1 2021). *Id.*; RS at 79. The Registration Statement disclosed that, while the Company enjoyed positive EBITDA in 2018 and 2019, EBITDA was negative 87.8 million Turkish Lira ("TRY") in 2020 and negative TRY 103.7 million in Q1 2021. RS at 19.

Consistent with the reported negative EBITDA, the Registration Statement warned that Hepsiburada had incurred and was "likely to continue to incur losses as [it] continue[d] to invest in order to grow," including through "expected increases" in operating expenses and capital expenditures, and use of "significant resources" for "marketing efforts" to grow its customer base. *Id.* at 11, 24-25, 27; *see also id.* at 74-75 (disclosing that "in the near term," the Company's "strategic investments are likely to have a negative impact on [its] margins"). Advertising expenses also increased 63.5% between 2018 and 2019, 326.5% from 2019 to 2020, and 40.7% from Q1 2020 to Q1 2021, as part of "a long-term marketing strategy to further strengthen [Hepsiburada's] brand." *Id.* at 82, 84, 86. Lastly, the Registration Statement reported that gross contribution margin (revenues less cost of inventory sold, as a percentage of GMV) and EBITDA as a percentage of GMV both increased from 2018 to 2019, then decreased from 2019 to 2020, and from Q1 2020 to Q1 2021. *Id.* at 22-23, 78.

With respect to COVID-19, the Registration Statement explained that lockdowns had resulted in a nationwide shift to online shopping, positively impacting the Company's financial results in 2020 and Q1 2021. *See, e.g.*, *id.* at 75-76, 81, 113, F-11, F-46. But it also cautioned that "historical results" were "not necessarily indicative of results expected in any future period," *i.e.*, any period after Q1 2021, *id.* at 18, 29-30, and that given the "fluid" and "rapidly evolv[ing]" public health situation, "the ultimate impact of COVID-19 on [Hepsiburada's] business, financial condition and results of operations [could not] be reasonably estimated," *id.* at 30.

## C.    Hepsiburada's Post-IPO Results

On August 26, 2021, Hepsiburada announced its Q2 2021 results, which reflected continued growth. ¶¶ 72-74. In fact, Hepsiburada achieved growth in GMV (38.2%) and revenue (5.2%), even compared to the strong baseline set by the second quarter of 2020, during which there had been a rapid shift to online shopping in response to COVID-19.[2] *See* ¶¶ 54, 72-74; Ex. 7, Aug. 26, 2021 Form 6-K, at 1-2. In Q2 2021, orders increased by 37.9% to a record 13.1 million (compared to 9.5 million in Q2 2020), and free cash flow rose dramatically to TRY 705.4 million (compared to TRY 136.1 million in Q2 2020). Ex. 7, Aug. 26, 2021 Form 6-K, at 1-2. There was "continued growth" in "active customer base and order frequency." *Id.* at 2.

EBITDA in Q2 2021 was again negative (negative TRY 188.6 million), with corresponding declines in gross contribution margin and EBITDA as a percentage of GMV from Q2 2020 to Q2 2021. *Id.* at 1-2, 9; ¶ 75. EBITDA was negative due to "lower gross contribution driven primarily by investments to fortify [Hepsiburada's] market position in electronics, investments to penetrate in high frequency categories as well as higher customer demand for low margin products." ¶¶ 14, 79; Ex. 7, Aug. 26, 2021 Form 6-K, at 1. Advertising expenses again increased (by 97.9%) from

---

[2] With the baseline effect of COVID-19 normalized, GMV grew by 68% in Q1 2021 and 86% in Q2 2021. Ex. 7, Aug. 26, 2021 Form 6-K, at 3.

Q2 2020 to Q2 2021.  ¶ 76; Ex. 7, Aug. 26, 2021 Form 6-K, at 8.  Hepsiburada noted that it "continued to widen [its] selection with expanding merchant base and competitive prices in the market" through "strategic margin investments as well as discounts given to [its] customers for temporary marketing campaigns."  ¶¶ 14, 78, 80-82; Ex. 7, Aug. 26, 2021 Form 6-K, at 6-7.  Media outlets remarked that Q2 2021 "sales on [Hepsiburada's] platforms surged even after strong growth last year," during "the initial COVID-19 lockdown."  Ex. 7, Aug. 26, 2021 *Reuters* Article, at 1.

In the "Outlook" section of its announcement, Hepsiburada stated that "[a]s the second half of the year began, the Turkish e-commerce market [] encountered several challenges," including the "extension of the bank holiday period" in July, "the lift-off of lock-down measures as of July 1st," and devastating wildfires and flooding in August.  Ex. 7, Aug. 26, 2021 Form 6-K, at 3. Hepsiburada reiterated that outlook on an earnings call with analysts the same day, Ex. 8, Aug. 26, 2021 Earnings Call Tr., at 7, and provided similar warnings again in November 2021, Ex. 11, Nov. 12, 2021 Form 6-K.  Following the November announcement, an analyst noted the Company's stock had "fallen sharply since it warned about the *headwinds*" in August.  Ex. 12, Nov. 12, 2021 *Motley Fool* Article, at 2.

### D.    This Lawsuit & The Parallel State Litigation

Two lawsuits followed Hepsiburada's share price decline.  On September 28, 2021, James Benson filed a putative securities class action (the "*Benson* Action" or "*Benson*") alleging violations of Sections 11 and 15 of the Securities Act in the Supreme Court of the State of New York.  Ex. 10, *Benson* Compl.  Nearly one month later, on October 21, 2021, Golden Horn Asset & Management Ltd. filed the initial complaint in this action, asserting the very same claims, also arising out of Hepsiburada's IPO.  ECF No. 1.

On December 10, 2021, Mr. Benson filed an amended complaint asserting claims under Section 11 against all defendants named in this case, plus one additional individual defendant,

7

along with Section 15 claims against alleged control persons.  Ex. 13, *Benson* Am. Compl. at 35-36, ¶¶ 25-34, 36-37, 39-41.  The amended complaint in *Benson* alleges that the Registration Statement omitted information regarding Hepsiburada's slowdown in GMV and revenue growth in Q2 2021, the negative impact on Hepsiburada's business caused by the easing of COVID-19 lockdown restrictions in Turkey, and Hepsiburada's need to make investments and offer discounts in Q2 2021.  *Id.* at ¶¶ 4-5, 120-23, 126-27, 136, 139-46.

On January 5, 2022, this Court appointed Plaintiff as lead plaintiff in this action and approved its selection of lead counsel.  ECF No. 36.  Plaintiff filed the Complaint on February 4, 2022.  The Complaint asserts claims under Sections 11, 12, and 15 of the Securities Act and names as defendants Hepsiburada; current and former Hepsiburada officers and/or directors Mehmet Murat Emirdağ, Halil Korhan Öz, Hanzade Vasfiye Doğan Boyner, Erman Kalkandelen, Mehmet Erol Çamur, Cemal Ahmet Bozer, Vuslat Doğan Sabanci, Mustafa Aydemir, and Tolga Babali; Hepsiburada's U.S. agent for service of process, Cogency Global Inc. ("Cogency"), and Cogency employee Colleen De Vries; TurkCommerce B.V.; and the Underwriter Defendants.  Compl. 27-32, ¶¶ 31-49, 51.  The Complaint alleges that the Registration Statement failed to disclose deceleration in GMV and revenue growth (as well as other financial metrics) in Q2 2021; effects of the lifting of COVID-19 lockdown measures; and the "implementation" of strategic investments, discounts offered to customers, and increased advertising in Q2 2021.  ¶¶ 7, 62-71.

Four days after the filing of the Complaint, on February 8, 2022, Hepsiburada, TurkCommerce B.V., the Underwriter Defendants, Cogency, and Ms. De Vries moved to dismiss the amended complaint in *Benson*.  *Benson v. Hepsiburada*, No. 655701/2021 (N.Y. Sup. Ct.), Dkt. Nos. 72, 87, 95.  Subsequently, Hepsiburada and the Underwriter Defendants submitted a pre-motion letter in this action, previewing the arguments contained in this motion.  ECF. No. 44.

In response, Plaintiff chose not to amend its Complaint, "stand[ing]" on the allegations in the Complaint as "sufficient to support" its claims. ECF No. 45 at 1. The Court's March 14, 2022 Scheduling Order provides that Plaintiff may further amend the Complaint, after reviewing this motion, up until 21 days from the filing of the motion (*i.e.*, May 6, 2022). *See* ECF No. 46 at 2.

## ARGUMENT

### I.    PLAINTIFF FAILS TO ALLEGE AN ACTIONABLE MISSTATEMENT OR OMISSION UNDER THE SECURITIES ACT

Plaintiff's Securities Act claims fail because the Complaint does not allege that the Registration Statement contained any materially misleading statement based on facts that existed when the Registration Statement became effective. 15 U.S.C. § 77k(a); *see, e.g.*, *Stadnick v. Vivint Solar, Inc.*, 2015 WL 8492757, at *10, *15 (S.D.N.Y. Dec. 10, 2015), *aff'd*, 861 F.3d 31 (2d Cir. 2017); *see also* 15 U.S.C. § 77*l*(a)(2).[3]

#### A.    Plaintiff Does Not Allege Any Misstatements In The Registration Statement

Plaintiff challenges statements describing Hepsiburada's past performance—*i.e.*, its annual growth in revenue and GMV in recent years, as well as an increase in revenue and GMV in Q1 2021 compared to Q1 2020. ¶ 63. But Plaintiff does not dispute that those are "accurate statements of historical fact," which are "non-actionable" under the securities laws. *Medina v. Tremor Video, Inc.*, 2015 WL 1000011, at *4 (S.D.N.Y. Mar. 5, 2015), *aff'd*, 640 F. App'x 45 (2d Cir. 2016).

Moreover, a number of the challenged statements are non-actionable because they are opinion statements, puffery, or both. For example, Plaintiff challenges Hepsiburada's statement that "we believe" growth trends in the frequency of orders and number of active customers "will

---

[3] A table identifying the challenged statements and omissions, and the reason(s) why each should be dismissed, is attached as Exhibit 2. *See Fogel v. Wal-Mart de México SAB de CV*, 2017 WL 751155, at *18 (S.D.N.Y. Feb. 27, 2017) (accepting appendices that serve as "organizational tools").

continue to positively impact our business, with further Active Customer base growth, strong cohort performance and increasing operational efficiency driving improvement in unit economics and profitability." ¶¶ 62-63. It also challenges the statement that "we expect" the adoption of "online shopping behavior during the pandemic . . . to become permanent." ¶ 66. These quintessential statements of opinion are non-actionable under Sections 11 and 12 because Plaintiff does not plead that anyone at Hepsiburada disbelieved them, or that they included a false supporting fact. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-86 (2015); *see also In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 531 (S.D.N.Y. 2015) (statements about company's "expectations for the future" are "statements of opinion"), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016).

Instead, Plaintiff relies on an omission theory, *see* ¶¶ 62, 64, 67, which requires that it plead "particular (and material) facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context," which is "no small task for an investor." *Omnicare*, 575 U.S. at 194. That theory fails for the reasons explained *infra* Section I.B, and because the Complaint contains no allegations that Hepsiburada's frequency of orders or active customer base were any different from what the Company disclosed, or that consumers in the Turkish market were no longer shopping online.[4] The Complaint thus is devoid of any non-conclusory allegations showing the allegedly omitted information "conflict[ed]" in any way "with what a reasonable investor would take from the statement itself." *Id.* at 189.

---

[4] Indeed, there was "continued growth" in "active customer base and order frequency" in Q2 2021. Ex. 7, Aug. 26, 2021 Form 6-K, at 2. And coverage of the April 6, 2021 news conference Plaintiff quotes (¶ 54) reveals that even Turkey's Trade Minister expected that e-commerce volume would deepen and expand in the period ahead. *See, e.g.*, Ex. 5, Apr. 6, 2021 *Daily Sabah* Article, at 3.

Likewise, Hepsiburada's general statements referencing its "strong growth," "meticulous execution," and "highly attractive" financial profile, ¶¶ 62-63, are non-actionable puffery. *E.g.*, *Rudman v. CHC Grp. LTD.*, 217 F. Supp. 3d 718, 728 (S.D.N.Y. 2016) (statement regarding "'strong' relationships with [] customers was no more than 'puffery'"); *Johnson v. Sequans Commc'ns S.A.*, 2013 WL 214297, at *14 (S.D.N.Y. Jan. 17, 2013) (statements regarding "strong position" and being an "early leader" in the market were puffery).

## B.    Hepsiburada Had No Duty To Make Additional Disclosures

Unable to identify any misstatements in the Registration Statement (much less material ones), Plaintiff nevertheless argues that Hepsiburada's disclosures were misleading by omission. Plaintiff theorizes that the Registration Statement omitted alleged facts that can be grouped into three categories:  (i) certain Q2 2021 financial results (specifically, "deceleration" in revenue and GMV growth, increased advertising expenses, and declines in gross contribution margin, EBITDA, and EBITDA as a percentage of GMV), ¶¶ 62, 64-65, 67; (ii) "materially deteriorated" growth due to brick-and-mortar businesses reopening, and customers "shifting away" from online shopping following the lifting of COVID-19 lockdown measures starting in March 2021, ¶¶ 62, 66-67; and (iii) the "implementation" of strategic investments, discounts offered to customers, and increased advertising (and their effect on profitability and margins) prior to the IPO, ¶¶ 62, 64, 67.[5]  But "there is no liability in the absence of a duty to disclose" information, and none of

---

[5] The Complaint also alleges that the Registration Statement "omitted to state" that "Defendants' positive statements about the Company's KPIs, business, operations, and prospects, were materially misleading and/or lacked a reasonable basis." ¶¶ 64, 71.  To the extent Plaintiff is referring to the challenged statements in Paragraphs 62, 63, 66, and 69 of the Complaint, its theory fails because it has not adequately pled that any was materially false or misleading (or lacked any reasonable basis) for the reasons discussed *infra* Sections I.B and I.D.  Otherwise, Plaintiff's vague assertion cannot support a claim; it fails even to identify any particular challenged statement. *See, e.g.*, *Singh v. Schikan*, 106 F. Supp. 3d 439, 451-52 (S.D.N.Y. 2015) (rejecting "allegations that

Plaintiff's theories—each of which is addressed below—supports the conclusion that any of Hepsiburada's accurate statements triggered a duty for the Company to make additional disclosures. *E.g.*, *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *29 (S.D.N.Y. Sept. 28, 2012), *aff'd*, 752 F.3d 173 (2d Cir. 2014).

### 1.      No Duty To Disclose Q2 2021 Results

Plaintiff claims that Hepsiburada was required to disclose "deceleration" in revenue and GMV growth, as well as "significantly increased" advertising expenses and "declines" in gross contribution margin, EBITDA, and EBITDA as a percentage of GMV,[6] that occurred in *Q2 2021*. *See* ¶¶ 62, 64-65, 67.  But the scope of the Registration Statement on its face was limited to *Q1 2021* and prior periods. *See, e.g.*, ¶ 63.  No rule or regulation required Hepsiburada to report Q2 2021 results in the Registration Statement; in fact, as an emerging growth company, it needed to present only two years of financial statements, *see* 15 U.S.C. § 77g(a)(2)(A), and as a foreign private issuer, Hepsiburada would have been required to include "interim" financials only if the Registration Statement were dated more than nine months after the end of the last financial statement year (and it was not), *see* 17 C.F.R. § 210.3-12(f); Form 20-F, Item 8.A.5, Sec. & Exch. Comm'n, https://www.sec.gov/files/form20-f.pdf; *see also Asay v. Pinduoduo Inc.*, 2020 WL 1530745, at *9 (S.D.N.Y. Mar. 30, 2020) (Castel, J.) ("no SEC requirement or guidance that quarterly results for the second quarter [of 2018] should have been reflected in" foreign issuer's registration statement, declared effective July 26, 2018), *aff'd*, 2021 WL 3871269 (2d Cir. Aug.

---

the Registration Statement 'lacked a reasonable basis for [its] positive statements'" where "no particular positive statements have been identified").

[6] The Complaint references the alleged omission of declines in "unit economics" and "profitability" in Q2 2021, but contains no specific allegations regarding either, other than to equate them with declines in gross contribution margin, EBITDA, and EBITDA as a percentage of GMV in that quarter.  *See* ¶¶ 62, 64; *see also* ¶¶ 70-71, 75.

31, 2021); RS at 12-13, 59.

As a practical matter, Hepsiburada could not have produced final Q2 2021 results on June 30, and courts are unsurprisingly, and for good reason, "reluctan[t]" to "require companies to release results before, or within days of, the end of fiscal quarters," "without the benefit of reflection or certainty." *In re Turkcell Iletisim Hizmetler A.S. Sec. Litig.*, 202 F. Supp. 2d 8, 13 (S.D.N.Y. 2001) (no duty to disclose Q2 2000 results in registration statement declared effective on July 10, 2000). That is particularly true where there has been no showing that the company's performance was out of step with past performance (including prior fluctuations in that performance), or if the registration statement provides appropriate cautionary language; omission of the non-final results in either case is generally considered immaterial, regardless of whether the information might have been interesting to some investors. *See, e.g.*, *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 38-39 (2d Cir. 2017); *DeMaria v. Andersen*, 318 F.3d 170, 180-81 (2d Cir. 2003); *see also Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 551 (S.D.N.Y. 2021).

Here, the financial information in the Registration Statement demonstrated that Hepsiburada's performance, like that of most emerging companies, fluctuated from period to period, *see* ¶ 63; RS at 19, 22, 78, 82, 84, 86, and of course, nowhere did the Registration Statement state or imply that Hepsiburada would achieve the same rate of growth in any future period that it had achieved in any prior period.[7] *DeMaria*, 318 F.3d at 180-81 (prospectus never promised "revenue growth of no less than 25%"); *Willard v. UP Fintech Holding Ltd.*, 527 F. Supp. 3d 609, 621-22, 624 n.7 (S.D.N.Y. 2021) (data in registration statement "showed dramatic swings from

---

[7] The Complaint includes incomplete and misleading presentations of the Company's financials in support of this point. For example, Plaintiff provides a table that it suggests establishes that there was a "sharp drop in profitability" in Q2 2021, but what that table neglects to show is that there was a comparable drop in *Q1 2021*. *See* ¶ 75; RS at 19, 22, 78.

quarter to quarter" and "thus did not suggest 'consistent and predictable' growth"); *In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *6 (S.D.N.Y. Mar. 29, 2016) (rejecting argument that "past financial performance" created "an implicit promise" that metrics "would continue to increase"). To the contrary, the Company warned investors that "[a]s the COVID-19 situation remains fluid and continues to rapidly evolve, the ultimate impact of COVID-19 on our business, financial condition and results of operations cannot be reasonably estimated at this time." *See, e.g.*, RS at 30; *see also id.* at 76, F-11, F-46 (same). Furthermore, it is undisputed that Hepsiburada was *still growing* in Q2 2021—even comparing Q2 2021 to Q2 2020, the two quarters upon which Plaintiff fixates. Indeed, Q2 2020 (April to June) was one of the worst stretches of the pandemic, and lockdowns caused a surge of online shopping, thus setting a very high bar for comparison purposes. Yet, Hepsiburada still achieved year-over-year growth in Q2 2021. Viewed in full context, Plaintiff has alleged—at most—a modest deceleration in the rate at which the Company continued to grow. Courts agree that such a fluctuation in performance does not amount to a "reversal of a growth trend" that would require immediate disclosure. *See DeMaria*, 318 F.3d at 180-81; ¶ 63; Ex. 7, Aug. 26, 2021 Form 6-K, at 1-2.

Moreover, the Registration Statement "contained ample warnings and disclosures" that Hepsiburada's "historical results for any prior period are not necessarily indicative of results expected in any future period," RS at 18, 29-30, further undermining any notion that Hepsiburada was required to disclose its non-final Q2 2021 results in the Registration Statement, *see Stadnick*, 861 F.3d at 39; *see also Willard*, 527 F. Supp. 3d at 622-23 (no liability for non-disclosure of intra-quarter declines where registration statement warned that "period to period comparisons . . . may not be meaningful, and future revenues and profitability may be subject to significant fluctuations or declines"). In light of Hepsiburada's cautionary language, omission of the Q2 2021 results was

immaterial as a matter of law. *See Willard*, 527 F. Supp. 3d at 623-25.

### 2.    No Duty To Disclose Additional COVID-Related Information

Plaintiff also claims that the Registration Statement "omitt[ed]" that past "growth was primarily attributable to the surge in online shopping in Turkey due to lockdowns during the pandemic and that this growth had materially deteriorated before the IPO as businesses were reopened . . . starting in March 2021." ¶ 62; *see also* ¶¶ 66-67. Plaintiff is wrong again. The Registration Statement stated that COVID-19 lockdown measures contributed to both a nationwide shift to online shopping and Hepsiburada's significant growth in 2020 and Q1 2021. *See, e.g.*, RS at 75-76 ("In the three months ended March 31, 2021 and in 2020, our financial results were positively impacted by a considerable shift to online shopping by Turkish customers in response to the COVID-19 pandemic."); *see also, e.g., id.* at 113, F-11, F-46.

Moreover, Plaintiff has not alleged facts showing that any changes in COVID-19 restrictions had caused Hepsiburada's growth to "materially deteriorate[]" *as of June 30, 2021*, when the Registration Statement became effective. As explained *supra* Section I.B.1, while Plaintiff claims that customers were "already shifting away from e-commerce" in Q2 2021, ¶ 67, Hepsiburada *was still growing* in Q2 2021. And documents upon which the Complaint relies acknowledge that the March 2021 lifting of restrictions resulted in increased infections. *See* Ex. 4, WSWS Article, at 1-2 (cited at ¶ 15 n.6). Consequently, restrictions were re-imposed and not fully lifted until July 1, 2021—the day *after* Q2 2021 closed and the SEC declared the Registration Statement effective. *See* Ex. 7, Aug. 26, 2021 Form 6-K, at 3 (cited at, *e.g.*, ¶ 74); Ex. 8, Aug. 26, 2021 Earnings Call Tr., at 7 (cited at, *e.g.*, ¶ 76); *Rubinstein v. Credit Suisse Grp. AG*, 457 F. Supp. 3d 289, 295 (S.D.N.Y. 2020) ("[T]he Court need not credit claims that are contradicted by documents incorporated in the complaint . . . .").

In any event, as Plaintiff acknowledges, the shifting state of COVID-19 restrictions in

15

Turkey was public information, something Hepsiburada had no duty to disclose.  *See* ¶ 15 n.6; *Lau*, 527 F. Supp. 3d at 553.  The Registration Statement explained that "the COVID-19 situation remain[ed] fluid," making it impossible to reasonably estimate "the ultimate impact of COVID-19 on [Hepsiburada's] business," which was all that Hepsiburada could say with any certainty.  RS at 30.  Nor did Hepsiburada have any duty to speculate about the potential impact of changes to COVID-19 policies that fully went into effect *after* the Registration Statement became effective. *In re Express Scripts Holding Co. Sec. Litig.*, 2017 WL 3278930, at *11 (S.D.N.Y. Aug. 1, 2017) (if "an outcome is merely speculative, the duty to disclose does not attach"); *see also Densply Sirona, Inc. v. XXX*, 2019 WL 4695724, at *6 (N.Y. Sup. Ct. 2019), *aff'd*, 141 N.Y.S.3d 462 (N.Y. App. Div. 2021).  And Hepsiburada warned investors that it "may experience slower than expected growth" due to changes in consumer behavior as COVID-19 restrictions ease, RS at 30; ¶ 69, and that the Turkish retail market "remain[ed] dominated by offline retail players," RS at 4, 26, 99. Investors were thus on notice of the risks inherent to Hepsiburada's business based on shifting COVID-19 restrictions.  Those warnings further undermine any notion that Hepsiburada was obligated to make additional disclosures about the lifting of COVID-19 restrictions before those headwinds began to materialize in Q3 2021.  *See, e.g.*, *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 104-05 (2d Cir. 2013) (warnings about potential effects of market volatility put reasonable investor on notice of risks).

### 3. No Duty To Disclose Additional Information About Investments, Discounts, Or Advertising

Plaintiff next claims the Company failed to disclose that it "initiated," in Q2 2021, "strategic margin investments, customer discounts, significantly increased advertising and promotion of low margin goods."  ¶¶ 62, 64, 67.  Once again, Plaintiff mischaracterizes the Company's disclosures in an effort to find some basis for its claims.  The Registration Statement

16

disclosed *ongoing*, "significant" investments and marketing efforts aimed at promoting growth, as well as their impact on the Company's profitability and margins in the near term.  RS at 24 ("We anticipate that we will continue to incur losses in the near term as a result of expected increases in our operating expenses and continued capital expenditures . . . as we continue to invest in our business in order to grow."); *id.* at 27 ("We continue to invest significant resources to grow our Active Customers base and increase engagement, whether through innovation, providing new or improved goods or services, marketing efforts or other means."); *id.* at 74-75 (disclosing that "in the near term," the Company's "strategic investments are likely to have a negative impact on [its] margins"); *see also, e g.*, *id.* at 11, 25, 28, 82, 84, 86.  Those disclosures foreclose Plaintiff's claims. *See, e.g.*, *In re Proshares Tr. II Sec. Litig.*, 2020 WL 71007, at *7 (S.D.N.Y. Jan. 3, 2020) (dismissing Securities Act claims where "[t]he [r]egistration [s]tatement disclose[d] the primary omission alleged by plaintiffs"), *aff'd*, 839 F. App'x 649 (2d Cir. 2021); *Asay*, 2020 WL 1530745, at *9-10 (no requirement to disclose Q2 2018 increase in sales and marketing expenses in July 26, 2018 prospectus where it "warned in no uncertain terms" that "[w]e expect our costs and expenses to continue to increase as we grow our business," "operating results may be materially and adversely affected," and the company "could continue to incur substantial losses").

To the extent Plaintiff claims Hepsiburada was required to disclose additional, granular information concerning its marketing strategies and the associated costs, Plaintiff is mistaken.  The securities laws do not "force companies to give their competitors advance notice of sensitive . . . information." *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 809 (2d Cir. 1996); *see also In re Canandaigua Sec. Litig.*, 944 F. Supp. 1202, 1211 (S.D.N.Y. 1996) ("It is inherently absurd to impose on companies in highly competitive, consumer-based industries an affirmative duty to disclose *to competitors* sensitive pricing and

17

marketing decisions." (emphasis in original)).  And once Hepsiburada offered customer discounts and promotions, they were publicly available information.  *See, e.g.*, *Lau*, 527 F. Supp. 3d at 553 ("Where allegedly undisclosed material information is in fact readily accessible in the public domain, . . . a defendant may not be held liable for failing to disclose this information.").

In any event, Plaintiff alleges no facts that would have required accelerated disclosure of additional information regarding an increase in investments, discounts, or advertising.  *See supra* Section I.B.1.  In the absence of such allegations, courts in this district have not hesitated to reject nearly identical claims.  For example, in *Arfa v. Mecox Lane Ltd.*, the court dismissed claims premised on the theory that an e-retailer's registration statement concealed rising operating, marketing, and advertising expenses and lower gross margins in the third quarter of 2010 (information the plaintiffs claimed evidenced a shift from higher-margin brick-and-mortar sales to lower-margin online ones) even though the registration statement presented financials only through the second quarter of 2010.  2012 WL 697155, at *6-10 (S.D.N.Y. Mar. 5, 2012), *aff'd*, 504 F. App'x 14 (2d Cir. 2012).  Just like the plaintiffs in *Mecox*, Plaintiff points to no "material information that was not consistent with the disclosures in the registration statement," and thus has not established that any additional disclosures were required.  *Id.* at *10.

### C.    Plaintiff Fails To Allege Any Violation Of Item 303

For the same reasons discussed *supra* Section I.B, the Complaint fails to state a claim based on the notion that Item 303 of Regulation S-K required the Company to disclose certain Q2 2021 results and the purported "implementation" of investments and marketing campaigns.[8]  ¶ 68.  Item 303 only requires the disclosure of "known trends or uncertainties that have had or that are

---

[8] Moreover, Item 303 is inapplicable to Form F-1 registration statements.  *Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 413 (S.D.N.Y. 2020).

reasonably likely to have a material . . . impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(b)(2)(ii). Accordingly, to establish a violation of Item 303, a plaintiff must adequately allege the existence of a "trend," "event," or "uncertainty" that "is both [1] presently known to management *and* [2] reasonably likely to have material effects on the registrant's financial condition or results of operations." *E.g.*, *Willard*, 527 F. Supp. 3d at 619 (alterations and emphasis in original). That requires a plaintiff to "demonstrate *actual* knowledge of" the trend, event, or uncertainty. *E.g.*, *Rubinstein*, 457 F. Supp. 3d at 300 (emphasis in original). Plaintiff has not satisfied that demanding standard.

*First*, Item 303 did not require Hepsiburada to disclose supposedly "significantly slowing revenues and GMV growth," "significantly increased advertising expense[s]," or "materially reduced gross contribution margin, EBITDA, and EBITDA as a percent of GMV" in a quarter (Q2 2021) that was outside the Registration Statement's scope. ¶ 68. Even if Plaintiff's characterization of Hepsiburada's Q2 2021 performance were correct, which it is not, Item 303 does not require "real-time disclosures" of "fluctuations" in financials outside of the normal reporting schedule, because such fluctuations do not amount to a "trend." *Willard*, 527 F. Supp. 3d at 620-21. In any event, omission of the Q2 2021 results was immaterial given that the financial information in the Registration Statement demonstrated that Hepsiburada's performance fluctuated from period to period, and thus never implied that Hepsiburada would achieve the same rate of growth in any future period that it had achieved in any prior period. *See* ¶ 63; RS at 19, 22, 78, 82, 84, 86; *Willard*, 527 F. Supp. 3d at 621-22; *supra* Section I.B.1.

*Second*, Plaintiff's contention that Hepsiburada violated Item 303 by not disclosing its "implementation" of "strategic margin investments, customer discounts and significantly increased advertising expense[s]," ¶ 68, fails because the Registration Statement disclosed

"significant" investments and marketing efforts by the Company, as well as their impact on the Company's profitability and margins in the near term. *See supra* Section I.B.3; RS at 11, 24-25, 27-28, 74-75, 82, 84, 86; *In re IAC/InterActiveCorp Sec. Litig.*, 695 F. Supp. 2d 109, 118 (S.D.N.Y. 2010) (Item 303 claim fails where information is "already disclosed").

*Third*, Plaintiff does not even attempt to allege any facts establishing "actual knowledge" of any adverse trend, event, or uncertainty as of June 30, 2021, as Item 303 requires.[9]  Post-IPO statements and reports of financial results do not suffice. *See Coty*, 2016 WL 1271065, at *1, *7-9 (rejecting allegations "that fourth quarter revenues were down . . . so, therefore, management must have known of the bad numbers before the IPO" took place at the end of the quarter); *see also Asay*, 2020 WL 1530745, at *9 (dismissing Item 303 claim based on non-disclosure of interim figures where complaint did not adequately allege when company had access to full financials, "by whom [the] figures were compiled nor to whom they were communicated").

### D.    Plaintiff's Challenges To Hepsiburada's Risk Factors Fail

Plaintiff's theory that the Registration Statement's "Risk Factor" disclosures violated Item 105 for allegedly omitting the same information required by Item 303, ¶¶ 69-71, fails for the same reasons its Item 303 claims fail. *See, e.g.*, *Willard*, 527 F. Supp. 3d at 619 n.4 (a court's ruling on Item 303 "applies equally" to Item 105).  In particular, neither regulation required Hepsiburada to disclose Q2 2021 revenue, GMV, advertising expenses, gross contribution margin, EBITDA, and EBITDA as a percentage of GMV. *See* ¶¶ 70-71; *supra* Sections I.B.1 & I.C; *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 484 n.4 (2d Cir. 2011).  And investments and marketing efforts by the Company, as well as their impact on the Company's profitability and margins in the near term, were disclosed. *See* ¶¶ 70-71; *supra* Sections I.B.3 & I.C; *Barilli v. Sky Solar Holdings,*

---

[9] Indeed, Plaintiff expressly disclaims any such allegation here.  ¶¶ 93, 111.

*Ltd.*, 389 F. Supp. 3d 232, 257-58 (S.D.N.Y. 2019) (dismissing Item 105 claims based on alleged failure "to disclose the state of the [] regulatory environment" when offering materials did describe it).  In any event, Plaintiff fails to "demonstrate *actual* knowledge" of any allegedly undisclosed risk.  *Rubinstein*, 457 F. Supp. 3d at 300-01 (emphasis in original); *see supra* Section I.C.

Plaintiff's itemization of four risk disclosures, which it claims "represented certain risks 'may' or 'could' adversely impact Hepsiburada's business" when "these potential risks had already occurred," ¶¶ 69-70, cannot salvage its Item 105 claims.  Assessing each disclosure in turn shows why.  Plaintiff first points to the statement that Hepsiburada "may experience significant fluctuations in [its] results of operations and growth rate," and that "[r]evenue growth may slow down or decline." ¶ 69.  That statement cannot form the basis of a claim because the Registration Statement "did not imply that none of these risks, at least to some extent, would affect [the company's] most recent fiscal quarter." *In re Noah Educ. Holdings, Ltd. Sec. Litig.*, 2010 WL 1372709, at *7-8 (S.D.N.Y. Mar. 31, 2010) (rejecting argument that statement that "increases in the cost of raw materials 'could' cause a drop in [] gross margin" was misleading because "a spike in the cost of raw materials had, allegedly, already negatively affected [] gross margin").  To the contrary, the financial information in the Registration Statement showed that Hepsiburada's performance fluctuated in the periods preceding the IPO.  *See* ¶ 63; RS at 19, 22, 78, 82, 84, 86.

Plaintiff next challenges two risk factors stating that Hepsiburada "may face challenges and uncertainties in implementing [its] e-commerce strategy" and that "in the future [it] may not be able to compete effectively." ¶ 69.  Those challenges fail because Plaintiff alleges no facts regarding Hepsiburada's "e-commerce strategy," much less facts showing that it was not being implemented or that Hepsiburada was not "compet[ing] effectively" at the time of the IPO. *See, e.g., Coty*, 2016 WL 1271065, at *10-11 (rejecting challenge to risk disclosures where "[p]laintiffs

21

[] failed to allege facts to establish that any of these alleged events were occurring at the time of the IPO"); *supra* Section I.B.1-2.  At most, Plaintiff alleges that in Q2 2021, Hepsiburada invested significant resources to continue growing its customer base, including through marketing campaigns—ongoing efforts that were disclosed (along with their expected impact on the Company's profitability and margins in the near term).  *See supra* Section I.B.3; RS at 11, 24-25, 27-28, 74-75; *Steinberg v. PRT Grp., Inc.*, 88 F. Supp. 2d 294, 311 (S.D.N.Y. 2000) (dismissing claim that risk factor was misleading where allegedly undisclosed information was disclosed).  Challenges to these risk factors fail for the additional and independent reason that they describe "the e-commerce industry in [the] region" and the "highly competitive market," ¶ 69—"generic . . . market risks," from which "'no reasonable investor would infer anything about the state of' the [C]ompany," *Coty*, 2016 WL 1271065, at *11.

Finally, Plaintiff challenges the disclosure that "customers may shift back towards offline retailers as [COVID-related] social distancing and government restrictions ease, as a result of which [the Company] may experience slower than expected growth." ¶ 69.  Plaintiff has failed to plead, as it must, facts showing that "the lifting of lockdown restrictions" had caused "a shift in the e-commerce market," ¶ 70, as of June 30, 2021, particularly given the constantly changing nature of those restrictions.  *See, e.g.*, *Coty*, 2016 WL 1271065, at *10-11; *supra* Section I.B.1-2.

Accordingly, Plaintiff has not alleged any false or misleading statement in the Registration Statement, and it therefore has not stated a claim for relief under the Securities Act.[10]

**E.    If Plaintiff Fails to Amend Within 21 Days, The Complaint Should Be Dismissed With Prejudice**

Plaintiff has had several opportunities to amend the complaint in this action.  First, it was

---

[10] Plaintiff's failure to state a primary violation of the Securities Act also dooms its Section 15 claims against the unserved defendants.  *E.g.*, *Asay*, 2020 WL 1530745, at *10.

given leave to file an amended complaint (the Complaint) after being selected as lead plaintiff. Minute Entry (Jan. 5, 2022). At the time it drafted the Complaint, Plaintiff had access to both the original and amended complaints in *Benson*, with the latter based on substantially the same purported omissions of information regarding the Company's growth and investments that are at issue in the Complaint. *See* Ex. 10, *Benson* Compl. & Ex. 13, *Benson* Am. Compl. (dated Sept. 28, 2021 and Dec. 10, 2021, respectively); *infra* Section II. Then, Plaintiff could have elected to amend after reviewing Hepsiburada's and the Underwriter Defendants' seven-page pre-motion letter, which set forth in detail the salient deficiencies in the Complaint. ECF No. 44. Plaintiff declined to amend, stating that it believed its allegations were "sufficient to support" its claims. ECF No. 45 at 1. When it made this decision, Plaintiff also had access to the memoranda of law in support of the motions to dismiss the amended complaint in the *Benson* Action. *See Benson*, No. 655701/2021, Dkt. Nos. 73, 88 (filed Feb. 8, 2022).

Given these opportunities to amend, should it choose not to amend by the May 6, 2022 deadline set forth in the Scheduling Order, ECF No. 46, Plaintiff will be unable to demonstrate good cause as required by Federal Rule of Civil Procedure 16 to be granted leave to amend thereafter, given that it has long had access to submissions in this action and another case that made apparent the Complaint's defects. *See In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 225 (S.D.N.Y. 2019) (Castel, J.) (finding no good cause to amend dismissed claims where plaintiffs had "in hand both the pre-motion letters and the actual motions to dismiss" but failed to amend by scheduling order deadline); *see also Guity v. Santos*, 2020 WL 4340417, at *3 (S.D.N.Y. July 28, 2020) (Castel, J.) (same). Thus, dismissal stemming from this motion should be with prejudice.

Dismissal with prejudice is also appropriate because amendment would be futile in any event, given the fatally flawed premise upon which Plaintiff relies for asserting a violation of the

23

federal securities laws. Plaintiff has failed to identify a single actionable misstatement or omission, and no amount of added detail will salvage the Complaint given that the flaws in pleading are "incurable on the facts of this case." *Fort Worth Emps.' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 233 (S.D.N.Y. 2009).

## II. ALTERNATIVELY, THE COURT SHOULD STAY OR DISMISS THIS ACTION UNDER *COLORADO RIVER*

Alternatively, the Court should stay or dismiss this action pursuant to *Colorado River Water Conservation District v. United States*, which allows federal courts to decline jurisdiction where there are parallel state court proceedings. 424 U.S. 800 (1976). On September 28, 2021, about one month before this action was filed, Mr. Benson filed a putative class action in the Supreme Court of the State of New York, alleging violations of Sections 11 and 15 of the Securities Act against defendants named in this action. Ex. 10, *Benson* Compl. Since then, Mr. Benson has filed an amended complaint, Ex. 13, and motions to dismiss that complaint were filed on February 8, 2022, *see Benson*, No. 655701/2021, Dkt. Nos. 72, 87, 95.

The *Benson* plaintiff has already asserted in state court claims that Plaintiff seeks to advance here: both cases involve Securities Act claims brought on behalf of a putative class of investors that purchased Hepsiburada ADSs "pursuant and/or traceable to" the registration statement and prospectus issued in connection with the Company's IPO, ¶ 1; Ex. 13, *Benson* Am. Compl. ¶ 1, against the same defendants (with the exception of one individual defendant named only in *Benson*), *compare* ¶¶ 32-51, *with* Ex. 13, *Benson* Am. Compl. ¶¶ 25-34, 37, 39-41, based on substantially the same purported omissions of information regarding the Company's growth and investments, *compare* ¶¶ 7, 62-71, *with* Ex. 13, *Benson* Am. Compl. ¶¶ 5, 120-23, 126-27, 136, 139-46. That there are no Section 12 claims in *Benson* is of no consequence. Sections 11 and 12 have nearly identical elements—including the requirement for a material misstatement—

24

and allegations that fail to support a Section 11 claim will necessarily fail to support a Section 12 claim. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (finding that Sections 11 and 12 are "Securities Act siblings"); *In re Lone Pine Res., Inc.*, 2014 WL 1259653, at *5-6 (S.D.N.Y. Mar. 27, 2014) (a complaint that fails to allege a material misstatement under Section 11 "likewise fails to state a claim under Section 12(a)(2)"). The *Benson* Action thus is a "parallel" action, and the *Colorado River* factors weigh in favor of dismissal or a stay. *See Mouchantaf v. Int'l Modeling & Talent Ass'n*, 368 F. Supp. 2d 303, 306 (S.D.N.Y. 2005).

The primary factor—*i.e.*, the "avoidance of piecemeal litigation" that creates the potential for "inconsistent and mutually contradictory determinations" and "purely duplicative litigation and the concomitant waste of judicial resources"—strongly supports dismissing or staying this case, as the *Benson* Action is nearly identical to this one. *De Cisneros v. Younger*, 871 F.2d 305, 307-08 (2d Cir. 1989); *Mouchantaf*, 368 F. Supp. 2d at 307 (fact that actions "center on identical issues . . . is a decisive factor favoring abstention"); *Inn Chu Trading Co. v. Sara Lee Corp.*, 810 F. Supp. 501, 507-08 (S.D.N.Y. 1992) (granting stay). And, additional considerations plainly weigh in favor of dismissal or a stay: the *Benson* Action was filed first and has advanced further than this case, and, given the substantial overlap between the two actions, *Benson* has the potential to "dispose of the entire federal case." *De Cisneros*, 871 F.3d at 308; *Mouchantaf*, 368 F. Supp. 2d at 307; *Inn Chu*, 810 F. Supp. at 508. Finally, Plaintiff's rights will be "adequately protected" in the *Benson* Action because it is a member of the putative *Benson* class, afforded all of the ordinary due process protections available to unnamed plaintiffs. *De Cisneros*, 871 F.3d at 309.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint with prejudice or, at a minimum, stay the case pending resolution of the *Benson* Action.

25

Dated: New York, New York
      April 15, 2022

Respectfully submitted,

LATHAM & WATKINS LLP


By:   /s/ Kevin M. McDonough
      Jamie L. Wine
      Kevin M. McDonough
      1271 Avenue of the Americas
      New York, New York 10020
      (212) 906-1200
      jamie.wine@lw.com
      kevin.mcdonough@lw.com

*Attorneys for Defendant D-MARKET Elektronik Hizmetler ve Ticaret Anonim Şirketi a/k/a D-MARKET Electronic Services & Trading d/b/a/ Hepsiburada*


SHEARMAN & STERLING LLP


 /s/ Daniel Lewis
Daniel Lewis
Agnès Dunogué
Benjamin Klebanoff
599 Lexington Avenue
New York, New York 10022
(212) 848-4000
daniel.lewis@shearman.com
agnes.dunogue@shearman.com
benjamin.klebanoff@shearman.com

*Attorneys for the Underwriter Defendants*

26