**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IWA-FOREST INDUSTRY PENSION PLAN, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>   v.<br><br>D-MARKET ELEKTRONIK HIZMETLER VE TICARET ANONIM ŞIRKETI a/k/a D-MARKET ELECTRONIC SERVICES & TRADING d/b/a/ HEPSIBURADA, MEHMET MURAT EMIRDAĞ, HALIL KORHAN ÖZ, HANZADE VASFIYE DOĞAN BOYNER, ERMAN KALKANDELEN, MEHMET EROL ÇAMUR, CEMAL AHMET BOZER, VUSLAT DOĞAN SABANCI, MUSTAFA AYDEMIR, TOLGA BABALI, COLLEEN A. DE VRIES, COGENCY GLOBAL INC., MORGAN STANLEY & CO. LLC, J.P. MORGAN SECURITIES LLC, GOLDMAN, SACHS & CO. LLC, BOFA SECURITIES, INC., UBS SECURITIES LLC, and TURKCOMMERCE B.V.,<br>     Defendants. | Honorable P. Kevin Castel<br>Civ. A. No. 1:21-cv-08634-PKC<br><br>**CLASS ACTION** |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO HEPSIBURADA'S AND THE UNDERWRITER DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT
<u>OR ALTERNATIVELY TO STAY THE ACTION</u>**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    PRELIMINARY STATEMENT ............................................................................... 1

    A.    The IPO .......................................................................................................... 1

    B.    Summary of Allegations ............................................................................... 2

    C.    Defendants Misstate the Complaint's Allegations ....................................... 4

II.    LEGAL STANDARDS .............................................................................................. 7

    A.    Fed. R. Civ. P. 12(b)(6) ................................................................................ 7

    B.    Rule 8 Applies to Plaintiff's Securities Act Claims ..................................... 7

III.    ARGUMENT .............................................................................................................. 8

    A.    The Complaint Adequately Pleads Material Misstatements and Omissions .......... 8

        1.    Defendants Had a Duty to Disclose Hepsiburada's Material Deceleration in Growth Before the IPO and the Strategic Margin Investments and Other Actions Taken to Mitigate the Material, Deceleration of Growth .............................................................. 10

        2.    Defendants Raise Factual Disputes Inappropriate at this Stage About the Timing of the Lifting of Covid Lockdown Restrictions .......... 15

        3.    The Challenged Risk Disclosures Were Materially False and Misleading Misstatements .......................................................... 17

        4.    The Registration Statement Violates Item 303 ........................................ 21

        5.    The Registration Statement Violates Item 105 ........................................ 22

    B.    The Complaint Adequately Alleges Section 15 Claims ................................ 22

    C.    The Complaint Should Not Be Dismissed or Stayed Under Colorado River ....... 23

IV.    CONCLUSION ......................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asay v. Pinduoduo Inc.*,
No. 18 Civ. 7625 (PKC), 2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020) .................................. 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................................. 7, 8

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .................................................................................................................. 18

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
866 F. Supp. 2d 223 (S.D.N.Y. 2012) ....................................................................................... 15

*City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*,
814 F. Supp. 2d 395 (S.D.N.Y. 2011) ....................................................................................... 22

*City of Sterling Heights Police and Ret. Sys. v. Reckitt Benckiser Group PLC*,
20-cv-10041 (PKC), 2022 WL 596679 (S.D.N.Y. Feb. 28, 2022) .............................................. 4

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) ...................................................................................................... 23, 24, 25

*In re Bank of America. Corp. Sec., Deriv. & ERISA Litig.*,
757 F. Supp. 2d 260 (S.D.N.Y. 2010) .................................................................... 10, 23, 24, 25

*Ganino v. Citizens Utils. Co.*,
228 F.3d 154 (2d Cir. 2000) ................................................................................................. 8, 15

*Garber v. Legg Mason*,
537 F. Supp. 2d 597 (S.D.N.Y. 2008) ........................................................................................ 8

*Hawaii Structural Ironworkers Pension Trust Fund v.
AMC Entertainment Holdings, Inc.*,
422 F. Supp. 3d 821 (S.D.N.Y. 2019) ........................................................................................ 7

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983) ................................................................................................................... 8

*In re Barclays Bank PLC Sec. Litig.*,
No. 09 Civ. 1989 (PAC), 2017 WL 4082305 (S.D.N.Y. Sept. 13, 2017) .................................. 22

*In re Giant Interactive Group, Inc. Sec. Litig.*,
643 F. Supp. 2d 562 (S.D.N.Y. 2009) ........................................................................................ 4

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
 986 F. Supp. 2d 487 (S.D.N.Y. 2013)................................................................. 7, 10, 18

*In re Morgan Stanley Info. Fund Sec. Litig.*,
 592 F.3d 347 (2d Cir. 2010).......................................................................... 7, 8, 10, 13

*In re Noah Educ., Ltd. Sec. Litig.*,
 No. 08 Civ. 9203(RJS), 2010 WL 1372709 (S.D.N.Y. Mar. 31 2010) .............................. 18, 19

*In re ProShares Tr. Sec. Litig.*,
 728 F.3d 96 (2d Cir. 2013)............................................................................................ 8

*In re SSA Bonds Antitrust Litig.*,
 No. 16 Civ. 3711 (ER), 2018 WL 4118979 (S.D.N.Y. Aug. 28, 2018) ................................... 25

*In re SunEdison, Inc. Sec. Litig.*,
 300 F. Supp. 3d 444 (S.D.N.Y. 2018)........................................................................ 14, 15

*In re Tufin Software Technologies Ltd. Sec. Litig.*,
 No. 20 Civ. 5646 (GHW), 2022 WL 596861 (S.D.N.Y. Feb. 25, 2022).................................... 7

*In re Ulta Salon, Cosmetics & Fragrance, Inc. Sec. Litig.*,
 604 F. Supp. 2d 1188 (N.D. Ill. 2009) ......................................................................... 10

*In re Van der Moolen Holding N.V. Sec. Litig.*,
 405 F. Supp. 2d 388 (S.D.N.Y. 2005)............................................................................ 7

*In re Vivendi Universal, S.A. Sec. Litig.*,
 765 F. Supp. 2d 512 (S.D.N.Y. 2011).......................................................................... 15

*In re Vivendi, S.A. Sec. Litig.*,
 838 F.3d 223 (2d Cir. 2016)..................................................................................... 10, 15

*Lau v. Opera Ltd.*,
 527 F. Supp. 3d 537 (S.D.N.Y. 2021).......................................................................... 21

*Litwin v. Blackstone Group, L.P.*,
 634 F.3d 706 (2d Cir. 2011)...................................................................................... 22

*Matrixx Initiatives, Inc. v. Siracusano*,
 563 U.S. 27 (2011)..................................................................................................... 8

*McMahan & Co. v. Wherehouse Entm't, Inc.*,
 65 F.3d 1044 (2d Cir. 1995)....................................................................................... 4

*McMahan & Co. v. Wherehouse Entm't, Inc.*,
 900 F.2d 576 (2d Cir. 1990)...................................................................................... 19

*Medina v. Tremor Video, Inc.,*
    No. 13-cv-8364 (PAC), 2015 WL 1000011 (S.D.N.Y.),
    *aff'd*, 640 F. App'x 45 (2d Cir. 2016)....................................................................... 14

*Meyer v. Jinkosolar Holdings Co.,*
    761 F.3d 245 (2d Cir. 2014)................................................................................ 1, 4, 10

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC,*
    709 F.3d 109 (2d Cir. 2013)........................................................................................ 8

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund,*
    575 U.S. 175 (2015).................................................................................................. 14

*Panther Partners Inc. v. Jianpu Technology Inc.,*
    No. 18 Civ. 9848 (PGG), 2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020) ............................ 8, 16

*Rombach v. Chang,*
    355 F.3d 164 (2d Cir. 2004)...................................................................................... 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007).................................................................................................... 7

*Vill. Of Westfield v. Welch's,*
    170 F.3d 116 (2d. Cir. 1999)................................................................................. 23, 24

*Willard v. UP Fintech Holding Ltd.,*
    527 F. Supp. 3d 609 (S.D.N.Y. 2021)........................................................................... 9

*Wilson v. Merrill Lynch & Co.,*
    671 F.3d 120 (2d Cir. 2011)........................................................................................ 7

**Statutes**

15 U.S.C. §77k(a) ........................................................................................................ 8

**Rules**

Fed. R. Civ. P. 8(a) ...................................................................................................... 7

Fed. R. Civ. P. 9(b) ...................................................................................................... 8

Fed. R. Civ. P. 12(b)(6)......................................................................................... 4, 7, 16

Fed. R. Civ. P. 15(a)(2)............................................................................................... 25

**Regulations**

17 C.F.R. §229.105(a)................................................................................................. 22

17 C.F.R. §230.408(a)................................................................................................. 14

Lead Plaintiff, IWA-Forest Industry Pension Plan, respectfully submits this memorandum of law in opposition to Defendants'[1] motion to dismiss the Complaint.[2]

## I.   PRELIMINARY STATEMENT

On July 1, 2021, one day after the end of Q2 2021, Hepsiburada, a Turkish e-commerce company, conducted its initial public offering (the "IPO"). This lawsuit (the "Action").[3] alleges claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act") against Defendants based on their material misstatements and omissions in the IPO's Registration Statement and Prospectus (collectively the "Registration Statement"). Sections 11 and 12 impose liability without regard to fraudulent intent for any material misstatements or omissions contained in a registration statement. The crux of the claims alleged in the Complaint is that once Defendants chose to speak on certain topics in the Registration Statement—most notably, the supposedly very positive and accelerating revenue and GMV growth—there was a duty "to tell the whole truth." *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250-51 (2d Cir. 2014).

### A.   The IPO

On July 1, 2021, pursuant to the Registration Statement, 41,670,000 ADSs were offered and sold by Hepsiburada and 23,581,000 ADSs were offered and sold by TurkCommerce B.V. ¶ 11. The Company received proceeds of approximately $500 million before the underwriting discount and expenses and TurkCommerce received proceeds of approximately $283 million before the

---

[1] The "Defendants" as referred to herein, except as otherwise indicated, are D-MARKET Electronics Hizmetler ve Ticaret Anonim Şirketi a/k/a D-MARKET Electronic Services & Trading d/b/a/ Hepsiburada ("Hepsiburada" or the "Company"), Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC, Goldman, Sachs & Co. LLC, BofA Securities, Inc., and UBS Securities LLC (the "Underwriter Defendants"), the defendants that filed the Memorandum of Law in Support of Defendants' Motion to Dismiss, dated April 15, 2022.  ECF Nos. 47-49.

[2] "¶ _" and "¶¶ _" refer to paragraphs of the Amended Class Action Complaint, dated February 4, 2022 ("Complaint"). ECF No. 37. "Def. Mem." refers to the Memorandum of Law in Support of the Motion to Dismiss the Amended Complaint or Alternatively to Stay the Action. ECF No. 48. "Def. Ex." refers to the exhibits to the Declaration of Kevin M. McDonough, dated April 15, 2022. ECF Nos. 49-1 through 49-13.

[3] All capitalized terms and abbreviations that are not otherwise defined herein have the same meaning as set forth in Complaint except as otherwise indicated. *See* ECF No. 37.

underwriting discount and expenses. ¶ 12. The Underwriter Defendants were paid approximately $38 million, including fees and expenses.  Def. Ex. 8, ECF No. 49-6 at 2 of 282, 197 of 282.[4]

As of February 4, 2022, the date the Complaint was filed, Hepsiburada's ADSs closed at $1.94 per ADS, an approximate 84% decline from the $12 per ADS IPO price. ¶ 20.

B.    **Summary of Allegations**

The Complaint alleges that the Registration Statement made repeated false representations concerning the Company's strong growth in revenue and Gross Merchandise Value ("GMV")[5], attractive unit economics and positive trends in key operating performance indicators that Defendants represented in the Registration Statement were expected to continue. The Complaint alleges that these representations were false and misleading because they omitted material facts necessary to make the statements contained therein not misleading. For example, referring to GMV and other metrics the Registration Statement and Prospectus represented: "[a]s we continue to scale up Hepsiburada, we believe that these trends will continue to positively impact our business," referencing the Company's revenue and GMV growth as being "Strong Growth at Scale" and that the rate of growth was consistently accelerating based on the specific growth figures provided. ¶ 63.

The Complaint alleges that the Registration Statement omitted the following then-existing material facts: (i) that instead of its rate of growth accelerating rapidly, Hepsiburada suffered a sharp deceleration in revenue and GMV growth during Q2 2021, the quarter ended June 30, 2021 ***before the IPO***, (ii) that, as a result, the Company initiated a number of cash burning and margin reducing actions to counteract these very negative trends, including "strategic margin investments," discounts to customers for marketing campaigns and significantly increased advertising expense

---

[4] The total underwriting discount from both Hepsiburada and TurkCommerce B.V. was $34,044,000 and total expenses of $4,345,286 were paid to the underwriters.

[5] Gross Merchandise Value, or "GMV", refers to the total value of orders/product sold through the Company's platform over a given period of time. ¶ 5.

and promotion of low margin goods; and (iii) that, as a result of Hepsiburada's implementation of these actions intended to counteract the existing negative growth trends, Hepsiburada's unit economics and profitability materially and sharply declined *before the IPO*. ¶ 64.

The Complaint further alleges that the decreases in in revenue and GMV growth and other metrics (i) occurred in the second quarter prior to the IPO; (ii) were observed by the Company in Q2 2021 prior to the IPO and that (iii) once observed in Q2 2021 prior to the IPO the Company instituted substantial increases in expenses in an attempt to counter the decreases in revenue and GMV growth and other metrics. ¶¶ 14, 15, 77 - 82.

Indeed, the Complaint alleges Defendants Hepsiburada and Öz admitted less than two months after the IPO, on August 26, 2021, that certain negative dynamics in revenue, GMV and other key operating performance indicators were "observed in Q2" *before the IPO.* ¶¶ 13, 77; Def. Ex. 8, ECF No. 49-8 at 9 of 17. Additionally, Defendants Hepsiburada and Öz further admitted that during Q2 2021, in order to mitigate the deceleration of growth, the Company made "strategic margin investments" and gave "discounts to customers" to such a great extent that the Company's unit economics drastically dropped, as later confirmed by a 2.4% fall in gross contribution margin in Q2 2021. ¶¶ 13; 80; Def. Ex. 8, ECF No. 49-8 at 7 of 17, 9 of 17. Indeed, the Company admitted in the August 26, 2021 press release as well as the August 26 conference call that the sharp decline in gross contribution margin was "mainly due to underlying dynamics in revenue growth"—a euphemism for slowing growth—that had changed during Q2 2021 and the "strategic margin investments" made during Q2 2021. ¶¶ 14, 78, 82.

Likewise, the Complaint alleges that several of the "risk factors" in the Registration Statement were also materially false and misleading because the contingencies they allegedly warned about had already occurred. ¶¶ 69-70. For example, the Registration Statement describes

3

the potential for slowdowns in revenue growth, potential challenges to its e-commerce strategy, potential increases in spending or customer discounts and that consumers "may" shift back towards offline retailers as future, hypothetical risks when, in fact, these risks had materialized and were already negatively impacting Hepsiburada before and at the time of the IPO. ¶¶ 69-70; ECF No. 49-8 at 9 of 17, 12 of 17.

### C.    Defendants Misstate the Complaint's Allegations

Defendants misstate the facts alleged in the Complaint, which must be accepted as true on a 12(b)(6) motion, to improperly assert that there was no duty to disclose the then-existing material, sharp deceleration of growth and the measures that had been taken **before the IPO** to combat slowing growth. But, as this Court has held, "once a company speaks on an issue or topic, there is a duty to tell the whole truth." *City of Sterling Heights Police and Ret. Sys. v. Reckitt Benckiser Group PLC*, No. 20 Civ. 10041 (PKC), 2022 WL 596679, at *2 (S.D.N.Y. Feb. 28, 2022) (Castel, J.), citing *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014).

Defendants then assert that declines in the Company's stock price were not caused by the Company's declining revenue and GMV growth but that the price decline occurred after the Company "pointed to headwinds that . . .could affect future performance." Def. Mem. at 1. Thus, Defendants are making a loss causation argument that is not only factually wrong, but also inappropriate on a motion to dismiss. In fact, the Complaint does not need to plead (and Plaintiff does not have to prove) loss causation at all for Section 11 and 12(a)(2) claims. *In re Giant Interactive Group, Inc. Sec. Litig.*, 643 F. Supp. 2d 562, 571-572 (S.D.N.Y. 2009). Rather, Defendants bear the burden of negating causation, which is an affirmative defense. *McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1049 (2d Cir. 1995) (noting that "[t]he defendant … bears the burden of proving that the price decline was not related to the misrepresentations in

4

the registration statement").[6]

Defendants make the strawman argument that the Complaint asserts that Defendants should have included its Q2 2021 financial results in the Registration Statement and that the Complaint's claims are premised on Defendants' failure to disclose bad numbers that were only finalized after the IPO. Def. Mem. at 3, 12-13. But the Complaint does not allege that Defendants should have disclosed the Q2 2021 results. Instead, the Complaint alleges that Defendants had a duty to inform investors in the Registration Statement of the specific then-existing material and sharp deceleration in revenue and GMV growth and mitigating actions it was taking *before the IPO* in light of the many statements emphasizing the Company's "strong growth," "attractive unit economics," and positive and rapidly accelerating key operating performance indicators that were expected to continue. ¶¶ 62-70. The well-pleaded facts support the strong inference that the negative growth trend existed before the IPO because the Company admitted that prior to the issuance of the Registration Statement, it observed these negative dynamics and implemented "strategic margin investments," "customer discounts," and heavy promotion of low margin goods in Q2 2021 to address underlying revenue dynamics in the second quarter.[7] ¶¶ 77-82.

Defendants also raise factual disputes that are inappropriate at this stage, such as pointing to post-IPO events starting on July 1, 2021 as "adversely impacting consumer behavior in the period following the IPO," including alleging that lockdown restrictions were only "fully" lifted on July 1, 2021, and the extension of a bank holiday in July 2021. Def. Mem. at 2, 7. But even assuming those events worsened the decelerating growth trends in Q3 2021, this does not change

---

[6] Nonetheless, the Complaint does allege that "Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities," including an 84% decline from the IPO price as of the filing of the Complaint, caused Plaintiff and other Class members to suffer significant losses and damages. ¶¶ 20-21.

[7] The Complaint also alleges that these events or uncertainties were not disclosed as required by Item 103, and were among the most significant risks facing Hepsiburada at the time of the IPO, meaning they were also required to be disclosed under Item 105.

the fact that material deceleration of growth and other negative dynamics were – as admitted by the Company - "observed" in Q2 2021 before the IPO and just after virtually all lockdown restrictions were lifted on March 2, 2021 (¶¶ 15, 55). Further, Defendants self-serving assertion that Covid restrictions were only "fully" lifted the day after the IPO (Def. Mem. at 4) effectively concedes that the restrictions were mostly, or at least partly, lifted before July 1, 2021.

Additionally, the Complaint's allegations are not dependent on when the lockdowns were "fully" lifted. The thrust of the Complaint is that material, negative decelerations of revenue and GMV growth existed and were observed by the Company in Q2 2021 that were not disclosed to investors, despite representations in the Registration Statement emphasizing the Company's accelerated growth and that "[a]s we continue to scale up Hepsiburada, *we believe that these trends will continue to positively impact our business.*" ¶ 5. As alleged in the Complaint, "market dynamics had undeniably changed in Q2 2021 – whether due to increased competition or a shift in the e-commerce market as a result of the lifting of lockdown restrictions – leading the Company to take the mitigating actions that had further negative effects in Q2 2021." ¶ 70. Moreover, as alleged in the Complaint, "consumers were already shifting away from e-commerce on Hepsiburada's platform" at the time of the IPO "as evidenced by the revenue growth of only 5% and GMV growth of only 38% in the quarter before the IPO." (¶ 67). Hepsiburada has also admitted that the lifting of Covid lockdown restrictions "adversely impacted consumer behavior in online shopping" while self-servingly positing that the lockdown restrictions were only "fully" lifted as of July 1, 2021.  Def. Mem. at 4, 15; Def. Ex. 7, ECF No. 49-7 at 4 of 11; Def. Ex. 8, ECF No. 49-8 at 8 of 17.

Additionally, with respect to the challenged risk factor statements, Defendants focus heavily on the fact that the Registration Statement provided "ample warnings," such as warning

about the shifting state of Covid-19 restrictions, and that the Complaint has not pled that that lifting of Covid restrictions "caused" a shift in e-commerce. Def. Mem. at 22. These are all red herrings that ignore the simple legal premise that "to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit." *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 986 F. Supp. 2d 487, 515 (S.D.N.Y. 2013) (citing *In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 400 (S.D.N.Y. 2005)).

## II.    LEGAL STANDARDS

### A.    Fed. R. Civ. P. 12(b)(6)

In assessing Defendants' Fed. R. Civ. P. 12(b)(6) motion, the court should consider the complaint in its entirety, "accept all factual allegations … as true" and construe them in the light most favorable to plaintiff. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see In re Tufin Software Tech. Ltd. Sec. Litig.*, No. No. 20 Civ. 5646 (GHW), 2022 WL 596861, at *4 (S.D.N.Y. Feb. 25, 2022). Additionally, courts should draw all reasonable inferences in the plaintiff's favor. *Hawaii Structural Ironworkers Pension Trust Fund v. AMC Ent. Holdings, Inc.*, 422 F. Supp. 3d 821, 835 (S.D.N.Y. 2019) (citing *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011)). The question is not whether a plaintiff will prevail in the action, but whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A complaint should not be dismissed if it contains sufficient factual matter that, accepted as true, states a claim for relief that is plausible on its face. *See Id.* at 678.

### B.    Rule 8 Applies to Plaintiff's Securities Act Claims

Securities Act claims are subject to Rule 8(a)'s ordinary notice pleading requirements unless the allegations sound in fraud. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010). Here, where the Complaint specifically disclaims any component of fraud in

its Sections 11, 12(a)(2) and 15 claims (¶¶ 93, 111, 122), there are no averments of fraud." *Garber v. Legg Mason*, 537 F. Supp. 2d 597 (S.D.N.Y. 2008). Further, Defendants have not argued that the pleadings in this case are subject to Rule 9(b) and therefore, "notice pleading supported by facially plausible factual allegations is all that is required." *In re Morgan Stanley*, 592 F.3d at 358, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009).

## III. ARGUMENT

### A. The Complaint Adequately Pleads Material Misstatements and Omissions

A complaint sufficiently pleads claims under Sections 11 or 12(a)(2) of the Securities Act when it alleges: (1) an untrue statement of material fact; (ii) an omission of material fact that was necessary to make the existing statements not misleading; or (iii) an omission of material fact that was required to be disclosed. 15 U.S.C. §77k(a); *see also Panther Partners Inc. v. Jianpu Tech. Inc.*, No. 18 Civ. 9848 (PGG), 2020 WL 5757628, at 6 (S.D.N.Y. Sept. 27, 2020). Liability is "virtually absolute, even for innocent misstatements." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). Plaintiff "need not allege scienter[.]" *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 120 (2d Cir. 2013).

Facts are "material" if there is a "substantial likelihood" that their disclosure "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011). "[A] complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000); *cf. In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013) ("materiality will rarely be dispositive in a motion to dismiss.").

Here, the challenged misstatements and omissions pertain to Hepsiburada's revenue and

GMV growth, as well as other key operating performance indicators, including the statement in the Registration Statement that "*we believe that these trends will continue to positively impact our business*," referring to the Company's revenue and GMV growth as being "Strong Growth at Scale" and consistently increasing based on the growth figures provided. The above statements were a central component of the Registration Statement and therefore clearly material to investors. ¶¶ 5, 63. Defendants make only a half-hearted attempt to argue that the challenged misstatements and omissions are not material by stating the omission of non-final results are generally immaterial. Def. Mem. at 13. But here, the disclosure to Plaintiff and the other investors of what the Complaint alleges Defendants observed prior to the IPO--that GMV and other important metrics referenced in the Registration Statement were decelerating rather than accelerating-- would obviously be important to a reasonable investor.

Defendants also argue that the Q2 2021 results were "immaterial" because the Registration Statement demonstrated that Hepsiburada's performance fluctuated from period to period, relying on *Willard v. UP Fintech Holding Ltd.*, 527 F. Supp. 3d 609, 621-22 (S.D.N.Y. 2021). However, the decision in *Willard* is distinguishable from this case. First, the trends at issue in that case concerned trading commission revenue and trading volume, both of which "had seen dramatic swings" that were disclosed in the registration statements. *Id.* at 623. Here, contrary to Defendants' assertions, there were no fluctuations reported in revenue growth or GMV growth in the Registration Statement. Additionally, the registration statement in *Willard* included data from January 2019 (the first month of the unreported quarter at the time of the IPO), which showed that "the company was on track to show significant declines for the quarter." *Id.* at 624.

9

1.    **Defendants Had a Duty to Disclose Hepsiburada's Material Deceleration in Growth Before the IPO and the Strategic Margin Investments and Other Actions Taken to Mitigate the Material, Deceleration of Growth**

As noted above, "[i]t is well-established . . . that 'once a company speaks on an issue or topic, there is a duty to tell the whole truth,' '[e]ven when there is no existing independent duty to disclose information' on the issue or topic." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016). "When analyzing offering materials for compliance with the securities laws, the court reviews the documents holistically and in their entirety." *In re Morgan Stanley*, 592 F.3d 347, 365 (2d Cir. 2010). And, contrary to assertions by Defendants, "[t]he literal truth of an isolated statement is insufficient; the proper inquiry requires an examination of 'defendants' representations, taken together and in context.'" *Id.*, at 366; *see also In re Facebook*, 986 F. Supp. 2d at 514. "Thus, when an offering participant makes a disclosure about a particular topic, whether voluntary or required, the representation must be complete and accurate." *Meyer*, 761 F.3d at 250-51. Further, a duty to disclose adverse events that occur intra-quarter is required where a company has chosen to make representations on a specific topic. *See, In re Facebook*, 986 F. Supp. 2d at 516-517 (material misrepresentations where the Registration Statement contained positive statements that increased mobile usage would have a "generally positive" impact on revenues, but did not disclose that increased mobile usage was already negatively affecting revenue growth before the IPO); *In re Bank of America. Corp. Sec., Deriv. & ERISA Litig.*, 757 F. Supp. 2d 260, 304 (S.D.N.Y. 2010) ("intra-quarter updates may be required, if intervening events trigger a duty to disclose"); *In re Ulta Salon, Cosmetics & Fragrance, Inc. Sec. Litig.*, 604 F. Supp. 2d 1188, 1196 (N.D. Ill. 2009) (where the fiscal quarter ended nine days after an IPO, the failure to include adverse developments for metrics emphasized in the offering materials rendered the offering materials materially misleading).[8]

10

The Registration Statement repeatedly emphasized the Company's "Strong Growth" and "Attractive Unit Economics," particularly in recent years and in Q1 2021, but failed to disclose that in Q2 2021—the fiscal quarter that closed the day before the IPO—Hepsiburada had experienced sharp declines in revenue and GMV growth. ¶¶ 62-67. For example, the Registration Statement represented Hepsiburada's revenues had increased 66% in Q1 2021 compared to Q1 2020, and by 145% in fiscal year 2020 compared to fiscal year 2019. ¶ 63. Additionally, the Registration Statement represented that Hepsiburada's GMV increased 95% in Q1 2021 compared to Q1 2020 and by 111% in fiscal year 2020 compared to fiscal year 2019. ¶ 63. Further, the Registration Statement represented that *"[a]s we continue to scale up Hepsiburada, we believe that these trends will continue to positively impact our business . . . driving improvement in unit economics and profitability*." ¶ 63. Nowhere in those statements, or otherwise in the Registration Statement, did Hepsiburada even remotely allude to or suggest that it had already experienced declining growth in revenues and GMV, to such a degree that in Q2 2021 it had implemented heavy customer discounts and "strategic margin investments" that had driven unit economics and profitability down rather than "driving improvement." ¶¶ 64, 74, 78, 82. Thus, the Complaint adequately alleges that these statements were materially false and misleading and omitted material information.

Likewise, the general warning in the Registration Statement that Hepsiburada "may

_____

[8] Defendants' reliance on this Court's opinion in *Asay v. Pinduoduo Inc.*, No. 18 Civ. 7625 (PKC), 2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020) (Castel, J.) (Def. Mem. at 12, 17, 20, 22) is misplaced. In *Pinduoduo*, the Court held that negative events from the quarter before an offering did not need to be disclosed because "the Complaint does not explain how further disclosure would have significantly altered the total mix of information available to a reasonable investor or disclosed a trend not otherwise explained in the offering documents." *Id.* at 10. However, in *Pinduoduo* the marketing expenses that were at issue had grown by a multiple of sixteen in the prior year, which reflected a doubling of marketing expenses every quarter. *Id.* Therefore, the doubling of marketing expenses in the second quarter before the IPO was consistent with that trend. Here, by contrast, the Complaint alleges that the sharp deceleration of revenue and GMV growth was a reversal of the representations in the Registration Statement that repeatedly emphasized only increasing growth rate trends. ¶¶ 63-65.

experience significant fluctuations in [its] results of operations and growth rate" was also false and misleading because it did not inform investors that the "significant fluctuations" in its operations and growth rate had already occurred. Moreover, the Company's representation in the Registration Statement that "consumers have adopted online shopping behavior during the pandemic, ***which we expect to become permanent***" was also a material misstatement of present fact because it represented that then-existing consumer behavior supported continued growth in the Company's key operating performance indicators—a representation that contradicted the undisclosed sharp deceleration of both revenue and GMV growth and the mitigating actions the Company had taken in Q2 2021 to combat the slowdown.

Specifically, as confirmed shortly after the IPO on August 26, 2021, when Hepsiburada issued its first earnings press release as a public company (i) revenue growth declined dramatically from 66% revenue growth in Q1 2021 to only 5.2% in Q2 2021 (¶¶ 65, 14) (Def. Ex. 7, ECF No. 49-7 at 3 of 11); and (ii) GMV growth was only 38.2% in Q2 2021, down from 95% GMV growth in Q1 2021 (Def. Ex. 7, ECF No. 49-7 at 3 of 11), along with other deterioration of key operating performance indicators (¶ 14). Further, during the August 26, 2021 earnings call, Defendants Hepsiburada and Öz repeatedly admitted that in Q2 2021 the Company had suffered a sharp drop in gross contribution margin "mainly due to dynamics in revenue growth" during Q2 2021 and as a result of making "strategic margin investments" and taking other actions to drive order frequency and "prioritize" GMV growth at the expense of margins. ¶¶ 81-82; Def. Ex. 8, ECF No. 49-8 at 9 of 17, 12 of 17.

The facts admitted in both the August 26 press release and conference call (¶¶ 73-82; Def. Exs. 7 and 8, ECF Nos. 49-7 and 49-8) establish that Hepsiburada's purported "strong growth" had conclusively ended and reversed direction in the quarter before the IPO driving down unit

12

economics and profitability rather than "driving improvement" as emphasized in the Registration Statement. These negative events observed by the Company prior to the IPO during Q2 2021 are the opposite of the accelerated growth represented in the Registration Statement and these negative trends continued into Q3 2021. ¶¶ 83-84.

Defendants' assertions that the Complaint has not established "actual knowledge" of an adverse trend as of June 30, 2021 (Def. Mem. at 20-21) and that the sharply decelerating growth and other negative dynamics in key operating performance indicators did not exist before the IPO, simply because Hepsiburada had not yet calculated Q2 2021 financial results, misstates the allegations of the Complaint and the law. Def. Mem. 3. Under Sections 11 and 12(a)(2) of the Securities Act, a Complaint does not have to plead or prove that Defendants had actual knowledge of the false statements. *In re Morgan Stanley*, 592 F.3d 347, 359, (2d Cir. 2010) ("plaintiffs bringing claims under sections 11 and 12(a)(2) need not allege scienter. . ."), citing *Rombach v. Chang*, 355 F.3d 164, 169 n.4 (2d Cir. 2004). Moreover, the Complaint alleges, and Defendant Hepsiburada admitted, that the deceleration of growth in revenues and GMV and large drop in profitability as measured by gross contribution margin had occurred and were observed by the time of the IPO, and were not disclosed to investors. ¶¶ 73-82. Defendants had a duty to speak truthfully, accurately, and without misleading the reasonable investor regarding existing negative events and negative factors in Q2 2021.

Defendants' other arguments that there was no duty to disclose also fail. For example, Defendants argue that "[n]o rule or regulation required Hepsiburada to report [2Q 2021] results in the Registration Statement[.]" Def. Mem. at 11-12. The Complaint does not allege that Defendants were required to disclose Q2 2021 results. Moreover, this argument ignores that the SEC's regulations require registration statements to include "further material information, if any, as

13

may be necessary to make the required statements, in the light of the circumstances under which they are made, not misleading." 17 C.F.R. §230.408(a).

Likewise, the Court should reject Defendants argument that the alleged misstatements in paragraph 63 concerning Hepsiburada's past performance were "accurate statements of historical fact," which are "non-actionable," citing *Medina v. Tremor Video, Inc.*, No. 13-cv-8364 (PAC), 2015 WL 1000011, at *4 (S.D.N.Y.), *aff'd*, 640 F. App'x 45 (2d Cir. 2016). Def. Mem. at 9. Here, by sharp contrast and as discussed above, the Complaint alleges specific facts that make Defendants' statements of these historical facts false and misleading. Further, the "underlying revenue dynamics" that the defendants "observed" before the IPO and took certain mitigating measures to counter in Q2 2021, were not disclosed. *See supra,* I.B, I.C.

Defendants also argue that the statements in paragraph 63 are inactionable statements of opinion. However, under *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 194 (2015), opinion statements are not immune from liability under Section 11. The question is whether investors considered the allegedly actionable statements in paragraph 63— however classified—materially misleading. *Id*. ("The investor must identify particular (and material) facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context."). For a statement of opinion to be actionable under Section 11, "a plaintiff must plausibly allege that the opinion was not honestly held by the speaker at the time that the statement was made." *In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 463 (S.D.N.Y. 2018) (Castel, J.), citing *Omnicare* at 183-185. Here, the Complaint alleges that the decreases in revenue and GMV growth and other metrics (1) occurred in the second quarter prior to the IPO; (2) were observed by the Company in Q2 2021 prior to the IPO and that (3) once observed in Q2 2021 prior to the IPO the Company

14

instituted substantial increases in expenses in an attempt to counter the decreases in revenue and GMV growth and other metrics. ¶¶ 14, 15, 77 - 82. Accepted as true, these allegations raise the inference that Hepsiburada and the other Defendants did not honestly hold the expressed opinions, such as "we believe that these trends will continue." *SunEdison* at 480.

Finally, Defendants argue that the statements in paragraph 63 are inactionable puffery. "Puffery is an optimistic statement that is so vague, broad, and non-specific that a reasonable investor would not rely on it, thereby rendering it immaterial as a matter of law." *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 572 (S.D.N.Y. 2011); *see also Vivendi*, 838 F.3d at 245. A statement is immaterial as a matter of law, however, only when it is "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of [its] importance." *Ganino*, 228 F.3d at 162. Courts "must exercise great caution" when considering a puffery defense at the "motion to dismiss stage" because "materiality determinations entail delicate, fact-intensive assessments that are more properly left to the jury." *Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 244 (S.D.N.Y. 2012). Here, the statements are not puffery because they are supported by specific statements of fact concerning recent and historical revenue and GMV growth quarter over quarter and year over year. Therefore, when viewed by a reasonable investor as a whole, the reasonable investor would find the nondisclosures at issue here, which are directly opposite to the positive and accelerating growth emphasized in the Registration Statement, to be materially misleading, particularly given the statement that "these trends will continue to positively impact the business."

### 2. Defendants Raise Factual Disputes Inappropriate at this Stage About the Timing of the Lifting of Covid Lockdown Restrictions

Defendants also make a number of improper factual arguments about the lifting of Covid

restrictions and the Covid-related disclosures in the Registration Statement.

First, Defendants raise a factual dispute about the timing of the lifting of Covid lockdown restrictions. The Complaint alleged a number of third-party sources indicating that Covid lockdown restrictions were lifted in early March 2021. ¶ 15, n.6. Defendants allege lengthy lockdowns were reimposed and were only "fully" lifted on July 1, 2021, but Defendants have provided no support for when the alleged reimposed lockdowns took place, or their extent or nature. The Defendants only reference Hepsiburada's August 26, 2021 self-serving statements as support for the assertion that lockdowns were only "fully" lifted as of July 1, 2021. However, as discussed above, on a 12(b)(6) motion, all of the facts asserted by Lead Plaintiff should be accepted as true and in the light most favorable to Plaintiff. Further, to the extent Defendants' contentions appear to take issue with Plaintiff's allegations, they simply serve to confirm that factual disputes exist that cannot be resolved on a motion to dismiss. *Panther Partners Inc. v. Jianpu Tech. Inc.*, No. 18 Civ. 9848 (PGG), 2020 WL 5757628, at \*14 (S.D.N.Y. 2020) (citation omitted).

Second, Defendants argue they had "No duty to disclose additional Covid-Related Information," but the Complaint does not allege there was some general duty to disclose Covid related information. Def. Mem at 15. Instead, the Complaint alleges that before the IPO in Q2 2021, growth materially deteriorated and that this was not disclosed to investors despite the repeated statements to the contrary. ¶ 63, including FN. 10. The cause of the deteriorating growth in revenue and GMV is not at issue in the Action. What is at issue is that these undisclosed negative facts existed at the time of the IPO and contradicted the positive and accelerating growth in revenue and GMV represented in the Registration Statement. Even assuming *arguendo*, the cause of the negative trends is relevant, it is a question of fact that cannot be resolved on this motion whether the sharply decelerating growth was due to the lifting of Covid lockdown restrictions, which

16

occurred shortly before Q2 2021 in March 2021, or due to increased competition or a shift in the e-commerce market as a result of the lifting of lockdown restrictions. ¶ 70.

Similarly, Defendants wrongfully assert that the Complaint has not and must plead a causal connection between the lifting of Covid lockdown restrictions and a shift away from e-commerce. Def. Mem. at 22. Again, the Complaint asserts that Registration Statement was misleading due to the growth slowdown and counteractive measures being affirmatively taken by Hepsiburada in Q2 2021 that were not disclosed and rendered the other statements in the Registration Statement misleading. Plaintiff's losses were caused by the undisclosed negative dynamics in revenue and GMV growth, and there is no requirement that Plaintiff plead or prove what caused those negative events. Therefore, factual arguments concerning the timing of and lifting of Covid restrictions are, on this motion, a red herring and should be rejected.

### 3. The Challenged Risk Disclosures Were Materially False and Misleading Misstatements

The Complaint alleges that a number of risk disclosures in the Registration Statement are actionable misstatements because the Registration Statement purported to warn that these risks "may" occur in the future, but those risks had already materialized by the time of the IPO and had negatively affected the Company. ¶¶ 69-70. According to Defendants' memorandum and their chart, Def Ex. 2, ECF No. 49-2[9], Defendants appear to argue that these risk disclosures are not actionable based on some combination of being immaterial, disclosed, puffery or opinion. Additionally, the Defendants again rely on their misplaced argument that no regulation required

---

[9] Defendants have improperly circumvented the Court's rules on page limits by adding in the form of an Appendix (ECF No. 49-2) an additional 8 pages of argument to their 25-page brief. The Appendix is confusing, misrepresents which statements Plaintiff allege are false and sets forth conclusory reasons for Defendants assertions that the statements are not actionable. Therefore, the Court should disregard and/or strike the Appendix. In the event that the court considers Defendants' improper Appendix, Plaintiff has included a chart that demonstrates the inaccuracies of Defendants Appendix. *See* Exhibit 1 to the Declaration of Frederic S. Fox in Opposition to the Defendants' Motion to Dismiss the Amended Complaint ("Fox Decl.), dated May 13, 2022, Ex. 1.

Hepsiburada to disclose Q2 2021 financial results and that Defendants had no duty to make additional disclosures given the other warnings in the Registration Statement. Defendants are wrong.

The *Facebook* IPO case involving alleged violations of Sections 11 and 12(a)(2) strongly supports the Complaint's allegations that that the risk factors at issue were material misrepresentations, in addition to also being actionable under Item 303 as discussed below. *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013) ("risk disclosures are misleading where the company warns only that a risk may impact its business when that risk has already materialized"). In *Facebook*, Judge Sweet explained that a "Company's purported risk warnings misleadingly represented that [an issue] was merely possible when, in fact, it had already materialized. The warnings only warned what might occur if certain contingencies were met; the disclosures did not make clear that such contingencies had, in fact, already occurred." *Id.*

With respect to the first risk factor, which states Hepsiburada "may experience significant fluctuations in our results of operations and growth rate" and "revenue may slow down or decline for a number of reasons," Defendants assert these statements cannot form the basis of a claim because the Registration Statement "did not imply that none of these risks, at least to some extent, would affect [the company's] most recent fiscal quarter," citing *In re Noah Educ., Ltd. Sec. Litig.*, No. 08 Civ. 9203(RJS), 2010 WL 1372709, at *7-8 (S.D.N.Y. Mar. 31 2010). However, *In re Noah* recognized that "[w]hether or not a statement is materially misleading is a 'fact-specific' inquiry." *Id.* at *7 (citing *Basic Inc. v. Levinson,* 485 U.S. 224, 240 (1988)). Further, the *Noah* court made clear that the focus is not whether statements are "literally true," but "whether defendants' representations, taken together and in context, would have misl[ed] a reasonable

18

investor about the nature of the [securities]." *Id.* (citing *McMahan & Co. v. Wherehouse Entm't, Inc.,* 900 F.2d 576, 579 (2d Cir. 1990)).[10] Here the Complaint alleges that at the time of the IPO significant negative deceleration of revenue and GMV growth had already occurred.

With respect to the other risk factors alleged to be materially false, in each case Defendants warned of future events that had already happened at the time of the IPO, rendering those statements materially false. The second risk factor identified in the Complaint as materially false purported to warn that "[Hepsiburada] may face challenges and uncertainties in implementing [its] e-commerce strategy" when consumers were already shifting away from Hepsiburada's e-commerce platform in Q2 2021 as evidenced by the "underlying revenue dynamics" and deceleration of growth in the second quarter repeatedly discussed during the Company's August 26, 2021 conference call. ¶¶ 81-82; Def. Ex. 8, ECF No. 49-8. Similarly, the third risk factor identified in the Complaint as actionable states "we may be required to increase our spending or maintain lower prices, which could materially and adversely affect our business, prospects, financial condition and results of operations" when this had already happened as evidenced by the "strategic margin investments" and discounts. ¶¶ 69, 79-82. Lastly, the fourth risk statement asserted to be actionable states "customers may shift back towards offline retailers as social distancing and government restrictions ease, as a result of which we may experience slower than expected growth" (¶ 69), when this had already happened as evidenced by the sharp drop off in revenue and GMV growth.

Defendants also argue the Registration Statement "disclosed the very information Plaintiff claims was omitted," pointing to generic risk statements that did not disclose that investments

---

[10] The facts in *In re Noah* are distinguishable from those here. In *In re Noah*, other than the Company's warning about the potential for costs to rise, no other specific representations were made in the prospectus about the historic cost of materials or expected trends. These facts contrast sharply with the situation in this case where the Registration Statement made numerous positive statements about the Company's historical revenue and GMV growth trends and that the trends were expected to continue. ¶ 63.

and discounts were being made in Q2 2021 to combat an observed significant slowdown in growth. Def. Mem. at 5 (citing Def. Ex 6 at 24, 27). But these generalized and indefinite warnings did not inform investors of trends that had already negatively affected its revenues, GMV, and other growth metrics before the IPO. Further, the reference to cautionary language about "strategic investments" in the Registration Statement cited by Defendants has nothing to do with the "strategic margin investments" at issue here and is taken out of context. The strategic investments identified by Defendants refer to certain strategic initiatives and investments in "newly launched services" that had not been material and have nothing to do with the "strategic margin investments" disclosed on August 26, 2021.[11]

> ***Once these newly-launched services are fully-operational*** (and services still in development become operational), we expect to leverage our existing customer base to help support the growth of these business initiatives as a function of our overall growth. We expect that among the business initiatives and strategic investments discussed above, HepsiExpress and HepsiGlobal (inbound) to begin to contribute to our GMV in the short to medium-term. While we believe that in the near term these strategic investments are likely to have a negative impact on our margins and cash flow generation given their levels of maturity, growth rates, and scale, in the long term we believe these investments will enhance our market leading position and positively impact our total revenue, Gross Contribution and Free Cash Flow. ***Our historical capital expenditures and costs incurred related to the development and launch of these strategic initiatives have not been material in the context of our overall business and financial position.*** . . .

Recognizing that these risk disclosures are inadequate, Defendants also advance the argument that making these disclosures would have forced Hepsiburada to give its competitors advance notice of sensitive information. Def. Mem. at 17-18. But the Complaint has not asserted that sensitive pricing information should have been disclosed, rather once the Company chose to speak about its positive and accelerating growth in revenue and GMV, it had a duty to be accurate and complete about those representations and disclose the negative facts that would have alerted investors to the true state of the Company's business at the time of the IPO. Additionally,

---

[11] For the complete context see Def. Ex. 6, ECF No. 49-6 at 86 of 282.

Defendants then argue the exact opposite, *i.e.*, that once the customer discounts and promotions were made, the information was publicly available, citing *Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 551 (S.D.N.Y. 2021). But *Lau* involved market share data that was "readily accessible in the public domain" to which investors were directed in the prospectus, which is not the case here, nor have Defendants provided any facts supporting a theory that the "strategic margin investments" and other margin-cutting measures were "readily accessible in the public domain."

### 4. The Registration Statement Violates Item 303

Defendants violated Item 303 by failing to disclose events and uncertainties that existed at the time of the IPO: (i) Hepsiburada's growth sharply declined in Q2 2021; and (ii) prior to the IPO, Hepsiburada implemented significant "strategic margin investments," discounts and took other actions to heavily promote low margin goods on its platform in order to combat the Company's slowdown in growth. ¶¶ 95-96.

Defendants argue that Item 303 did not require Hepsiburada to disclose its decelerating revenues and GMV growth or its increased spending and other actions in Q2 2021 because "that was outside the Registration Statement's scope." Def. Mem. at 19. Again, this is premised on the baseless argument that the Registration Statement did not have to disclose any trends or uncertainties about Q2 2021 because the scope of the Registration Statement was limited to Q1 2021. As alleged in the Complaint the negative trends were observed by the Company in 2Q 2021, prior to the IPO and the Company took steps in Q2 2021 to attempt to address these negative trends. *See, e.g.*, ¶¶ 5, 7-9.

Hepsiburada has admitted and the Complaint alleges that in Q2 2021 Hepsiburada implemented significant strategic margin investments, discounts, and advertising promotions that were cash-burning and expensive, involving materially increased spending by the Company to promote lower margin and high frequency categories and monetary incentives to merchants to keep

merchants on the Company's platform and that these actions were taken due to the "underlying dynamics in revenue growth" in Q2 2021. ¶¶ 8, 82; Def. Ex. 8, ECF No. 49-8 at 9 of 17. Further, the Complaint alleges with supporting outside sources that the President of Turkey lifted virtually all Covid lockdown restrictions on March 2, 2021 and that this led consumers back to shopping in physical stores. ¶¶ 15, 55. These facts are analogous to *Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 716 (2d Cir. 2011) where violation of Item 303 was established by the downward trend in the real estate market, which was already existing at the time of the IPO.

### 5.    The Registration Statement Violates Item 105

Item 105 requires an issuer to disclose "the material factors that make [the securities] speculative or risky." 17 C.F.R. §229.105(a).[12] "The SEC interprets Item 5 of Form 20-F, which imposes disclosure requirements on foreign issuers such as Barclays, as 'calling for the same disclosure as Item 303 of Regulation S-K.'" *See In re Barclays Bank PLC Sec. Litig.*, No. 09 Civ. 1989 (PAC), 2017 WL 4082305, at *8 n.11 (S.D.N.Y. Sept. 13, 2017).

Hepsiburada's material growth slowdown in Q2 2021 was among the most significant risks facing the Company, and the Registration Statement does not make this disclosure or that it was taking specific actions to mitigate these trends. ¶ 10; *see City of Roseville Emp.' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 427 (S.D.N.Y. 2011) (sustaining Item 105 claims where specific risks were not disclosed even though the "Registration Statement does include discussions of each of these topics").[13]

### B.    The Complaint Adequately Alleges Section 15 Claims

The Defendants only contest the Complaint's Section 15 claims by arguing there is no primary violation of the Securities Act. Def. Mem. at 22, n.10. Because primary claims are

---

[12] Item 503 was relocated to Item 105 on May 2, 2019.
[13] Defendants only contest Item 105 liability by reiterating their previous arguments. Def. Mem. at 20.

adequately alleged, this argument fails.

      **C.**      **The Complaint Should Not Be Dismissed or Stayed Under Colorado River**

Defendants argue that the Action should be stayed or dismissed in favor of *Benson v. Hepsiburada*, No. 655701/2021 (N.Y. Sup. Ct.), which is currently pending in New York Supreme Court. Defendants argue that under *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976), this Court should decline jurisdiction because the *Benson* action asserts some of the same claims asserted here.

To determine whether abstention under *Colorado River* is appropriate, "a district court is required to weigh six factors, with the balance heavily weighted in favor of the exercise of jurisdiction." *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 345 (S.D.N.Y. 2010) (Castel, J.) (citing *Vill. Of Westfield v. Welch's,* 170 F.3d 116, 120 (2d. Cir. 1999)). A careful analysis of the *Colorado River* factors demonstrates that Defendants are wrong, and this Court should not stay or dismiss this action. Each factor is addressed below.

The first factor to consider is "(1) the assumption of jurisdiction by either court over any res or property." *In re Bank of Am.*, 757 F. Supp. 2d at 345. This factor favors jurisdiction because here, as this Court reasoned in *In re Bank of America*, this not an *in rem* action and the absence of a res points toward the exercise of federal jurisdiction.

The second *Colorado River* factor considers the "inconvenience of the federal forum." *In re Bank of Am..*, 757 F. Supp. 2d at 345. The court in *Bank of America* reasoned that the federal forum was not inconvenient to defendants because they were already litigating a claim arising out of substantially similar facts in the forum. While the *Benson* action is not pending in this Court, it is not inconvenient to Defendants to litigate in this forum because the *Benson* action is in New

York State Supreme Court, a block away from this Court. Therefore, the Southern District of New York is not an inconvenient forum for Defendants.

Likewise, regarding the third *Colorado River* factor, the mere potential for conflicting outcomes, in *Bank of America* this Court found that "[t]he mere potential for conflicting outcome between the two actions does not justify abstention under the 'piecemeal litigation' factor." *In re Bank of Am.*, 757 F. Supp. 2d at 345 (*citing Colorado River*, 424 U.S. at 816, 96 S.Ct. 1236.). Therefore, even assuming, *arguendo,* that litigating the parallel actions would result in conflicting outcomes, abstention would not be warranted on that basis alone.

The fourth *Colorado River* factor examines the order in which jurisdiction was obtained. Here, while jurisdiction was obtained in the *Benson* action a few weeks prior to jurisdiction being obtained in the instant Action, the *Benson* action is, in the same procedural posture as the instant Action as both actions are in the motion to dismiss stage. *See* Fox Decl., Ex. 2.  Therefore, *Benson* factor number four weighs in favor of jurisdiction since the "balance [is] heavily weighted in favor of the exercise of jurisdiction"

*Colorado River* factor number five, "whether state or federal law supplies the rule of decision," weighs in favor of exercising federal jurisdiction. While the *Benson* action contains certain claims that are at issue in this action, the *Benson* action does not include the Section 12(a)(2) claim under the Securities Act, which is governed by federal law and provides a unique and valuable rescissory measure of damages not available in the claims asserted in *Benson*. Thus, the fifth factor weighs in favor of exercising federal jurisdiction. *Id.* (quoting *Village of Westfield v. Welch's*, 170 F. 3d 116, 170 ((2d. Cir. 1999) ("The presence of federal issues strongly advises exercising federal jurisdiction.")). The court in *Bank of America* viewed this as "a significant

24

consideration because important federal policies are implicated." *In re Bank of America,* 757 F. Supp. 2d 260, 346 (S.D.N.Y. 2010).

*Colorado River* factor number six, which examines whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction, strongly favors this Court exercising jurisdiction. As set forth above, this action includes a 12(a)(2) claim which is not present in the *Benson* action and has a different measure of damages than the claims present in the *Benson* action. Therefore, the *Benson* action does not adequately protect Plaintiff's and the Class' rights with respect to this important Federal claim. Moreover, as envisioned by the Private Securities Litigation Reform Act of 1995, Lead Plaintiff IWA-Forest Pension Plan in this Action is a sophisticated institutional investor who will vigorously represent the interests of the class and monitor this litigation.

## IV. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that Defendants' motion to dismiss be denied. In the event the Court grants Defendants' motion to dismiss, in whole or in part, Plaintiff requests leave to amend. *See In re SSA Bonds Antitrust Litig.*, No. 16 Civ. 3711 (ER), 2018 WL 4118979, at *8 (S.D.N.Y. Aug. 28, 2018) ("Courts should freely give leave [to amend a pleading] when justice so requires. Fed. R. Civ. P. 15(a)(2)," and a complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.")

Dated: May 13, 2022                         Respectfully submitted,

                                            */s/ Frederic S. Fox*
                                            Frederic S. Fox
                                            Donald R. Hall
                                            Jeffrey P. Campisi
                                            Pamela A. Mayer
                                            **KAPLAN FOX & KILSHEIMER LLP**
                                            850 Third Avenue, 14th Floor

New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
ffox@kaplanfox.com
dhall@kaplanfox.com
jcampisi@kaplanfox.com
pmayer@kaplanfox.com

*Attorneys for Lead Plaintiff IWA-Forest Industry Pension Plan and the Proposed Class*

26

**CERTIFICATE OF SERVICE**

I, Frederic S. Fox, hereby certify that, on May 13, 2022, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM\ECF system which will send electronic notices of the filing to all counsel of record.

/s/ Frederic S. Fox
Frederic S. Fox