**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IWA-FOREST INDUSTRY PENSION PLAN, Individually and On Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>      v.<br><br>D-MARKET ELEKTRONIK HIZMETLER VE TICARET ANONIM ŞIRKETI a/k/a D-MARKET ELECTRONIC SERVICES & TRADING d/b/a/ HEPSIBURADA, MEHMET MURAT EMIRDAĞ, HALIL KORHAN ÖZ, HANZADE VASFIYE DOĞAN BOYNER, ERMAN KALKANDELEN, MEHMET EROL ÇAMUR, CEMAL AHMET BOZER, VUSLAT DOĞAN SABANCI, MUSTAFA AYDEMIR, TOLGA BABALI, COLLEEN A. DE VRIES, COGENCY GLOBAL INC., MORGAN STANLEY & CO. LLC, J.P. MORGAN SECURITIES LLC, GOLDMAN, SACHS & CO. LLC, BOFA SECURITIES, INC., UBS SECURITIES LLC, and TURKCOMMERCE B.V.,<br><br>           Defendants. | Honorable P. Kevin Castel<br>Civ. A. No. 1:21-cv-08634-PKC<br><br>**CLASS ACTION** |

**DECLARATION OF FREDERIC S. FOX IN SUPPORT OF THE
MEMORANDUM OF LAW IN OPPOSITION TO HEPSIBURADA AND
THE UNDERWRITER DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT OR ALTERNATIVELY TO STAY THE ACTION**

I, FREDERIC S. FOX, declare the following under the penalty of perjury:

1.    I am a partner of the law firm of Kaplan Fox & Kilsheimer LLP. I respectfully submit this Declaration in Support of the Memorandum of Law in Opposition to Hepsiburada and the Underwriter Defendants' Motion to Dismiss the Amended Complaint or Alternatively to Stay the Action. (ECF Nos. 47-49)

2.    Attached hereto are true and correct copies of the following documents:

Exhibit 1:    Chart prepared by counsel responding to Defendants' Appendix of Challenged Statements and Omissions (ECF No. 49-2); and

Exhibit 2:    Docket as of May 13, 2022 in *Benson v. Hepsiburada*, No. 655701/2021 (N.Y. Sup. Ct.).


/s/ Frederic S. Fox
Frederic S. Fox

# EXHIBIT 1

| Compl.[1] | Material Misstatements or Omissions (The shaded portions were not alleged in the Complaint) | Reason(s) Not Actionable in Defendants' Appendix (ECF No. 49-2) | Lead Plaintiff's Argument[2] |
|---|---|---|---|
| ¶ 62 | Our business has experienced a long history of strong growth as a result of our commitment to meticulous execution. Our revenues increased by 66% to TRY 1.4 billion in the three months ended March 31, 2021 from TRY 0.8 billion in the three months ended March 31, 2020 and by 145% to TRY 6.4 billion in 2020 from TRY 2.6 billion in 2019, and by 33% from TRY 2.0 billion in 2018, and our total GMV increased by 95% to TRY 4.5 billion in the three months ended March 31, 2021 from TRY 2.3 billion in the three months ended March 31, 2020, and by 111% to TRY 17.0 billion in 2020 from TRY 8.0 billion in 2019, which was an increase of 56% from TRY 5.1 billion in 2018, fueled by increasing purchase frequency, greater customer loyalty and an expanding pool of Active Customers of 9 million in 2020, up from 6.5 million in 2019 and 4.8 million in 2018, with a compound annual growth rate | • Challenged portion of statement is puffery (Section I.A)<br>• No duty to make additional disclosures (Section I.B) | • These are material misstatements that failed to disclose the sharp deceleration in revenue and GMV growth during Q2 2021, the quarter that ended before the IPO, and the specific cash burning and margin reducing actions Hepsiburada implemented in Q2 2021 in response to the sharp deceleration of growth. Sections III.A.1.<br>• These statements are not puffery because they are specific statements of fact that when viewed by a reasonable investor as a whole are materially misleading, particularly given other representations throughout the Registration Statement that "these trends will continue to positively impact the business." Section III.A.1 at 15. |

[1] "¶ _" refers to paragraphs of the Amended Complaint (ECF No. 37).

[2] Defendants improperly circumvented the Court's rules on page limits by adding in the form of an Appendix (ECF No. 49-2) an additional 8 pages of argument to their 25 page brief. The Appendix is confusing, misrepresents which statements Plaintiff allege are false and sets forth conclusory reasons for Defendants assertions that the statements are not actionable. Therefore, the Court should disregard and/or strike the Appendix. In the event that the court considers Defendant's improper Appendix, Plaintiff has included the chart herein that demonstrates the inaccuracies of Defendants Exhibit.

| Compl.[1] | Material Misstatements or Omissions (The shaded portions were not alleged in the Complaint) | Reason(s) Not Actionable in Defendants' Appendix (ECF No. 49-2) | Lead Plaintiff's Argument[2] |
|---|---|---|---|
| | ("**CAGR**") of 38% from 2018 to 2020. | | |
| ¶ 63 | ***Highly Attractive Financial Profile with Strong Growth at Scale, High Order Frequency Rates and Attractive Unit Economics*** [Emphasis in original.]<br><br>Our business has grown substantially in recent years. **Our revenues increased by 66% to TRY 1.4 billion in the three months ended March 31, 2021 from TRY 0.8 billion in the three months ended March 31, 2020 and by 145% to TRY 6.4 billion in 2020 from TRY 2.6 billion in 2019 and by 33% from TRY 2.0 billion in 2018, and our total GMV increased by 95% to TRY 4.5 billion in the three months ended March 31, 2021 from TRY 2.3 billion in the three months ended March 31, 2020, and by 111% to TRY 17.0 billion in 2020 from TRY 8.0 billion in 2019 and by 56% from TRY 5.1 billion in 2018**, as we pursued our significant transformation from a 1P-only business to a hybrid commerce model of 1P and 3P. For the three months ended March 31, 2021, and in 2020, 3P accounted for approximately 70% and approximately 59% of our GMV, respectively. [Emphasis | • Challenged portion of statement is an accurate statement of historical fact (Section I.A)<br>• Challenged portion of statement is puffery (Section I.A)<br>• Challenged portion of statement contains an opinion (Section I.A)<br>• No duty to make additional disclosures (Section I.B) | • These are material misstatements that failed to disclose the sharp deceleration in revenue and GMV growth during Q2 2021, the quarter that ended before the IPO, and the specific cash burning and margin reducing actions Hepsiburada implemented in Q2 2021 in response to the sharp deceleration of growth. Sections III.A.1.<br>• Further, these statements failed to disclose that the specific "Strong Growth" referenced in the heading had conclusively ended and reversed direction contrary to the language that "[a]s we continue to scale up Hepsiburada, we believe that these trends will continue to positively impact our business." Section III.A.1 at 12.<br>• Statements that are literally true can be material misstatements when examined with other representations in context, as in this case where the Registration Statement represents "these trends will continue." III.A.1 at 10, 18. |

| Compl.[1] | Material Misstatements or Omissions (The shaded portions were not alleged in the Complaint) | Reason(s) Not Actionable in Defendants' Appendix (ECF No. 49-2) | Lead Plaintiff's Argument[2] |
|---|---|---|---|
| | added.]<br><br>The strong growth we experienced in recent years also enabled us to generate positive annual Free Cash Flow. We had Free Cash Flow of TRY (158.8) million and TRY 60.5 million in the three months ended March 31, 2021 and 2020, respectively and TRY 341.4 million, TRY 310.4 million and TRY 119.0 million in 2020, 2019 and 2018 respectively. We experienced negative Free Cash Flow in the three months ended March 31, 2021 due to higher than usual purchases of inventories, in order to secure supply during the COVID-19 lockdown period in the second quarter of 2021.<br><br>The growth has been fueled by several factors, including an increased frequency of orders to 3.9 in 2020, up from 3.5 in 2019 and 3.1 in 2018, and an expanding Active Customer base of 9 million in 2020, up from 6.5 million in 2019 and 4.8 million in 2018.<br><br>**As we continue to scale up Hepsiburada, we believe that these trends will continue to positively impact our business, with further Active Customer base growth, strong cohort performance and** | | • These statements are not puffery because they are supported by specific statements of fact that when viewed by a reasonable investor as a whole are materially misleading, particularly given the representation that "these trends will continue." Section III.A.1 at 15.<br><br>• Once the Defendants chose to speak on certain topics in the Registration Statement there was a duty to tell the whole truth and to be complete and accurate. Section I at 1; Section III.A.1 at 10.<br><br>• These statements include actionable opinions because the Complaint alleges that the decreases in revenue and GMV growth and other metrics (1) occurred in Q2 2021 prior to the IPO; (2) were observed by the Company in Q2 2021 prior to the IPO and that (3) once observed in Q2 2021 prior to the IPO the Company instituted substantial increases in expenses in an attempt to counter the decreases in revenue and GMV growth and other metrics. ¶¶ 14, 15, 77 - 82. Accepted as true, these allegations raise the inference |

3

| Compl.[1] | Material Misstatements or Omissions (The shaded portions were not alleged in the Complaint) | Reason(s) Not Actionable in Defendants' Appendix (ECF No. 49-2) | Lead Plaintiff's Argument[2] |
|---|---|---|---|
| | **increasing operational efficiency driving improvement in unit economics and profitability.** [Emphasis added.] | | that Hepsiburada and the other Defendants did not honestly hold the expressed opinion that "we believe that these trends will continue." Section III.A.1 at 14-15. |
| ¶ 66 | *COVID-19 Impact*<br><br>In the three months ended March 31, 2021 and in 2020, our financial results were positively impacted by a considerable shift to online shopping by Turkish customers in response to the COVID-19 pandemic. GMV grew for the three months ended March 31, 2021 by 95%, compared to the three months ended March 31, 2020, the year ended December 31, 2020 by 111%, compared to the year ended December 31, 2019 and GMV grew 56% for the year ended December 31, 2019 compared to the year ended December 31, 2018. The impact of the COVID-19 pandemic on consumer behavior led to significant increases in GMV growth in the three months ended March 31, 2021 and in 2020, which impacts the comparability of results of operations between the year ended December 31, 2018 and 2019, and the year ended December 31, 2020 and the three months ended March 31, | • Challenged portion of statement is an opinion (Section I.A)<br>• No duty to make additional disclosures (Section I.B) | • A large portion of this excerpt by Defendants was not alleged as a false statement in the complaint.<br>• These statements include actionable opinions because the Complaint alleges that the decreases in revenue and GMV growth and other metrics (1) occurred in Q2 2021 prior to the IPO; (2) were observed by the Company in Q2 2021 prior to the IPO and that (3) once observed in Q2 2021 prior to the IPO the Company instituted substantial increases in expenses in an attempt to counter the decreases in revenue and GMV growth and other metrics. ¶¶ 14, 15, 77 - 82. Accepted as true, these allegations raise the inference that Hepsiburada and the other Defendants did not honestly hold the expressed opinion that "consumers have adopted online shopping behavior during the pandemic, which we expect to |

| Compl.[1] | Material Misstatements or Omissions (The shaded portions were not alleged in the Complaint) | Reason(s) Not Actionable in Defendants' Appendix (ECF No. 49-2) | Lead Plaintiff's Argument[2] |
|---|---|---|---|
| | 2020 and in the three months ended March 31, 2021. See "*Market and Industry Data.*" <br><br> COVID-19 has led to significant global disruptions that not only which affected our business, but also our customers, merchants and suppliers. See "*Risk Factors - Risks Relating to Our Business and Industry - The COVID-19 pandemic has affected and may continue to negatively affect certain of our business activities and results. Any future occurrence of natural disasters, epidemics, pandemics or other outbreaks, or other catastrophic events could also materially and adversely affect our business, results of operations or financial condition.*" As of the date hereof, COVID-19 has spread widely around the world and new variants of the virus have emerged, resulting in the implementation of significant governmental measures in Turkey and globally, including lockdowns of manufacturing and logistics facilities, closures of businesses and offices, quarantines of individuals, and travel bans. <br><br> Similar to the global trend, the COVID-19 pandemic led consumers in the Turkish market to shift to e-commerce as a result of social distancing measures, with a consequential growth in demand for our | | become permanent." Section III.A.1 at 14-15. <br><br> • Once the Defendants chose to speak on certain topics in the Registration Statement, there was a duty to tell the whole truth and to be complete and accurate. Section I at 1; Section III.A.1 at 10. Here these representations contained untrue statements of material fact and omitted material facts necessary to make the statements contained therein not misleading because consumers were already shifting away from e-commerce on Hepsiburada's platform as evidenced by the revenue growth of only 5% and GMV growth of only 38% in Q2 2021, the quarter that ended before the IPO. Section III.A.1. |

| Compl.[1] | Material Misstatements or Omissions (The shaded portions were not alleged in the Complaint) | Reason(s) Not Actionable in Defendants' Appendix (ECF No. 49-2) | Lead Plaintiff's Argument[2] |
|---|---|---|---|
| | products and services. **This was primarily supported by the change in customer behavior where consumers have adopted online shopping behavior during the pandemic, which we expect to become permanent.** As a result of social distancing, e-commerce orders for groceries and other essential products have also increased significantly. [Emphasis added.] Although COVID-19 has generally been a significant driver for customer adoption and growth of e-commerce services, the pandemic and the measures to contain its spread have resulted in business and manufacturing disruptions in Turkey, impacted the business activities of our e-commerce suppliers, merchants, and other ecosystem participants (such as logistics networks and payment channels in the affected markets), and disrupted the global supply chain. We continue to closely monitor the impact of COVID-19 on our business and operations. The pandemic and related actions taken by governments to limit its spread could cause a temporary closure of our operational facilities, interrupt our fulfillment, delivery or logistics systems or | | |

| Compl.[1] | Material Misstatements or Omissions (The shaded portions were not alleged in the Complaint) | Reason(s) Not Actionable in Defendants' Appendix (ECF No. 49-2) | Lead Plaintiff's Argument[2] |
|---|---|---|---|
| | severely impact the behavior and operations of our merchants, customers, and suppliers. As COVID-19 continues to evolve, the extent of its impact on our business in future periods remains uncertain. | | |
| ¶ 69 | *We may experience significant fluctuations in our results of operations and growth rate.*<br><br>We have grown significantly in recent years, and we intend to continue to expand the scope and geographic reach of the services we provide. **Revenue growth may slow down or decline for any number of reasons, including our inability to attract or retain merchants and customers, decreased customer frequency and spending, increased competition, slowing overall growth of the e-commerce market**, the emergence of alternative business models, changes in government policies and general economic conditions. [Emphasis added.] We may also lose customers and merchants for other reasons, such as a failure to deliver satisfactory customer or transaction experience or high-quality services. If we are unable to properly and prudently manage our operations as they continue to grow, or if | • Any omission was immaterial (Section I.D)<br><br>• Information was disclosed (Section I.D)<br><br>• No actual knowledge alleged (Section I.D) | • The challenged risk disclosure was an actionable misstatement because it purported to warn of the risk that revenue growth "may" slowdown or decline, but this had already occurred and material facts necessary to make the statements not misleading were not disclosed. Section III.A.3.<br><br>• Facts are "material" if there is a "substantial likelihood" that their disclosure "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available" and a complaint should not be dismissed unless the alleged misstatements or omissions are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." Section III.A at 8. |

7

| Compl.[1] | Material Misstatements or Omissions (The shaded portions were not alleged in the Complaint) | Reason(s) Not Actionable in Defendants' Appendix (ECF No. 49-2) | Lead Plaintiff's Argument[2] |
|---|---|---|---|
| | the quality of our services deteriorates due to mismanagement, our brand name and reputation could be significantly harmed, and our business, prospects, financial condition and results of operations could be materially and adversely affected.<br><br>In addition, a disproportionate amount of sales on our platform historically took place during our fourth quarter, and we expect this to continue. As a result of peak seasonal sales, as of December 31 of each year, our cash and cash equivalents balances typically reach an elevated level (other than as a result of cash flows provided by or used in investing and financing activities). This operating cycle results in a corresponding increase in accounts payable, combined with a decrease in inventories, as of December 31. Our accounts payable balance generally declines during the first month of each year, resulting in a corresponding decline in our cash and cash equivalents balances. We typical experience our lowest sales during the months of July and August due to decreased frequency and traffic on our platform during the summer vacation months.<br><br>Our results of operations and cash flows | | • Section 11 and 12 claims based on material misstatements or omissions do not require a plaintiff to plead or prove knowledge. Section III.A.1 at 13.<br><br>• Note that Defendants do not argue that the risk of slowing growth had not materialized because it admittedly and undeniably had materialized in Q2 2021 before the IPO. ¶¶ 7,14, 15, 77-78, 82. |

| Compl.[1] | Material Misstatements or Omissions (The shaded portions were not alleged in the Complaint) | Reason(s) Not Actionable in Defendants' Appendix (ECF No. 49-2) | Lead Plaintiff's Argument[2] |
|---|---|---|---|
| | may fluctuate significantly as a result of a variety of factors, including those described above.  As a result, historical period-to-period comparisons of our results of operations and cash flows are not necessarily indicative of future period-to-period results of operations or cash flows. You should not rely on the results of a single fiscal quarter as an indication of our annual results of operations, cash flows or future performance. | | |
| ¶¶ 69-70 | *We face uncertainties relating to the growth and profitability of the e-commerce industry in our region and we may face challenges and uncertainties in implementing our e-commerce strategy*<br><br>Our future sales depend substantially on consumers' widespread acceptance and use of e-commerce.  While e-commerce has existed in our region for decades, only recently have certain regional e-commerce companies become sizeable.  Our future results of operations will depend on numerous factors affecting the development of the e-commerce retail industry in our region, which may be beyond our control. These factors include: | • Any omission was immaterial (Section I.D)<br>• Information was disclosed (Section I.D)<br>• No actual knowledge alleged (Section I.D)<br>• No materialization of the risk alleged as of effective date (Section I.D)<br>• Describes generic market risks (Section I.D) | • The challenged risk disclosure was an actionable misstatement because it purported to warn of the risk that growth and profitability of the e-commerce industry "may" face challenges and uncertainties, but this had already occurred as evidenced by the sharp deceleration of revenue and GMV growth in Q2 2021 and these material facts necessary to make the statements not misleading were not disclosed. Section III.A.3.<br>• Facts are "material" if there is a "substantial likelihood" that their disclosure "would have been viewed by the reasonable investor |

| Compl.[1] | Material Misstatements or Omissions (The shaded portions were not alleged in the Complaint) | Reason(s) Not Actionable in Defendants' Appendix (ECF No. 49-2) | Lead Plaintiff's Argument[2] |
|---|---|---|---|
| | • the growth rate of internet, broadband, personal computer, and smartphone penetration and usage in our region;<br><br>• the trust and confidence level of e-commerce consumers, as well as changes in customer demographics and consumer tastes and preferences;<br><br>• the selection, pricing and popularity of products that online merchants offer;<br><br>• whether alternative retail channels or business models that better address the needs of consumers emerge; and<br><br>• the development of logistics, payment and other ancillary services associated with e-commerce. | | as having significantly altered the 'total mix' of information made available" and a complaint should not be dismissed unless the alleged misstatements or omissions are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." Section III.A at 8.<br><br>• Section 11 and 12 claims based on material misstatements or omissions do not require a plaintiff to plead or prove knowledge. Section III.A.1 at 13.<br><br>• The risk had materialized given the "strategic margin investments," discounts, substantially increased advertising spending and other actions that were taken in Q2 2021 to mitigate growth challenges on Hepsiburada's e-commerce platform in Q2 2021. ¶¶ 8, 19, 62, 64, 68, 70, 71, 76, 81, 82.<br><br>• Generic and indefinite warnings do not absolve Defendants of liability. Section III.A.3 at 19-20. |
| ¶¶ 69-70 | *We operate in a highly competitive market,* | • Any omission was | • The challenged risk disclosure was |

| Compl.[1] | Material Misstatements or Omissions (The shaded portions were not alleged in the Complaint) | Reason(s) Not Actionable in Defendants' Appendix (ECF No. 49-2) | Lead Plaintiff's Argument[2] |
|---|---|---|---|
| | *and in the future we may not be able to compete effectively.*<br><br>The markets for our products and services are competitive and rapidly evolving. The successful execution of our strategy depends on our ability to continuously attract and retain merchants and customers, expand the market for our products and services, continue technological innovation and offer new capabilities to such users. We have many competitors not only among other e-commerce companies, but also omni-channel players who are primarily offline retailers and a large and fragmented group of other offline retailers. We compete with these current and potential competitors for customers, merchants and suppliers. From time to time, our customers may decide not to continue purchasing products on our platform for various reasons, including choosing to shop in offline retail stores once more. Our merchants may also decide to switch to our competitors' services. Some of our existing or potential competitors may have greater resources to develop stronger capabilities and expertise in management, technology, finance, product development, sales, marketing and other areas. Further, the internet facilitates | immaterial (Section I.D)<br>• Information was disclosed (Section I.D)<br>• No actual knowledge alleged (Section I.D)<br>• No materialization of the risk alleged as of effective date (Section I.D)<br>• Describes generic market risks (Section I.D) | an actionable misstatement because it purported to warn of the risk that the Company "may be required to increase our spending or maintain lower prices, which could materially and adversely affect our business, prospects, financial condition and results of operations," but this had already occurred as evidenced by strategic margin investments, discounts and other actions taken in Q2 2021 before the IPO to mitigate the material negative trends and these facts necessary to make the statements not misleading were not disclosed. Section III.A.3.<br>• The risk had materialized given the "strategic margin investments," discounts, substantially increased advertising spending and other actions that resulted in a material drop in gross contribution margin (2.4%) in Q2 2021. ¶¶ 8, 19, 62, 64, 68, 70, 71, 76, 81, 82.<br>• Facts are "material" if there is a "substantial likelihood" that their disclosure "would have been viewed by the reasonable investor |

| Compl.[1] | Material Misstatements or Omissions (The shaded portions were not alleged in the Complaint) | Reason(s) Not Actionable in Defendants' Appendix (ECF No. 49-2) | Lead Plaintiff's Argument[2] |
|---|---|---|---|
| | competitive entry and  comparison shopping, which enhances the ability of new, smaller or lesser  known businesses, including businesses from outside of Turkey, to  compete against us.<br><br>As a result of these various types of current and potential competitors, we  may not be able to maintain our leading position or level of traffic on our  online platform, we may fail to retain or may lose our current market  position, we may fail to continue to attract new and retain our existing customers and merchants, and **we may be required to increase our  spending or maintain lower prices, which could materially and adversely  affect our business, prospects, financial condition and results of operations.** [Emphasis added.] | | as having significantly altered the 'total mix' of information made available" and a complaint should not be dismissed unless the alleged misstatements or omissions are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." Section III.A at 8.<br><br>• Section 11 and 12 claims based on material misstatements or omissions do not require a plaintiff to plead or prove knowledge. Section III.A.1 at 13.<br><br>• Generic and indefinite warnings do not absolve Defendants of liability. Section III.A.3 at 19-20. |
| ¶¶ 69-70 | COVID-19 and the measures taken to limit its spread have impacted consumer behavior, including e-commerce shopping trends.  During the COVID-19 pandemic, increased numbers of consumers in the Turkish  market have shifted to e-commerce as a result of social distancing and other government restrictions, which resulted in the growth for demand  for our products and | • Any omission was immaterial (Section I.D)<br><br>• Information was disclosed (Section I.D)<br><br>• No actual knowledge alleged (Section I.D)<br><br>• No materialization of the risk  alleged as of effective | • The challenged risk disclosure was an actionable misstatement because it purported to warn of the risk that the Company "customers may shift back towards offline retailers as social distancing and government restrictions ease, as a result of which we may experience slower than expected growth," but this had |

| Compl.[1] | Material Misstatements or Omissions (The shaded portions were not alleged in the Complaint) | Reason(s) Not Actionable in Defendants' Appendix (ECF No. 49-2) | Lead Plaintiff's Argument[2] |
|---|---|---|---|
| | services.  However, **customers may shift back towards offline retailers as social distancing and government restrictions ease, as a result of which we may experience slower than expected  growth.** [Emphasis added.] Moreover, as the full impact of the COVID-19 pandemic continues to evolve, it is uncertain what effect the pandemic will have on  consumer behavior and the demand for various goods and services may  evolve.  For instance, e-commerce orders for groceries and other essential products have increased significantly during the pandemic, and the risk  that this trend reverses or otherwise alters in the future cannot be  excluded. | date (Section I.D) | already occurred as evidenced by the sharp deceleration of revenue and GMV growth in Q2 2021 and these material facts necessary to make the statements not misleading were not disclosed. Section III.A.3. <br><br> • The risk had materialized given the substantial decline in revenue and GMV growth that caused the Company to implement "strategic margin investments," discounts, substantially increased advertising spending and other actions in Q2 2021 just after the lifting of covid restrictions. ¶¶ 8, 19, 62, 64, 68, 70, 71, 76, 81, 82 <br><br> • Facts are "material" if there is a "substantial likelihood" that their disclosure "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available" and a complaint should not be dismissed unless the alleged misstatements or omissions are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." |

| Compl.[1] | Material Misstatements or Omissions (The shaded portions were not alleged in the Complaint) | Reason(s) Not Actionable in Defendants' Appendix (ECF No. 49-2) | Lead Plaintiff's Argument[2] |
|---|---|---|---|
| | | | Section III.A at 8. <br><br> • Knowledge is not an element of Section 11 and 12 claims based on material misstatements or omissions. Section III.A.1 at 13. <br><br> • Generic and indefinite warnings do not absolve Defendants of liability. Section III.A.3 at 19-20. |
| ¶ 68 | Alleged omission of information required by Item 303: <br><br> The material, negative trends, in terms of significantly slowing revenues and GMV growth, as well as the Company's implementation of the strategic margin investments, customer discounts and significantly increased advertising expense that burned cash and materially reduced gross contribution margins,  EBITDA and EBITDA as a percent of GMV before the IPO represented unusual events and uncertainties that were required to be disclosed under Item 303. | • No trend, event, or uncertainty alleged (Section I.C) <br><br> • Any omission was immaterial (Section I.C) <br><br> • Information was disclosed (Section I.C) <br><br> • No actual knowledge alleged (Section I.C) | • Defendants violated Item 303 by failing to disclose events and uncertainties that existed at the time of the IPO. Here, the Complaint alleges that the decreases in revenue and GMV growth and other metrics (1) occurred in the Q2 2021 prior to the IPO; (2) were trends observed by the Company in Q2 2021 prior to the IPO and that (3) once the trends were observed in Q2 2021 prior to the IPO the Company instituted substantial increases in expenses in an attempt to counter the decreases in revenue and GMV growth and other metrics. ¶¶ 14, 15, 77 - 82.  Section III.A.4. <br><br> • Knowledge for purposes of Item 303 can be inferred from the facts |

| Compl.[1] | Material Misstatements or Omissions (The shaded portions were not alleged in the Complaint) | Reason(s) Not Actionable in Defendants' Appendix (ECF No. 49-2) | Lead Plaintiff's Argument[2] |
|---|---|---|---|
| | | | since the trends were observed and the Company took actions in Q2 2021 before the IPO to mitigate the slowing growth. Section III.A.4. |
| ¶ 69 | Alleged omission of information required by Item 105: <br><br> As alleged in the Complaint, Item 105 required in the "Risk Factors" section of the Registration Statement a discussion of the most significant factors that made the offering risky or speculative and that each risk factor adequately describe the risk. Because the omitted material facts alleged were not disclosed, as well as the consequent material adverse effects on the Company's future and prospects, Defendants violated Item 105. | • Any omission was immaterial (Section I.D) <br><br> • Information was disclosed (Section I.D) <br><br> • No actual knowledge alleged (Section I.D) | • Defendants violated Item 105 by failing to disclose events and uncertainties that existed at the time of the IPO. Here, the Complaint alleges that the decreases in revenue and GMV growth and other metrics (1) occurred in the Q2 2021 prior to the IPO; (2) were trends observed by the Company in Q2 2021 prior to the IPO and that (3) once the trends were observed in Q2 2021 prior to the IPO the Company instituted substantial increases in expenses in an attempt to counter the decreases in revenue and GMV growth and other metrics. ¶¶ 14, 15, 77 - 82.  Section III.A.5. <br><br> • Knowledge for purposes of Item 105 to the extent required can be inferred from the facts since the trends were observed and the Company took actions in Q2 2021 to mitigate the slowing growth. Section III.A.5. |

# EXHIBIT 2





## *WebCivil Supreme - eFiled Documents Detail*

Court:              **New York Supreme Court**
Index Number:   **655701/2021**
Case Name:      **Benson, James vs. D-MARKET Elektronik Hizmetler ve Ticaret Anonim Sirketi et al**
Case Type:      **Comm-Other**
Track:          **Complex**

**Document List** - Click on the document name to view the document

| # | Document Date Received/Filed | Document | Description | Motion # | Filing User |
|---|---|---|---|---|---|
| 1 | 09/28/2021 | SUMMONS + COMPLAINT | --none-- | | SAMUEL HOWARD RUDMAN |
| 2 | 10/11/2021 | PROOF OF SERVICE | PROOF OF SERVICE UPON D-MARKET ELEKTRONIK HIZMETLER VE TICARET ANONIM SIRKETI | | SAMUEL HOWARD RUDMAN |
| 3 | 10/11/2021 | PROOF OF SERVICE | PROOF OF SERVICE UPON COLLEEN A. DE VRIES | | SAMUEL HOWARD RUDMAN |
| 4 | 10/11/2021 | PROOF OF SERVICE | PROOF OF SERVICE UPON MORGAN STANLEY & CO. LLC | | SAMUEL HOWARD RUDMAN |
| 5 | 10/11/2021 | PROOF OF SERVICE | PROOF OF SERVICE UPON J.P. MORGAN SECURITIES LLC | | SAMUEL HOWARD RUDMAN |
| 6 | 10/11/2021 | PROOF OF SERVICE | PROOF OF SERVICE UPON GOLDMAN, SACHS & CO. LLC | | SAMUEL HOWARD RUDMAN |
| 7 | 10/11/2021 | PROOF OF SERVICE | PROOF OF SERVICE UPON BOFA SECURITIES, INC. | | SAMUEL HOWARD RUDMAN |
| 8 | 10/11/2021 | PROOF OF SERVICE | PROOF OF SERVICE UPON UBS SECURITIES LLC | | SAMUEL HOWARD RUDMAN |
| 9 | 10/13/2021 | RJI -RE: OTHER | Securities Act of 1933 | | SAMUEL HOWARD RUDMAN |
| 10 | 10/13/2021 | ADDENDUM - COMMERCIAL DIVISION (840C) | --none-- | | SAMUEL HOWARD RUDMAN |
| 11 | 10/13/2021 | NOTICE OF APPEARANCE (POST RJI) | --none-- | | MARY KATHERINE BLASY |
| 12 | 11/03/2021 | NOTICE OF APPEARANCE (POST RJI) | --none-- | | MICHAEL GERARD CAPECI |
| 13 | 11/11/2021 | STIPULATION - BRIEFING SCHEDULE | --none-- | | MICHAEL GERARD CAPECI |
| 14 | 11/24/2021 | LETTER / CORRESPONDENCE TO JUDGE | Commercial Division Rule 35 Disclosure Statement | | DANIEL C LEWIS |
| 15 | 12/10/2021 | PROOF OF SERVICE | Proof of Service upon Turkcommerce B.V. | | MICHAEL GERARD CAPECI |
| 16 | 12/10/2021 | COMPLAINT (AMENDED) | Amended Class Action Complaint for Violations of the Securities Act of 1933 | | MICHAEL GERARD CAPECI |
| 17 | 12/10/2021 | SUMMONS (POST RJI) (AMENDED) | --none-- | | MICHAEL GERARD CAPECI |
| 18 | 12/10/2021 | NOTICE OF MOTION | Notice of Motion for Alternative Service and for an Extension of the 120-day Period for Service | 001 | MICHAEL GERARD CAPECI |
| 19 | 12/10/2021 | MEMORANDUM OF LAW IN SUPPORT | Memorandum of Law in Support of Plaintiff's Motion for Alternative Service and for an Extension of the 120-day Period for Service | 001 | MICHAEL GERARD CAPECI |
| 20 | 12/10/2021 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION | Affirmation of Michael G. Capeci in Support of Plaintiff's Motion for Alternative Service and for an Extension of the 120-day Period for Service | 001 | MICHAEL GERARD CAPECI |
| 21 | 12/10/2021 | EXHIBIT(S) | Unserved Defendants Personal Email Adresses | 001 | MICHAEL GERARD CAPECI |
| 22 | 12/10/2021 | EXHIBIT(S) | E-mal to Latham & Watkins LLP and K&L Gates LLP re: Service of Unserved Defendants | 001 | MICHAEL GERARD CAPECI |
| 23 | 12/10/2021 | EXHIBIT(S) | October 6, 2021 Form 6-K | 001 | MICHAEL GERARD CAPECI |
| 24 PENDING | 12/23/2021 | STIPULATION - OTHER - ( REQUEST TO SO ORDER ) | [Proposed] Order and Stipulation to Amend the Case Caption | | MICHAEL GERARD CAPECI |
| 25 | 12/24/2021 | ORDER - RECUSAL | --none-- | | Andrew Borrok court user |
| 26 | 12/27/2021 | NOTICE OF ENTRY | --none-- | | MICHAEL GERARD CAPECI |
| 27 | 12/29/2021 | STIPULATION - ADJOURNMENT OF MOTION -IN | --none-- | 001 | KEVIN M. MCDONOUGH |

| | | | | | |
|---|---|---|---|---|---|
| | | SUBMISSIONS PART -RM 130 | | | |
| 28 | 12/30/2021 | NOTICE OF APPEARANCE (POST RJI) | Notice of Appearance for Defendant Colleen A. DeVries | | JOANNA A DIAKOS |
| 29 | 01/20/2022 | NOTICE OF MOTION | Motion For Admission Pro Hac Vice Of Michael I. Fistel, Jr. and Oliver S. tum Suden | 002 | RALPH M STONE |
| 30 | 01/20/2022 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION | Affirmation In Support of Motion For Admission Pro Hac Vice of Michael I. Fistel, Jr and Oliver S. tum Suden | 002 | RALPH M STONE |
| 31 | 01/20/2022 | STIPULATION - OTHER | Joint Stipulation Regarding Pro Hac Vice Admissions | 002 | RALPH M STONE |
| 32 | 01/20/2022 | AFFIDAVIT | Affidavit of Michael I. Fistel, Jr. In Support Of Motion To Admit Counsel Pro Hac Vice | 002 | RALPH M STONE |
| 33 | 01/20/2022 | AFFIDAVIT | Affidavit of Oliver S. tum Suden In Support Of Motion To Admit Counsel Pro Hac Vice | 002 | RALPH M STONE |
| 34 | 01/20/2022 | ORDER ( PROPOSED ) | Proposed Order | 002 | RALPH M STONE |
| 35 | 01/21/2022 | NOTICE OF APPEARANCE (POST RJI) | --none-- | | JAMIE L. WINE |
| 36 | 01/21/2022 | MEMORANDUM OF LAW IN OPPOSITION | Memorandum of Law in Opposition to Plaintiff's Motion for Alternative Service Pursuant to CPLR 308(5) | 001 | KEVIN M. MCDONOUGH |
| 37 | 01/21/2022 | MEMORANDUM OF LAW IN OPPOSITION | Memorandum of Law in Opposition to Plaintiff's Motion for Alternative Service | 001 | JOANNA A DIAKOS |
| 38 | 01/26/2022 | STIPULATION - SO ORDERED | --none-- | | Alicia Washington court user |
| 39 | 01/26/2022 | DECISION + ORDER ON MOTION | --none-- | 002 | Alicia Washington court user |
| 40 | 01/26/2022 | NOTICE OF ENTRY | --none-- | | MICHAEL GERARD CAPECI |
| 41 | 02/04/2022 | MEMORANDUM OF LAW IN REPLY | Reply Memorandum of Law in Further Support of Plaintiff's Motion for Alternative Service | 001 | MICHAEL GERARD CAPECI |
| 42 | | NOTICE OF MOTION | Notice of Motion | | KEVIN M. MCDONOUGH |
| 43 | 02/08/2022 | MEMORANDUM OF LAW IN SUPPORT | Memorandum of Law in Support of Hepsiburada's and the Underwriter Defendants' Motion to Dismiss the Amended Class Action Complaint | | KEVIN M. MCDONOUGH |
| 44 | 02/08/2022 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION | Affirmation of Kevin M. McDonough in Support of Hepsiburada's and the Underwriter Defendants' Motion to Dismiss the Amended Class Action Complaint | | KEVIN M. MCDONOUGH |
| 45 | 02/08/2022 | EXHIBIT(S) | Amended Class Action Complaint | | KEVIN M. MCDONOUGH |
| 46 | 02/08/2022 | EXHIBIT(S) | Appendix of Challenged Statements and Omissions | | KEVIN M. MCDONOUGH |
| 47 | 02/08/2022 | EXHIBIT(S) | May 16, 2021 Associated Press Article | | KEVIN M. MCDONOUGH |
| 48 | 02/08/2022 | EXHIBIT(S) | May 16, 2021 Reuters Article | | KEVIN M. MCDONOUGH |
| 49 | 02/08/2022 | EXHIBIT(S) | June 21, 2021 Reuters Article | | KEVIN M. MCDONOUGH |
| 50 | 02/08/2022 | EXHIBIT(S) | July 1, 2021 Prospectus and Registration Statement | | KEVIN M. MCDONOUGH |
| 51 | 02/08/2022 | EXHIBIT(S) | August 26, 2021 Form 6-K | | KEVIN M. MCDONOUGH |
| 52 | 02/08/2022 | EXHIBIT(S) | August 26, 2021 Earnings Call Transcript | | KEVIN M. MCDONOUGH |
| 53 | 02/08/2022 | EXHIBIT(S) | August 26, 2021 Reuters Article | | KEVIN M. MCDONOUGH |
| 54 | 02/08/2022 | EXHIBIT(S) | November 12, 2021 Form 6-K | | KEVIN M. MCDONOUGH |
| 55 | 02/08/2022 | EXHIBIT(S) | November 12, 2021 Motley Fool Article | | KEVIN M. MCDONOUGH |
| 56 | 02/08/2022 | EXHIBIT(S) | November 23, 2021 Form 6-K | | KEVIN M. MCDONOUGH |
| 57 | | NOTICE OF MOTION | --none-- | | KEVIN M. MCDONOUGH |
| 58 | 02/08/2022 | MEMORANDUM OF LAW IN SUPPORT | Memorandum of Law in Support of Hepsiburada's and the Underwriter Defendants' Motion to Dismiss the Amended Class Action Complaint | | KEVIN M. MCDONOUGH |
| 59 | 02/08/2022 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION | Affirmation of Kevin M. McDonough in Support of Hepsiburada's and the Underwriter Defendants' Motion to Dismiss the Amended Class Action Complaint | | KEVIN M. MCDONOUGH |
| 60 | 02/08/2022 | EXHIBIT(S) | Amended Class Action Complaint | | KEVIN M. MCDONOUGH |
| 61 | 02/08/2022 | EXHIBIT(S) | Appendix of Challenged Statements and Omissions | | KEVIN M. MCDONOUGH |
| 62 | 02/08/2022 | EXHIBIT(S) | May 16, 2021 Associated Press Article | | KEVIN M. MCDONOUGH |
| 63 | 02/08/2022 | EXHIBIT(S) | May 16, 2021 Reuters Article | | KEVIN M. MCDONOUGH |
| 64 | 02/08/2022 | EXHIBIT(S) | June 21, 2021 Reuters Article | | KEVIN M. MCDONOUGH |
| 65 | 02/08/2022 | EXHIBIT(S) | July 1, 2021 Prospectus and Registration Statement | | KEVIN M. MCDONOUGH |
| 66 | 02/08/2022 | EXHIBIT(S) | August 26, 2021 Form 6-K | | KEVIN M. MCDONOUGH |
| 67 | 02/08/2022 | EXHIBIT(S) | August 26, 2021 Earnings Call Transcript | | KEVIN M. MCDONOUGH |
| 68 | 02/08/2022 | EXHIBIT(S) | August 26, 2021 Reuters Article | | KEVIN M. MCDONOUGH |
| 69 | 02/08/2022 | EXHIBIT(S) | November 12, 2021 Form 6-K | | KEVIN M. MCDONOUGH |
| 70 | 02/08/2022 | EXHIBIT(S) | November 12, 2021 Motley Fool Article | | KEVIN M. MCDONOUGH |
| 71 | 02/08/2022 | EXHIBIT(S) | November 23, 2021 Form 6-K | | KEVIN M. MCDONOUGH |
| 72 | 02/08/2022 | NOTICE OF MOTION | --none-- | 003 | KEVIN M. MCDONOUGH |
| 73 | 02/08/2022 | MEMORANDUM OF LAW IN SUPPORT | --none-- | 003 | KEVIN M. MCDONOUGH |
| 74 | 02/08/2022 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION | --none-- | 003 | KEVIN M. MCDONOUGH |
| 75 | 02/08/2022 | EXHIBIT(S) | Amended Class Action Complaint | 003 | KEVIN M. |

| | | | | | MCDONOUGH |
|---|---|---|---|---|---|
| 76 | 02/08/2022 | EXHIBIT(S) | Appendix of Challenged Statements and Omissions | 003 | KEVIN M. MCDONOUGH |
| 77 | 02/08/2022 | EXHIBIT(S) | May 16, 2021 Associated Press Article | 003 | KEVIN M. MCDONOUGH |
| 78 | 02/08/2022 | EXHIBIT(S) | May 16, 2021 Reuters Article | 003 | KEVIN M. MCDONOUGH |
| 79 | 02/08/2022 | EXHIBIT(S) | June 21, 2021 Reuters Article | 003 | KEVIN M. MCDONOUGH |
| 80 | 02/08/2022 | EXHIBIT(S) | July 1, 2021 Prospectus and Registration Statement | 003 | KEVIN M. MCDONOUGH |
| 81 | 02/08/2022 | EXHIBIT(S) | August 26, 2021 Form 6-K | 003 | KEVIN M. MCDONOUGH |
| 82 | 02/08/2022 | EXHIBIT(S) | August 26, 2021 Earnings Call Transcript | 003 | KEVIN M. MCDONOUGH |
| 83 | 02/08/2022 | EXHIBIT(S) | August 26, 2021 Reuters Article | 003 | KEVIN M. MCDONOUGH |
| 84 | 02/08/2022 | EXHIBIT(S) | November 12, 2021 Form 6-K | 003 | KEVIN M. MCDONOUGH |
| 85 | 02/08/2022 | EXHIBIT(S) | November 12, 2021 Motley Fool Article | 003 | KEVIN M. MCDONOUGH |
| 86 | 02/08/2022 | EXHIBIT(S) | November 23, 2021 Form 6-K | 003 | KEVIN M. MCDONOUGH |
| 87 | 02/08/2022 | NOTICE OF MOTION | The Cogency Defendants Notice Of Joinder In Hepsiburadas And The Underwriter Defendants Motion To Dismiss The Amended Class Action Complaint | 004 | JOANNA A DIAKOS |
| 88 | 02/08/2022 | MEMORANDUM OF LAW IN SUPPORT | Memorandum Of Law In Support Of The Cogency Defendants Joinder In Hepsiburadas And The Underwriter Defendants Motion To Dismiss The Amended Class Action Complaint | 004 | JOANNA A DIAKOS |
| 89 | 02/08/2022 | AFFIDAVIT OR AFFIRMATION IN SUPPORT | Affirmation Of Joanna A. Diakos In Support Of The Cogency Defendants Joinder In Hepsiburadas And The Underwriter Defendants Motion To Dismiss The Amended Class Action Complaint | 004 | JOANNA A DIAKOS |
| 90 | 02/08/2022 | EXHIBIT(S) | Excerpts Form F-1 Registration Statement | 004 | JOANNA A DIAKOS |
| 91 | 02/08/2022 | EXHIBIT(S) | Excerpts Amend. No. 1 to Form F-1/A | 004 | JOANNA A DIAKOS |
| 92 | 02/08/2022 | EXHIBIT(S) | Excerpts Amend. No. 2 to Form F-1/A | 004 | JOANNA A DIAKOS |
| 93 | 02/09/2022 | NOTICE OF APPEARANCE (POST RJI) | --none-- | | KEVIN M. MCDONOUGH |
| 94 | 02/09/2022 | NOTICE OF APPEARANCE (POST RJI) | --none-- | | JAMIE L. WINE |
| 95 | 02/09/2022 | AFFIRMATION | Notice of Joinder in Motion | 003 | KEVIN M. MCDONOUGH |
| 96 | 03/10/2022 | MEMORANDUM OF LAW IN OPPOSITION | Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss of D-Market, Turkcommerce and the Underwriter Defendants | 003 | MICHAEL GERARD CAPECI |
| 97 | 03/10/2022 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION | Affirmation of Michael G. Capeci in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss | 003 | MICHAEL GERARD CAPECI |
| 98 | 03/10/2022 | EXHIBIT(S) | Plaintiff's Response Chart to Defendants Exhibit 2 | 003 | MICHAEL GERARD CAPECI |
| 99 | 03/10/2022 | MEMORANDUM OF LAW IN OPPOSITION | Plaintiff's Memorandum of Law in Opposition to the Cogency Defendants' Joinder to Defendants' Motion to Dismiss | 004 | MICHAEL GERARD CAPECI |
| 100 | 04/22/2022 | MEMORANDUM OF LAW IN REPLY | Reply Memorandum of Law in Support of Hepsiburada's, TurkCommerce's, and the Underwriter Defendants' Motion to Dismiss the Amended Class Action Complaint | 003 | KEVIN M. MCDONOUGH |
| 101 | 04/22/2022 | MEMORANDUM OF LAW IN SUPPORT | REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE COGENCY DEFENDANTS JOINDER IN HEPSIBURADAS AND THE UNDERWRITER DEFENDANTS MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT | 004 | JOANNA A DIAKOS |
| 102 | 05/04/2022 | LETTER / CORRESPONDENCE TO JUDGE | Letter from Michael G. Capeci to the Honorable Justice Reed Submitting Supplemental Authority | | MICHAEL GERARD CAPECI |
| 103 | 05/04/2022 | EXHIBIT(S) | City of Warwick Municipal Employees Pension Fund v. Restaurant Brands International Inc., No. 655686/2020, 2022 N.Y. Misc. LEXIS 1735 (Sup. Ct. N.Y. Cnty. May 2, 2022) | | MICHAEL GERARD CAPECI |
| 104 | 05/11/2022 | LETTER / CORRESPONDENCE TO JUDGE | Request for Leave to Respond to Plaintiff's May 2, 2022 Letter | | KEVIN M. MCDONOUGH |
| 105 | 05/11/2022 | LETTER / CORRESPONDENCE TO JUDGE | Letter from Michael G. Capeci to the Honorable Justice Reed in Response to Defendants' May 11, 2022 Letter Request | | MICHAEL GERARD CAPECI |

Close

## CERTIFICATE OF SERVICE

I, Frederic S. Fox, hereby certify that, on May 13, 2022, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM\ECF system which will send electronic notices of the filing to all counsel of record.

/s/ Frederic S. Fox

Frederic S. Fox