**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IWA-FOREST INDUSTRY PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>    v.<br><br>D-MARKET ELEKTRONIK HIZMETLER VE TICARET ANONIM ŞIRKETI a/k/a D-MARKET ELECTRONIC SERVICES & TRADING d/b/a HEPSIBURADA, MEHMET MURAT EMIRDAĞ, HALIL KORHAN ÖZ, HANZADE VASFIYE DOGAN BOYNER, ERMAN KALKANDELEN, MEHMET EROL ÇAMUR, CEMAL AHMET BOZER, VUSLAT DOĞAN SABANCI, MUSTAFA AYDEMIR, TOLGA BABALI, COLLEEN A. DE VRIES, COGENCY GLOBAL INC., MORGAN STANLEY & CO. LLC, J.P. MORGAN SECURITIES LLC, GOLDMAN, SACHS & CO. LLC, BOFA SECURITIES, INC., UBS SECURITIES LLC, and TURKCOMMERCE B.V.,<br><br>     Defendants. | Case No. 1:21-cv-08634-PKC<br><br><br>__ORAL ARGUMENT REQUESTED__ |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HEPSIBURADA'S AND THE UNDERWRITER DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT OR ALTERNATIVELY TO STAY THE ACTION**

| | |
|---|---|
| LATHAM & WATKINS LLP<br>Jamie L. Wine<br>Kevin M. McDonough<br>1271 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 906-1200<br><br>*Attorneys for Defendant D-MARKET Elektronik Hizmetler ve Ticaret Anonim Şirketi a/k/a D-MARKET Electronic Services & Trading d/b/a/ Hepsiburada* | SHEARMAN & STERLING LLP<br>Daniel Lewis<br>Agnès Dunogué<br>Benjamin Klebanoff<br>599 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 848-4000<br><br>*Attorneys for the Underwriter Defendants* |

May 27, 2022

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT.........................................................................................................................2

I.      PLAINTIFF'S FALSITY ARGUMENTS FAIL...................................................2

        A.     Hepsiburada Had No Duty To Make Additional Disclosures ................................2

            1.     No Duty To Disclose Q2 2021 Results.........................................................2

            2.     No Duty To Disclose Additional COVID-Related Information ..................4

            3.     No Duty To Disclose Additional Information About Investments, Discounts, Or Advertising ............................................................................5

        B.     Plaintiff's Opinion And Puffery Arguments Fail.....................................................6

        C.     Plaintiff's Item 303 Arguments Fail ........................................................................7

        D.     Plaintiff Fails To Salvage Its Risk Factor Claims....................................................8

II.     ABSTENTION UNDER *COLORADO RIVER* IS APPROPRIATE................................10

CONCLUSION...................................................................................................................10

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AJ Energy LLC v. Woori Bank*,
    829 F. App'x 533 (2d Cir. 2020) .......................................................................................6

*Asay v. Pinduoduo Inc.*,
    2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020),
    *aff'd*, 2021 WL 3871269 (2d Cir. Aug. 31, 2021) ..........................................................5, 9

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
    757 F. Supp. 2d 260 (S.D.N.Y. 2010).............................................................................3, 10

*City of Roseville Employees' Retirement System v. EnergySolutions, Inc.*,
    814 F. Supp. 2d 395 (S.D.N.Y. 2011)................................................................................10

*De Cisneros v. Younger*,
    871 F.2d 305 (2d Cir. 1989)..............................................................................................10

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
    986 F. Supp. 2d 524 (S.D.N.Y. 2014).................................................................................8

*In re Facebook, Inc., IPO Securities & Derivative Litigation*,
    986 F. Supp. 2d 487 (S.D.N.Y. 2013).................................................................................8

*Feinberg v. Marathon Patent Grp.*,
    2020 WL 1248753 (N.Y. Sup. Ct. Mar. 13, 2020),
    *aff'd*, 193 A.D.3d 568 (1st Dep't 2021)..............................................................................7

*In re Fyre Festival Litig.*,
    399 F. Supp. 3d 203 (S.D.N.Y. 2019)................................................................................10

*Lau v. Opera Ltd.*,
    527 F. Supp. 3d 537 (S.D.N.Y. 2021)..................................................................................6

*In re Noah Educ. Holdings, Ltd. Sec. Litig.*,
    2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010) ..................................................................8, 9

*Rubinstein v. Credit Suisse Grp. AG*,
    457 F. Supp. 3d 289 (S.D.N.Y. 2020)..................................................................................8

*In re Sanofi Sec. Litig.*,
    87 F. Supp. 3d 510 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)...............................................................................................6, 7

*Stadnick v. Vivint Solar, Inc.*,
  861 F.3d 31 (2d Cir. 2017)......................................................................................................3, 4

*In re Ulta Salon, Cosmetics & Fragrance, Inc. Sec. Litig.*,
  604 F. Supp. 2d 1188 (N.D. Ill. 2009) ....................................................................................3

*Willard v. UP Fintech Holding Ltd.*,
  527 F. Supp. 3d 609 (S.D.N.Y. 2021)......................................................................................3

## PRELIMINARY STATEMENT[1]

In the Opposition, Plaintiff tries to salvage its deficient claims by misstating Hepsiburada's Registration Statement ("RS") and other disclosures, relevant case law, and even the allegations in Plaintiff's own Complaint.  But the Opposition is most notable for its failure to dispute the following points, which undercut Plaintiff's theory that Defendants violated the Securities Act:

- Hepsiburada accurately reported its historical financial performance in the RS.

- The RS was filed on June 23 and declared effective on June 30—nearly two months before Hepsiburada's Q2 2021 results were finalized and required to be disclosed.

- The Company warned investors that "historical results . . . are not necessarily indicative of results expected in any future period" and advised of "significant fluctuations in [Hepsiburada's] results of operations and growth rate."

- Hepsiburada's revenue and GMV *grew* in Q2 2021, even measured against its highly successful Q2 2020.

- The RS disclosed ongoing "significant" investments and marketing.

Unable to contest these points, Plaintiff claims that Hepsiburada was required to say more in the RS because there was supposedly a "sharp" deceleration in Hepsiburada's revenue and GMV growth rate; the Company "implemented" measures allegedly designed to improve growth; and those actions supposedly adversely impacted unit economics and profitability.  But those assertions rest solely on Plaintiff's mischaracterization of Hepsiburada's Q2 2021 results and its August 2021 statements.  In reality, Hepsiburada continued to achieve growth in revenue and GMV in Q2; the RS informed investors of ongoing investments and marketing; and the RS made no assurances concerning Hepsiburada's unit economics and profitability, instead disclosing pre-IPO declines in the very metrics upon which Plaintiff focuses.  Hepsiburada had no duty to disclose the additional information Plaintiff claims was required, and Plaintiff's Securities Act claims—premised on

---

[1] Unless otherwise indicated, capitalized terms have the same meanings as in the Motion (ECF 48), internal citations and quotations are omitted, emphasis is added, and exhibits to the McDonough Decl. (ECF 49) are cited as "Ex. __".

mischaracterizations and conclusory allegations rather than well-pled facts—fail.

<u>**ARGUMENT**</u>

**I.     PLAINTIFF'S FALSITY ARGUMENTS FAIL**

Plaintiff argues that admittedly accurate statements regarding Hepsiburada's historical financial performance were somehow misleading by omission.  Mot. 9, 11; *e.g.*, Opp. 2.  But Plaintiff fails to establish that Hepsiburada had a duty to make additional disclosures, including because the Complaint identifies no omitted facts that rendered any of the accurate statements in the RS misleading—much less *materially* misleading.  Mot. 11-22.

**A.     Hepsiburada Had No Duty To Make Additional Disclosures**

**1.     No Duty To Disclose Q2 2021 Results**

No rule or regulation specifically required the RS to include Q2 2021 results, and, practically speaking, the Company could not have included final Q2 results on the last day of that quarter—which courts have recognized and Plaintiff does not contest.  Mot. 12-13; Opp. 5, 8-14. Plaintiff nonetheless argues that the RS was materially misleading because it did not disclose an alleged "sharp" deceleration in revenue and GMV growth in Q2.  *E.g.*, Opp. 5, 11; ¶¶ 62, 64-65, 67.[2]  Plaintiff seeks to impose an unworkable standard requiring companies to speculate about yet-to-be-finalized interim results or defer offerings and restart the SEC regulatory process, even where there is nothing extraordinary about those results.  That is not the law.  Courts have made clear that accurate disclosure of past performance does not require discussion of interim results where—as here—those results were roughly in step with past performance, including prior fluctuations, or the registration statement provided appropriate cautionary language.  Mot. 13-15.

---

[2] Plaintiff's citation to cases standing for the general proposition that companies are required to "tell the whole truth" about topics they discuss, Opp. 1, 4, 10, adds nothing; there is no allegation that Hepsiburada told less than the full truth about its performance in the periods addressed in the RS.

2

Faced with a legal standard its pleading does not meet, Plaintiff contends that the RS did not report "fluctuations" in past revenue and GMV growth. *See* Opp. 4, 9, 11 & n.8. That is flat wrong. The RS disclosed fluctuations in revenue and GMV growth rates—including that revenue grew 145% from 2019 to 2020, then declined to 66% from Q1 2020 to Q1 2021.[3] ¶ 63. Likewise, although Plaintiff all but abandons its claims based on an alleged omission of increased advertising expenses and declines in EBITDA, EBITDA as a percentage of GMV, and gross contribution margin in Q2 2021, ¶¶ 62, 64, 67, the RS also disclosed fluctuations in those metrics, which Plaintiff does not dispute. RS 19, 78 (EBITDA); *id.* at 22, 78 (EBITDA as a percentage of GMV and gross contribution margin); *id.* at 82, 84, 86 (advertising expenses); *see also* Mot. 5, 13.

The RS did not represent that Hepsiburada's growth rate was "consistently accelerating," let alone that Hepsiburada would grow at the same rate as in any prior period. Opp. 2, 9; Mot. 13-14.[4] Rather, the RS warned that "historical results for any prior period are not necessarily indicative of results expected in any future period." RS 18, 29-30. Ignoring that language, the Opposition focuses on the warning that Hepsiburada "may experience significant fluctuations in" its "growth rate" and argues that the warning was itself misleading because fluctuations allegedly "had already occurred" in Q2. Opp. 11-12. Plaintiff is wrong: the RS showed that performance fluctuated in the pre-IPO periods, and analogous warnings foreclosed liability in *Stadnick v. Vivint*

---

[3] Plaintiff's failed attempts to distinguish *Willard* and *Asay* are premised on the incorrect notion that the RS reported "no fluctuations" of the type seen in Q2 2021. Opp. 9, 11 n.8. Not only does Plaintiff ignore the fluctuations reported in the RS, it refuses to acknowledge that the most recent figures (for Q1 2020 to Q1 2021) showed *declining* revenue and GMV growth compared to the prior period (2019 to 2020). ¶ 63. Plaintiff also notes that the *Willard* registration statement included one month of "data" from an interim period. Opp. 9. But that fact was not central to the holding that prior-period "quarter-to-quarter swings" in the relevant metrics rendered the omission of the interim period data immaterial (and the court disagreed that other data from that one month should have been disclosed). *Willard v. UP Fintech Holding Ltd.*, 527 F. Supp. 3d 609, 616, 622-24 (S.D.N.Y. 2021).

[4] Plaintiff's cited cases (at Opp. 10) holding that the disclosure of interim financial performance was required are distinguishable. *See In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 757 F. Supp. 2d 260, 269, 306 (S.D.N.Y. 2010) (Castel, J.) ("undisclosed losses" were "the largest monthly losses in the company's history," occurring "at the peak of the 2008 financial crisis"); *In re Ulta Salon, Cosmetics & Fragrance, Inc. Sec. Litig.*, 604 F. Supp. 2d 1188, 1196 (N.D. Ill. 2009) (no fluctuations in reported periods, unlike here).

*Solar, Inc.*, 861 F.3d 31 (2d Cir. 2017), and similar cases.  Mot. 14-15.  The same is true here.

Backpedaling, Plaintiff now asserts that "the Complaint does not allege that Defendants should have disclosed the Q2 2021 results."  Opp. 5, 13.  But a "deceleration in revenue and GMV growth" cannot be decoupled from the underlying "financial results," *id.* at 5, that have been Plaintiff's focus, and the Opposition does not even attempt to explain otherwise, *e.g.*, ¶¶ 14, 65, 67, 70, 73-75; *see also* Opp. 12.  Moreover, Plaintiff's claim that the so-called "negative growth trend existed before the IPO," Opp. 5, does not change the analysis undertaken above and is undercut by the cases cited in the Motion.  *E.g.*, *Stadnick*, 861 F.3d at 38-39.

Plaintiff's contention that Hepsiburada "admitted" observing "negative dynamics" in revenue and GMV while Q2 was ongoing (*e.g.*, Opp. 5) badly mischaracterizes cherry-picked statements from the August 2021 earnings call.  In response to a multipart analyst question about Hepsiburada's outlook, the take rate, and demand for lower margin products, a Hepsiburada executive referred generally to "recent trends observed in Q2 and early Q3" as being reflected in the Company's outlook.  Ex. 8, at 8-9.  And the executive's reference to "dynamics in revenue growth," which he never described as negative, was made in relation to decreases in gross contribution margin due to continuing investments and marketing efforts aimed at growth—which the RS itself previewed.  *Id.* at 8, 11; ¶¶ 77-82; Mot. 5, 13 n.7, 16-17; RS 22, 24-25, 27-28, 74-75, 78, 82, 84, 86.  Neither those nor any other August 2021 statements "admitted" a "sharp deceleration" in revenue or GMV growth, Opp. 5, let alone one out of step with prior reported fluctuations or that was observed before the end of Q2 2021; indeed, Hepsiburada disclosed the opposite (plus increasing orders, active customers, and free cash flow), Mot. 6-7.

### 2.      No Duty To Disclose Additional COVID-Related Information

The Opposition abandons Plaintiff's claims that the RS "omitt[ed]" that past "growth was primarily attributable to the surge in online shopping in Turkey due to lockdowns during the

4

pandemic and that this growth had materially deteriorated before the IPO as businesses were reopened . . . starting in March 2021." ¶ 62; Opp. 6, 16 ("cause of the deteriorating growth . . . is not at issue in the Action"). Rightly so—the RS stated that COVID-19 restrictions contributed to a nationwide shift to online shopping and Hepsiburada's significant growth in 2020 and Q1 2021, and Plaintiff does not and cannot allege facts showing that any changes in COVID-19 restrictions had impacted Hepsiburada's growth as of June 30, 2021, when the RS became effective. Mot. 15.[5]

### 3. No Duty To Disclose Additional Information About Investments, Discounts, Or Advertising

Plaintiff contends that Hepsiburada failed to disclose that in Q2 2021, it "instituted substantial increases in expenses" to "combat" a "slowdown in growth." Opp. 2-3, 19-20. That is incorrect: the RS disclosed *ongoing*, "significant" investments and marketing efforts, including "losses in the near term" due to "expected increases" in expenses, as Hepsiburada "*continue[d]* to invest in [its] business in order to grow." Mot. 16-17. Plaintiff asserts these disclosures were too "generic," but cites no case in support. Opp. 19-20. Nor could it—the disclosures track those that courts characterize as "ample." *See Asay v. Pinduoduo Inc.*, 2020 WL 1530745, at *9-10 (S.D.N.Y. Mar. 30, 2020) (Castel, J.), *aff'd*, 2021 WL 3871269 (2d Cir. Aug. 31, 2021); Mot. 17.

Plaintiff argues its Complaint does "not assert[] that sensitive pricing information should have been disclosed." Opp. 20. But Plaintiff fails to explain how a plan to offer customer discounts and promotions (and any investments to support it) is different than the type of "sensitive pricing and marketing decision[]" there is no duty to disclose. Mot. 17-18. And, once Hepsiburada offered discounts and promotions on its online marketplaces, that information was "readily

---

[5] There can be no "factual dispute," Opp. 16, about the timing of the imposition, lift-off, and re-imposition of COVID-19 restrictions in Turkey, which are all settled matters of public record. *E.g.*, *Turkey announces "full lockdown" from April 29 to curb COVID spread*, REUTERS (Apr. 26, 2021), https://www.reuters.com/world/middle-east/turkeys-erdogan-adopts-full-closure-until-may-17-over-covid-19-2021-04-26/; Mot. 15.

accessible in the public domain"—as common sense would dictate—and did not need to be disclosed.  Mot. 18; Opp. 21; *see AJ Energy LLC v. Woori Bank*, 829 F. App'x 533, 534 (2d Cir. 2020).  Hepsiburada was not required to "direct[]" investors to such information, which was hardly in an "obscure" source as in *Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 553 (S.D.N.Y. 2021).  Opp. 21.  In any event, Plaintiff alleges no facts requiring accelerated disclosure of more information about any increase in investments, discounts, or advertising.  *See supra* Section I.A.1; Mot. 18.

> **B.      Plaintiff's Opinion And Puffery Arguments Fail**

Plaintiff admits Hepsiburada's statement that it "believe[d]" trends in order frequency and active customers "w[ould] continue to positively impact [its] business, with further Active Customer base growth, strong cohort performance and increasing operational efficiency driving improvement in unit economics and profitability," is an opinion.  ¶ 63; Opp. 14-15.  But Plaintiff does not point to any allegations sufficient to satisfy the stringent standard for opinion liability. As an initial matter, order frequency and active customers both increased in Q2 2021.  Mot. 6, 10 n.4.  Further, there is not a single allegation that Hepsiburada believed anything other than that those trends would positively impact its business going forward.  *See* Mot. 10; Opp. 14-15; *supra* Section I.A.1.  The Complaint also alleges no facts regarding how "Active Customer base growth," "cohort performance," or "operational efficiency" impacted Q2 "unit economics and profitability" (which Plaintiff equates with gross contribution margin, EBITDA, and EBITDA as a percentage of GMV, Mot. 12 n.6), *see* Opp. 11-13, and Hepsiburada was not required to disclose non-final Q2 results in those areas, which were in step with prior performance, *see supra* Section I.A.1.

Plaintiff contends the statement that "we expect" the adoption of "online shopping behavior during the pandemic . . . to become permanent," was "a material *misstatement of present fact*." Opp. 12.  But a company's "expectations for the future" are "statements of opinion" subject to the *Omnicare* test—which Plaintiff does not even purport to satisfy.  *In re Sanofi Sec. Litig.*, 87 F.

6

Supp. 3d 510, 531 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016) (cited at Mot. 10).  Instead, Plaintiff asserts the statement of expectation was "misleading because consumers were already shifting away from e-commerce," as evidenced by Q2 2021 revenue and GMV growth of 5% and 38% (respectively).  ¶ 67.  But Hepsiburada's Q2 revenue and GMV *growth* hardly reflects a "shift away" from online shopping, and Plaintiff has now disavowed his theory that COVID-19 changes resulted in any such shift.  Mot. 15; Opp. 16-17.

Finally, Plaintiff contends that statements referencing "strong growth," "meticulous execution," and a "highly attractive" financial profile are "not puffery" because they were "supported" by "recent and historical revenue and GMV growth" data.  Mot. 11; Opp. 15.  Plaintiff unsurprisingly fails to cite a single case holding that a statement was not puffery because it was "supported" by admittedly true statements of historical fact.  Opp. 15; *see supra* Section I, at 2.

### C.    Plaintiff's Item 303 Arguments Fail

Item 303 did not create a duty to disclose the same Q2 2021 financial results discussed in Section I.A.1, ¶ 68, because fluctuations in financials outside of the normal reporting schedule do not amount to a "trend," and the financial information in the RS demonstrated that Hepsiburada's performance fluctuated from period to period.  Mot. 19; *see also Feinberg v. Marathon Patent Grp.*, 2020 WL 1248753, at *5 (N.Y. Sup. Ct. Mar. 13, 2020).  Plaintiff offers no Item 303-specific argument in response, Opp. 21, and the arguments it repeats from other Opposition sections fail, *see supra* Section I.A.1.  The contention that Hepsiburada violated Item 303 by not disclosing its "implementation" of investments, discounts, and increased advertising expenses, ¶ 68, ignores that the RS in fact disclosed "significant" investments and marketing efforts by the Company, as well as their expected impact in the near term, Mot. 19-20; *see supra* Section I.A.3; here, too, Plaintiff offers no new arguments, Opp. 21-22.  And the Complaint fails to allege facts establishing "actual knowledge" of any adverse trend, event, or uncertainty as of June 30, 2021, as Item 303 requires

7

even in the Securities Act context.  Mot. 19-20; *see Rubinstein v. Credit Suisse Grp. AG*, 457 F.

Supp. 3d 289, 292, 300 (S.D.N.Y. 2020).  Plaintiff is left only with blatant mischaracterizations of

Hepsiburada's August 2021 statements.  Opp. 13, 21-22; *see supra* Section I.A.1.[6]

**D.      Plaintiff Fails To Salvage Its Risk Factor Claims**

Instead of responding to Defendants' arguments regarding the challenged risk factor

disclosures, Plaintiff simply insists that each warned-of risk had "already occurred."  Opp. 17-20.

But again, all that Plaintiff offers as support are Hepsiburada's August 2021 statements.  *Id.* at 19.

Those statements do not establish that any of the risks had already materialized.  They merely

discussed declines in EBITDA and gross contribution margin due to ongoing investments and

marketing efforts (disclosed in the RS)—and said nothing about customers "shifting away" from

Hepsiburada's e-commerce platform.  *See id.*; ¶¶ 79-82; Mot. 5, 21-22; *supra* Section I.A; *see also*

Opp. 6, 16 (insisting that the relationship of COVID-19 restrictions to "deteriorating growth in

revenue and GMV" is "not at issue").  *In re Facebook, Inc., IPO Securities & Derivative Litigation*,

986 F. Supp. 2d 487 (S.D.N.Y. 2013) (Opp. 18), is inapposite; unlike here, the plaintiffs alleged

*facts* showing the risks had materialized (for example, before its IPO, Facebook told a select group

of investors that Facebook users' shift from computers to mobile apps had caused Facebook to

reduce revenue projections).  *Id.* at 502, 514, 517.  The court noted those facts were "highly

unique" and did not "open[] the door" to a general duty to provide intra-quarter updates.  *In re*

*Facebook, Inc., IPO Sec. & Deriv. Litig.*, 986 F. Supp. 2d 524, 538 (S.D.N.Y. 2014).

Furthermore, as Defendants pointed out, allegations that the risk materialized prior to the

IPO are insufficient where, as here, the RS does not "imply that none of these risks, at least to

---

[6] Despite disclaiming any need to plead a link between COVID-19 and the Q2 2021 results, the Opposition advances a COVID-19-based argument in support of the Item 303 claims—one that does not appear in the Complaint (and fails in any event).  *See* Opp. 6, 16, 22; ¶ 68; *supra* Section I.A.2.

some extent, would affect [the company's] most recent fiscal quarter." Mot. 21 (quoting *In re Noah Educ. Holdings, Ltd. Sec. Litig.*, 2010 WL 1372709, at *7-8 (S.D.N.Y. Mar. 31, 2010)). *Noah* rejected the theory that Plaintiffs advance here—that a risk disclosure was misleading because the events discussed allegedly had already occurred. 2010 WL 1372709, at *7.

Plaintiff's remaining arguments fare no better.[7] Plaintiff attempts in vain to counter Defendants' argument that the RS sufficiently disclosed "significant" investments and marketing efforts—information Plaintiff asserts was "already implemented" and undisclosed, ¶ 70; Mot. 21-22—by claiming Defendants identified "generic risk statements" or statements having "nothing to do" with the allegedly omitted information. Opp. 19-20. *First*, statements in risk factors are only "too generic" if they constitute "mere boilerplate." *Asay*, 2020 WL 1530745, at *7. That is not the case here. Hepsiburada's risk disclosures, "read in [their] surrounding context" (including both their text and other portions of the RS), put investors on notice that the Company was engaged in "ongoing" efforts to maintain and enhance its competitive position. *Id.*; Mot. 22 (citing RS 11, 24-25, 27-28, 74-75). *Second*, in support of the erroneous argument that Defendant's citations to the RS had "nothing to do" with the allegedly omitted information, Plaintiff ignores (i) portions of the RS that obviously *do* relate, and (ii) Plaintiff's own point (*e.g.*, Opp. 10) that the RS must be read as a whole. *See* Opp. 20 (citing RS 24, 27, 75). For instance, the RS noted that the Company "invest[s] in brand building, marketing and in expanding [its] offering of value-added services with the aim of attracting new and retaining existing customers and merchants," that it "continue[s] to invest significant resources to grow [its] Active Customers base and increase engagement" through various means, and that it "*will* continue to incur losses"

---

[7] Plaintiff simply ignores most of Defendants' arguments, including that "'no reasonable investor would infer anything about the state of' the [C]ompany" from the RS's market-focused risk disclosures. Mot. 21-22.

due to increasing expenses.  RS 24-25, 27.  *Third*, Plaintiff is wrong that Hepsiburada had a further duty to disclose its marketing strategies and associated costs.  Opp. 20; *see supra* Section I.A.3.[8]

## II.    ABSTENTION UNDER *COLORADO RIVER* IS APPROPRIATE

Plaintiff does not dispute that this putative securities class action involves substantially the same claims and parties and arises out of the same events as the earlier-filed *Benson* Action (in which Plaintiff is a member of the putative class).  Mot. 24; Opp. 23-25.  Plaintiff nonetheless attempts to twist the *Colorado River* factors into supporting this later-filed action, going so far as to argue that the fourth factor (order in which jurisdiction is obtained) weighs in *Plaintiff's* favor.  Opp. 24.  That is wrong, as is Plaintiff's argument regarding the significance of its Section 12(a)(2) claim.  Sections 11 and 12(a)(2) are essentially identical, Mot. 24-25; *cf.* Opp. 24-25, and Plaintiff cites no case in which rescission has been ordered on a Section 12(a)(2) claim.  Further, the inquiry under the sixth factor is whether the *courts* of New York will protect Plaintiff's rights (not whether the causes of action asserted are identical in every respect), and there is no evidence to suggest this factor weighs in Plaintiff's favor.  *See Bank of Am. Corp.*, 757 F. Supp. 2d at 346 (sixth factor favored abstention).  The factors, weighed together rather than treated as a "mechanical checklist," tip in favor of abstention.  *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989).

### CONCLUSION

The Court should dismiss the Complaint with prejudice or stay the case pending resolution of *Benson*.  Dismissal with prejudice is appropriate because Plaintiff is unable to show "good cause" under Rule 16, which applies because the deadline in the Scheduling Order has passed.  Mot. 23-24; *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 225 (S.D.N.Y. 2019) (Castel, J.).

---

[8] Plaintiff's Item 105 arguments likewise fail.  Opp. 22; Mot. 20-21.  Its reliance on *City of Roseville Employees' Retirement System v. EnergySolutions, Inc.,* 814 F. Supp. 2d 395 (S.D.N.Y. 2011) is misplaced; unlike here, the plaintiffs pointed to omitted "material facts" that rendered the risk statements misleading.  *Id.* at 427; Mot. 20-21.

Dated: New York, New York
      May 27, 2022

Respectfully submitted,

LATHAM & WATKINS LLP


By:   <u>/s/ Kevin M. McDonough</u>
      Jamie L. Wine
      Kevin M. McDonough
      1271 Avenue of the Americas
      New York, New York 10020
      (212) 906-1200
      jamie.wine@lw.com
      kevin.mcdonough@lw.com

      *Attorneys for Defendant D-MARKET*
      *Elektronik Hizmetler ve Ticaret Anonim*
      *Şirketi a/k/a D-MARKET Electronic*
      *Services & Trading d/b/a/ Hepsiburada*


SHEARMAN & STERLING LLP


      <u>/s/ Daniel Lewis</u>
      Daniel Lewis
      Agnès Dunogué
      Benjamin Klebanoff
      599 Lexington Avenue
      New York, New York 10022
      (212) 848-4000
      daniel.lewis@shearman.com
      agnes.dunogue@shearman.com
      benjamin.klebanoff@shearman.com

      *Attorneys for the Underwriter Defendants*

11