# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

————————————————————— x

IWA-FOREST INDUSTRY PENSION PLAN, :    Civil Action No. 1:21-cv-08634-PKC
Individually and on Behalf of All Others
Similarly Situated,                  :    <u>CLASS ACTION</u>

                      :    Honorable P. Kevin Castel

             Plaintiff,    :

       vs.                    :

                      :

D-MARKET ELEKTRONIK HIZMETLER
VE TICARET ANONIM ŞIRKETI a/k/a D : 
MARKET ELECTRONIC SERVICES &
TRADING d/b/a/ HEPSIBURADA, MEHMET : 
MURAT EMIRDAĞ, HALIL KORHAN ÖZ,
HANZADE VASFIYE, DOĞAN BOYNER, : 
ERMAN KALKANDELEN, MEHMET EROL
ÇAMUR, CEMAL AHMET BOZER,    :
VUSLAT DOĞAN SABANCI, MUSTAFA
AYDEMIR, TOLGA BABALI, COLLEEN A. : 
DE VRIES, COGENCY GLOBAL INC.,
MORGAN STANLEY & CO. LLC, J.P.    :
MORGAN SECURITIES LLC, GOLDMAN,
SACHS & CO. LLC, BOFA SECURITIES : 
INC., UBS SECURITIES LLC, and
TURKCOMMERCE B.V.,             :

                      :

             Defendants.    :

                      :

————————————————————— x

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF<br>MOTION FOR FINAL APPROVAL OF CLASS ACTION<br><u>SETTLEMENT AND PLAN OF ALLOCATION</u>

## <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF AUTHORITIES ....................................................**Error! Bookmark not defined.**i

PRELIMINARY STATEMENT ................................................................................. 1

I.      THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
ADEQUATE, AND WARRANTS FINAL APPROVAL.................................................. 2

    A.  The Law Favors and Encourages  Settlement of Class Action Litigation .........................2

    B.  Legal Standards for Final Approval ...................................................................3

    C.  Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Settlement
Class...........................................................................................................5

    D.  Arm's-Length Negotiations Conducted by Experienced Counsel Support
Approval .....................................................................................................6

    E.  The Relief Provided by the Settlement Is Adequate .........................................8

          1.  The Complexity, Expense, and Likely Duration of the Actions Support
Approval..............................................................................................8

          2.  The Risks of Establishing Liability and Damages Support Approval ...................9

          3.  The Risks of Maintaining Class Action Status through Trial Support
Approval............................................................................................11

    F.  The Effective Process for Distributing Relief to the Settlement Class............................11

    G.  The Requested Attorneys' Fees Are Reasonable ...........................................................12

    H.  Application of the Remaining *Grinnell* Factors Support Approval of the
Settlement ................................................................................................12

          1.  The Inability of Defendants to Withstand a Greater Judgment ...........................12

          2.  The Reaction of The Settlement Class to the Settlement Supports
Approval............................................................................................13

          3.  The Stage of the Proceedings and the Amount of Information Available
to Counsel Support Approval .................................................................14

4.   The Range of Reasonableness in Light of the Best Possible Recovery and all Attendant Risks Supports Approval ........................................................15

II.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE ..........17

III.   NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ..............................................................................18

IV.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ...............................20

V.   THE COURT HAS JURISDICTION TO APPROVE THE GLOBAL SETTLEMENT ..................................................................................................................20

VI.   CONCLUSION ..............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbuthnot v. Pierson*,
   607 F. App.'x 73 (2d Cir. 2015) ...................................................................16

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
   No. 07 Civ. 2207(JGK), 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010)...................16

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) ...................................................................................9

*Christine Asia*,
   2019 WL525534 ....................................................................................16

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ...............................................................4, 8, 16

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) .........16

*Cos. Sec. Litig.*,
   No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..................11

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ........................................................................7

*Del Global*,
   186 F. Supp. 2d ..................................................................................9, 11

*FLAG Telecom*,
   2010 WL 4537550.................................................................................7, 17

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ........................................................................4

*Guevoura Fund Ltd. v. Sillerman*,
   No. 1:15-cv-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019)...................7

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) .............................................................3, 20

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)...........................................................17

*In re AOL Time Warner, Inc.*,
   No. MDL 1500, No. 02 Civ. 5575 (SWK), 2006 WL 903236
   (S.D.N.Y. Apr. 6, 2006) ........................................................................ 11, 14, 17

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................. 9, 14

*In re Bank of Am. Corp. Sec., Derivative and ERISA Litig.*,
   772 F.3d 125 (2d Cir. 2014) ................................................................................ 19

*In re Barrick Gold Sec. Litig.*,
   314 F.R.D. 91 (S.D.N.Y. 2016) .............................................................................. 5

*In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................................. 13, 17

*In re Citigroup Inc. Sec. Litig.*,
   Nos. 09 MD 2070 (SHS), 09 Civ. 7359(SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014)...3

*In re Elan Sec. Litig.*,
   385 F. Supp. 2d 363 (S.D.N.Y. 2005) ..................................................................... 7

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
   *aff'd*, 674 F. App'x. 37 (2d Cir. 2016) ................................................................... 6

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) .......................................................................... 17

*In re Gilat Satellite Networks*, *Ltd.*,
   No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) .............................. 9

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................. 4, 9, 10, 11

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................passim

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) .................................................................. 17

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................................ 9

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................................... 17

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) ...............................................................................18, 19

*In re Nissan Radiator/Transmission Cooler Litig.*,
   No. 10 CV 7493(VB),  2013 WL 4080946, (S.D.N.Y. May 30, 2013) ...................................14

*In re PaineWebber Pshps. Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997),
   *aff'd*, 117 F.3d 721 (2d Cir. 1997) ..............................................................................13, 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) .......................................................................................5, 8

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) ...........................................................................................5

*In re Telik, Inc. Sec. Litig.,*
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................................10

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ...............................16

*Khait v. Whirlpool Corp.*,
   No. 06-6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ..................................14, 15

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................................................9

*Marsh & McLennan,*
   2009 WL 5178546..........................................................................................................11, 20

*Padro v. Astrue*,
   No. 11-CV-1788 (CBA)(RLM), 2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013) ....................15

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..................................................................................9

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) ............................................................................................4

**Statutes**

15 U.S.C. § 78u-4(a)(7)............................................................................................................19

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................................1

Fed. R. Civ. P. 23(a) ........................................................................................................1, 20

Fed. R. Civ. P. 23(b)(3) ....................................................................................................1, 20

Fed. R. Civ. P. 23(c)(2)(B) ..............................................................................................19, 20

Fed. R. Civ. P. 23(e) ..........................................................................................................3, 18

Fed. R. Civ. P. 23(e)(1) .........................................................................................................19

Fed. R. Civ. P. 23(e)(2) ..................................................................................................3, 4, 5

Fed. R. Civ. P. 23(e)(3) ............................................................................................................4

Fed. R. Civ. P. 23(e)(2)(A) ......................................................................................................5

Fed. R. Civ. P. 23(e)(2)(B) ......................................................................................................6

Fed. R. Civ. P. 23(e)(2)(C) ......................................................................................................8

Lead Plaintiff IWA Forest Industry Pension Plan ("Lead Plaintiff"), along with State Court Plaintiff James Benson ("State Court Plaintiff," and with Lead Plaintiff, "Plaintiffs"), on behalf of themselves and all other members of the Settlement Class, respectfully submit this memorandum of law in support of final approval of the proposed Settlement.[1] Specifically, Plaintiffs seek entry of an order: (i) granting final approval of the Settlement; (ii) certifying the proposed Settlement Class for purposes of settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); and (iii) approving the Plan of Allocation.

## PRELIMINARY STATEMENT

Subject to Court approval, Plaintiffs have agreed to settle all claims in the Actions[2] in exchange for a payment of Thirteen Million Nine Hundred Thousand Dollars ($13,900,000.00) (the "Settlement"). Plaintiffs respectfully submit that the proposed Settlement satisfies the standards for final approval under Rule 23 of the Federal Rules of Civil Procedure, as it is fair, reasonable, and adequate, and is in the best interests of the Settlement Class. As stated in the accompanying Joint Declaration[3] and set forth more fully below, this recovery is a very favorable

---

[1]  All capitalized terms not otherwise defined herein shall have the meanings provided in the Stipulation of Settlement dated March 22, 2023 ("Stipulation") (ECF No. 71-1). All citations to "¶ __" herein refer to paragraphs in the Joint Declaration of Frederic S. Fox and Michael G. Capeci in Support of (1) Plaintiffs' Motion for Approval of Settlement and Plan of Allocation; and (2) Plaintiffs' Counsel's Motion for Award of Attorneys' Fees and Expenses ("Joint Declaration" or "Joint Decl."), filed herewith. Citations to "Ex. __" herein refer to exhibits to the Joint Declaration. Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

[2]  The Actions include the Federal Court Action and the parallel action pending in the Supreme Court of the State of New York, County of New York, captioned *Benson v. D-Market Elektronik Hizmetler ve Ticaret Anonim Sirketi.,* Index No. 655701/2021 (Sup. Ct. N.Y.)

[3]  For the sake of brevity in this memorandum of law, the Court is respectfully referred to the Joint Declaration for a detailed description of, among other things: the nature of the claims asserted (¶¶ 15-16, 23); the procedural history of the Actions and the work performed by Plaintiffs' Counsel (¶¶ 17-34); the Settlement negotiations (¶¶ 35-37); the risks of continued litigation (¶¶ 49-64); the Plan of Allocation (¶¶ 65-70); and the Notice program (¶¶ 41-48).

recovery under the circumstances and particularly in light of the substantial risks of continued litigation. While Plaintiffs and Plaintiffs' Counsel believe that the claims asserted are meritorious, there were significant challenges to establishing Defendants' liability, including in the pending motions to dismiss, securing discovery from those Defendants based in Turkey, obtaining class certification, proving classwide damages, achieving a greater recovery from an overseas-based corporate defendant, and collecting on any judgment obtained. ¶¶40-50.

The Settlement avoids these risks and the delays of further litigation while providing a significant, certain, and immediate benefit to the Settlement Class in the form of a $13.9 million payment. In light of these considerations, as discussed below and in the Joint Declaration, Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and warrants final approval by the Court. It also has the full support of Plaintiffs. *See* Declarations of Brandon Wiebe and James Benson in Support of Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees and Expenses.  Exs. 5-6. Plaintiffs also request that the Court certify the Settlement Class and approve the proposed Plan of Allocation for distribution of the proceeds of the Settlement, which was described in the Notice sent to Settlement Class Members and posted in full on the Settlement website (http://www.hepsibuadasecuritieslitigation.com/).

## ARGUMENT

## I.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL

### A.   The Law Favors and Encourages  Settlement of Class Action Litigation

Public policy favors the settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*") ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'"); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298

F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation."). This policy would be well-served by approval of the Settlement of these complex securities class actions, that absent resolution, would consume months and possibly years of additional time of this Court and the State Court.

### B.    Legal Standards for Final Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval. The Settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In ruling on final approval of a class settlement, courts in the Second Circuit have held that a court should examine both the negotiating process leading to the settlement, and the settlement's substantive terms. *See Visa*, 396 F.3d at 116; *In re Citigroup Inc. Sec. Litig*., Nos. 09 MD 2070 (SHS), 09 Civ. 7359(SHS), 2014 WL 2112136, at *2-3 (S.D.N.Y. May 20, 2014); *In re IMAX Sec. Litig*., 283 F.R.D. 178, 188 (S.D.N.Y. 2012).

Pursuant to the December 1, 2018 amendments to Rule 23(e)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering the following four factors:

(A)    whether the class representatives and class counsel have adequately represented the class;

(B)    whether the proposal was negotiated at arm's length;

(C)    whether the relief provided for the class is adequate, taking into account:

   i.    the costs, risks, and delay of trial and appeal;

   ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   iii.    the terms of any proposed ward of attorneys' fees, includingtiming of payment; and

    iv.  any agreement required to be identified under Rule 23(e)(3);and

  (D)  whether the proposal treats class members equitably relative to each other.

  Additionally, historically, courts in the Second Circuit consider the following factors set forth in *City of Detroit v. Grinnell Corp*., 495 F.2d 448 (2d Cir. 1974) in evaluating a class-action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*. at 463 (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also Visa*, 396 F.3d at 117. "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (quoting *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003)).

  As demonstrated herein, the Settlement satisfies the factors set forth in Rule 23(e)(2) and *Grinnell* and, accordingly, final approval is warranted.[4]

---

[4] The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure indicate that the factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the Court of Appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23 (e)(2) Advisory Comm. Notes to 2018 Amendments. Indeed, "the new Rule 23(e) factors [] add to, rather than displace, the Grinnell factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Accordingly, Plaintiffs will discuss the fairness, reasonableness, and adequacy of the Settlement in relation to the four factors set forth in Rule 23(e)(2), and will also discuss the application of relevant, non-

### C.    Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Settlement Class

In determining whether to approve a class action settlement, the court should consider whether the "class representatives and class counsel have adequately represented the class." Rule 23(e)(2)(A). *See also In re Barrick Gold Sec. Litig*., 314 F.R.D. 91, 99 (S.D.N.Y. 2016) (noting that "the adequacy requirement 'entails inquiry as to whether: 1) plaintiffs' interests are antagonistic to the interest of other members of the class and 2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation'").

There can be little doubt that Plaintiffs and Plaintiffs' Counsel have adequately represented the Settlement Class. Plaintiffs, like all other members of the Settlement Class, acquired Hepsiburada ADSs during the Settlement Class Period, when their value was allegedly artificially inflated by false and misleading statements and omissions. Thus, the claims of the Settlement Class and Plaintiffs will prevail or fail in unison, and the common objective of maximizing recovery from Defendants aligns the interests of Plaintiffs with the interests of all members of the Settlement Class. *See, e.g., In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Further, Plaintiffs were active and informed participants in the Actions and, among other things, (i) regularly communicated with their counsel regarding the posture and progress of the Actions; (ii) received all significant pleadings and motions filed in the Action; (iii) received or discussed significant decisions in the Actions; (iv) consulted with counsel throughout the mediation negotiations; and (v) evaluated and approved the proposed Settlement. *See generally,*

---

duplicative factors traditionally considered by the Second Circuit.

Exs. 5-6 .

Additionally, throughout the Actions, Plaintiffs had the benefit of the advice of knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases. During the course of the litigation, Plaintiffs' Counsel developed a deep understanding of the facts of the case and the merits of the claims. Exs. 5-6. Moreover, Plaintiffs' Counsel are highly qualified and experienced in securities litigation, as set forth in their firm resumes (*see* Exs. 2-4) and were able to successfully conduct the litigation against skilled opposing counsel, including attorneys at Latham & Watkins LLP. Accordingly, the Settlement Class has been, and remains, well represented.

### D.     Arm's-Length Negotiations Conducted by Experienced Counsel Support Approval

In weighing approval of a class-action settlement, the Court must consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). A settlement is entitled to a "presumption of fairness, adequacy, and reasonableness" when "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d at 116; *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F. App'x. 37 (2d Cir. 2016).

The Settlement merits a presumption of fairness because it resulted from extensive, arms' length negotiations conducted by experienced counsel for all parties after engaging in targeted discovery, with the assistance of an experienced independent mediator, Judge Layn R. Phillips (Ret.) of Phillips ADR. ¶¶ 28-29. The Parties submitted to Judge Phillips and exchanged written statements that detailed relevant facts and legal issues and participated in an in-person mediation session on September 2, 2022. *Id*. The mediation briefs and session discussed the Parties' respective views regarding the merits of the Actions, including Defendants' defenses, and issues

relating to damages. *Id*. Although the Parties were unable to reach an agreement at this mediation session, after three months of further negotiations, with the assistance of Judge Phillips, they agreed in principle to settle the Actions as to all Defendants and all claims for the Settlement Amount. *Id*.

The use of an independent mediator, Judge Phillips, further supports the presumption of fairness and the conclusion that the Settlement achieved was free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *FLAG Telecom*, 2010 WL 4537550, at *14 ("The presumption in favor of the negotiated settlement in this case is strengthened by the fact that settlement was reached in an extended mediation."); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 369 (S.D.N.Y. 2005) (applying the presumption of fairness where the settlement was "the product of extended 'arm's length' negotiations, including, among other things, [a] two-day settlement conference").

Finally, in evaluating the Settlement, the Court should consider the judgment of counsel. *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) ("Where '[c]ounsel for plaintiff is able and experienced, particularly in the specific area with which these actions are concerned,' . . . counsel's 'judgment is entitled to great weight.'") (internal quotations omitted).[5] Here, Plaintiffs' Counsel are leading securities class action litigation firms with decades of experience in the practice area, and were well-informed of the risks and merits of proceeding with litigating the Actions prior to reaching the proposed Settlement.

---

[5]    *See also, In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) ("great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

Accordingly, Plaintiffs' Counsel's judgment that the Settlement is in the best interest of the Settlement Class should be given considerable weight.

### E. The Relief Provided by the Settlement Is Adequate

In determining whether a class-action settlement is "fair, reasonable, and adequate," the Court must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). "This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i)." *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2019 WL 6842332, at *2 (S.D.N.Y. Dec. 16, 2019). Indeed, "[t]his assessment implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 36.

### 1. The Complexity, Expense, and Likely Duration of the Actions Support Approval

"[I]n evaluating the settlement of a securities class action, federal courts, including this [c]ourt, have long recognized that such litigation is notably difficult and notoriously uncertain." *IMAX*, 283 F.R.D. at 189. In fact, "[s]ecurities class actions are generally complex and expensive to prosecute," *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007), and thus "readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation," *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

The Actions were no exception. Without the Settlement, the Parties faced the certainty that litigating the Actions, through the pending motions to dismiss, the completion of international fact

discovery (both in the United States and in Turkey), class certification, expert discovery, summary judgment, trial, and appeals would be time consuming and expensive. Moreover, the Actions, assuming they survived the pending motions to dismiss, involved multiple complex legal and factual issues, including issues regarding damages that would have required substantial expert testimony. *See* Joint Decl., ¶¶ 43-50.

Here, the Settlement provides a certain benefit to the Settlement Class without the risk and delays of continued litigation. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("…if a shareholder or class member was willing to assume all the risks of [Litigation]…the passage of time would introduce yet more risks…and would, in light of the time value of money, make future recoveries less valuable than this current recovery."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("Settlement at this juncture results in a substantial and tangible present recovery, without the attendant risk and delay of trial.").

## 2. The Risks of Establishing Liability and Damages Support Approval

In assessing this factor, the Court is not required to "decide the merits of the case or resolve unsettled legal questions," *Carson v. Am. Brands, Inc*., 450 U.S. 79, 88 n.14 (1981), or to "foresee with absolute certainty the outcome of the case," *In re Austrian & German Bank Holocaust Litig*., 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000). "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Global Crossing*, 225 F.R.D. at 459.

While Plaintiffs and Plaintiffs' Counsel believe that the claims asserted against Defendants have merit, they also recognize that there were considerable risks in pursuing the Actions through trial and beyond. With respect to liability, Defendants would continue to strenuously challenge the alleged misrepresentations and omissions, as set forth in the pending motions to dismiss.

Specifically, Defendants would have argued, among other things, that: Hepsiburada's ADS price declines on the alleged corrective disclosure dates were caused, in whole or substantial part, by facts unrelated to the alleged false and misleading statements and omissions contained in the Registration Statement. ¶¶ 43-50.

Likewise, if the Actions had proceeded, Defendants would present negative causation and damages defenses, which may have found favor at summary judgment or by a jury at trial. As in other complex securities cases, the Parties would rely on expert testimony to assist the jury in determining damages. *Global Crossing,* 225 F.R.D. at 459 ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury."). While Plaintiffs would argue that the ADR price declines were directly attributable to the alleged misstatements and omissions regarding Hepsiburada's alleged revenue and GMV growth at the time as of the IPO and would present expert testimony in support of their position, Defendants would proffer their own expert to offer contrary testimony with respect to all of the price declines. *See, IMAX,* 283 F.R.D. at 193 ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."). In such a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found" by the jury. *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008).

Therefore, even if liability was established at trial, "a jury could find that damages were only a fraction of the amount that plaintiffs contend" because "[a] jury could be swayed by experts for the Defendants, who would minimize the amount of Plaintiffs' losses." *Del Global,* 186 F. Supp. 2d at 365. If a jury accepted Defendants' arguments, damages here could be greatly reduced, if not entirely eliminated. *Marsh & McLennan,* 2009 WL 5178546, at *6 ("[i]f there is anything

in the world that is uncertain when a case like [a securities class action] is taken to trial it is what the jury will come up with as a number for damages."). As a result, "the risks faced by the securities plaintiffs in establishing damages are substantial, and this factor favors approving the settlement." *Global Crossing,* 225 F.R.D. at 459.

### 3.    The Risks of Maintaining Class Action Status through Trial Support Approval

Even if Plaintiffs were successful in obtaining class certification of the Actions, "there could be a risk of decertification at a later stage." *Global Crossing,* 225 F.R.D. at 460. Here, "the uncertainty surrounding class certification supports approval of the Settlement," *In re Marsh & McLennan Cos. Sec. Litig.,* No. 04 Civ. 8144(CM), 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009), because "even the process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement." *In re AOL Time Warner, Inc.,* No. MDL 1500, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at * 12 (S.D.N.Y. Apr. 6, 2006).

### F.    The Effective Process for Distributing Relief to the Settlement Class

Distribution of the Net Settlement Fund, like most securities class action settlements, will be effectuated with the assistance of an experienced claims administrator. The Claims Administrator will employ a well-tested protocol for the processing of claims. Namely, a potential claimant will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by each claimant, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claim" based on the Court-approved Plain of Allocation, and ultimately determine each eligible claimant's pro rata share of the Net Settlement Fund. *See* Stipulation ¶6.1 (ECF Nos. 71-72). Any claim disputes that cannot be resolved will be presented to the Court for

a determination.

### G. The Requested Attorneys' Fees Are Reasonable

As discussed in the accompanying memorandum seeking an award of attorneys' fees, the proposed attorneys' fees of 30% of the Settlement Fund are reasonable in light of the efforts of Plaintiffs' Counsel, the significant risks, and the favorable results achieved in the Actions. Moreover, the fact that approval of attorneys' fees is entirely separate from approval of the Settlement and neither Plaintiffs nor Plaintiffs' Counsel may terminate the Settlement based on the Court's ruling on attorneys' fees militates in favor of finding the Settlement fair and reasonable.

### H. Application of the Remaining *Grinnell* Factors Support Approval of the Settlement

#### 1. The Inability of Defendants to Withstand a Greater Judgment

Hepsiburada is based in Turkey, and its assets are primarily in Turkey.  The Individual Defendants are Turkish nationals.  There is uncertainty whether judgments obtained in the United States are enforceable in Turkey, and the Registration Statement represents that Turkish courts will likely not give reciprocity to a U.S. court judgment in a shareholder litigation.  Thus, even if Plaintiffs obtained a judgment against Defendants, there is a substantial risk that Plaintiffs would be unable to collect any of the judgment. ¶42 Hepsiburada does not have any D & O insurance and did not have nearly enough cash available as of the mediation to fund any judgment.  In addition, according to the Registration Statement, any satisfaction of a judgment in the Actions that could be enforced in Turkey would have to be paid in Turkish lira, not dollars, thereby subjecting Settlement Class Members to substantial currency risk and money transfer risk that the Settlement avoids.  In other words, without a settlement, there exists the real possibility that Plaintiffs would spend years litigating the Actions to a verdict and recover nothing.

###### 2.     The Reaction of The Settlement Class to the Settlement Supports Approval

The second factor considered is the reaction of the class to a proposed settlement. *See, e.g., In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 266-67 (S.D.N.Y. 2012). Indeed, the "the absence of object[or]s may itself be taken as evidencing the fairness of a settlement." *In re PaineWebber Pshps. Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

In accordance with the Preliminary Approval Order, to date a total of 13,598 Notice Packets have been mailed to potential Settlement Class Members and nominees. Ex. 1 ¶ 11. On May 11, 2023, all of the relevant documents in connection with the Settlement, including, among others, the Notice, Claim Form, Plan of Allocation, Stipulation, and Summary Notice, were posted on the website designated for the Actions, www.HepsiburadaSecuritiesLitigation.com. *Id*. ¶ 14. Additionally, the Summary Notice was published on May 19, 2023 in the national edition of *The Wall Street Journal* and over the *Business Wire*. *Id.* ¶ 12.  Consistent with the drafts reviewed and approved by the Court, the long-form Notice and the Summary Notice included (i) a summary of the terms of the Settlement; (ii)  counsel's reasons for recommending the Settlement; (iii) the date of the Settlement Hearing; (iv) information on how to obtain more information on the Actions and the Settlement; (v) an explanation of Settlement Class Members' rights and deadlines to object or exclude themselves; and (vi) instructions on how to submit a Proof of Claim form and the deadline for doing so. *See* Exs. 1-A-C.

Although the deadline set by the Court for Settlement Class Members to object to the Settlement has not yet passed, to date Plaintiffs' Counsel are not aware of any objections.  If any objections are timely received, Plaintiffs' Counsel will address them in their reply papers to be filed with the Court on July 25, 2023.

### 3. The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval

For this factor, the "relevant inquiry . . . is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *AOL Time Warner*, 2006 WL 903236, at *10. "The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *6 (E.D.N.Y. Jan. 20, 2010). "The parties need not 'have engaged in extensive discovery' as long as 'they have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the settlement.'" *AOL TimeWarner*, 2006 WL 903236, at *10 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000)); *see also In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 CV 7493(VB), 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (even where "the parties have not engaged in extensive discovery," this factor weighs in favor of approval after "plaintiffs conducted an investigation prior to commencing the action" and consulted with experts).

Here, Plaintiffs developed a thorough understanding of the strengths and weaknesses of the Settlement Class's claims through the prosecution of the Actions, including reviewing and analyzing Hepsiburada's public filings and news reports, and conducting further investigations related to potential claims. Additionally, Plaintiffs' Counsel consulted with an economics expert who provided analyses concerning the critical issues of negative causation and classwide damages. ¶ 79. In addition to informing Plaintiffs with respect to the potential settlement value of the Actions, these analyses provided further insight into the strengths and weaknesses of Plaintiffs' and the Settlement Class' claims. Finally, before reaching the proposed Settlement, Plaintiffs' Counsel engaged in extensive mediation negotiations through which the parties had the

opportunity to glean more insights into Defendants' respective views on the key issues of the case. ¶¶ 28-29.

Thus, Plaintiffs and Plaintiffs' Counsel have "obtained sufficient information to be able to intelligently assess the strengths and weaknesses of the case and appraise settlement proposals." *Padro v. Astrue*, No. 11-CV-1788 (CBA)(RLM), 2013 WL 5719076, at *6 (E.D.N.Y. Oct. 18, 2013); *see also Whirlpool*, 2010 WL 2025106, at *6 (factor supported approval where parties informally exchanged information and participated in mediation, which "allowed them to further explore the claims and defenses"). Accordingly, the substantial amount of information developed provided Plaintiffs and Plaintiffs' Counsel with a well-informed basis for their belief that the Settlement is highly favorable to the Settlement Class, and this factor supports approval of the Settlement.

### 4. The Range of Reasonableness in Light of the Best Possible Recovery and all Attendant Risks Supports Approval

Finally, courts consider the range of reasonableness in light of both the best possible recovery and litigation risks, assessing "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), aff'd sub nom. *Arbuthnot v. Pierson*, 607 F. App.'x 73 (2d Cir. 2015); *see also Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207(JGK), 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) (consideration whether "it provides a 'substantial recovery' in light of the relevant circumstances and does not 'compare the terms of the [s]ettlement with a hypothetical . . . measure of a recovery that might be achieved' through trial." (quoting *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at *11 (S.D.N.Y. Nov. 7, 2007)). To do so, courts "consider and weigh the nature of the claim, the possible defenses, the situation

of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462. "[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455; *see also Sanofi-Aventis*, 2010 WL 3119374, at *4.

When weighed against the risks of continued litigation, the proposed $13.9 million Settlement Fund value is a significant result. In light of the unpredictability of motion practice, the difficulty in obtaining discovery against a Turkish corporate defendant and relevant third parties located outside of the Court's jurisdiction, a lengthy and complex trial, and the inevitable appellate process that would follow with the risk of reversal, the Settlement falls squarely within the "range of reasonableness." *Visa*, 396 F.3d at 119 ("there is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion") (citation omitted). *See also Christine Asia*, 2019 WL525534, at *10 ("As a practical matter, this case would be particularly onerous and expensive to litigation when that involves litigating against a foreign defendant.") Moreover, factoring in the present time value of money against these litigation risks and delays further supports finding the Settlement within the range of reasonableness. *See AOL Time Warner*, 2006 WL 903236, at *13 ("the benefit of the Settlement will…. be realized far earlier than a hypothetical post-trial recovery").

Thus, by all applicable measures, the Settlement is a significant recovery for the Settlement Class and well within the range of reasonableness.  Therefore, the Court should grant final approval.

## II.      THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

The Court should approve a plan for allocating settlement proceeds if it is fair, reasonable, and adequate. *See IMAX*, 283 F.R.D. at 192; *Bear Stearns*, 909 F. Supp. 2d at 270. A plan of allocation satisfies this standard as long as it has a "rational basis." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02–CV–3400 (CM)(PED), 2010 WL 4537550, at *21 (S.D.N.Y. Nov. 8, 2010); *see also In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 497 (S.D.N.Y. 2009). Generally, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable. Plans of allocation, however, need not be "tailored to the rights of each plaintiff with mathematical precision." *In re PaineWebber*, 171 F.R.D.  at 133.

Courts "look primarily to the opinion of counsel" in evaluating a plan of allocation. *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151 at 163 (S.D.N.Y. 2011); *see also, In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010) ("In determining whether a plan of allocation is fair, courts give substantial weight to the opinions of experienced counsel."); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429-430 (S.D.N.Y. 2001) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel. . . . As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight."). Here, Plaintiffs' Counsel developed the Plan of Allocation in consultation with Plaintiffs' damages expert and submit that the Plan of Allocation provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members. ¶¶ 51-55.

In developing the Plan of Allocation, Plaintiffs' damages expert considered the amount of artificial inflation allegedly present in Hepsiburada's ADSs throughout the Settlement Class Period that was purportedly caused by the alleged misstatements and omissions. ¶ 54. An inflation table

17

was created and included on the Settlement website as part of the Plan of Allocation, which will be utilized by the Claims Administrator in calculating Recognized Loss Amounts for claimants based on the transactional information provided in their claim forms. *Id.* The Claims Administrator will use the Recognized Loss Amounts to determine each eligible claimant's Recognized Claim and pro rata share of the Net Settlement Fund. *Id.* Thus, the Plan of Allocation provides a means for distributing the Net Settlement Fund to Settlement Class Members that is rationally tied to Plaintiffs' theories of liability and damages, which supports approval. *See In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable."). Moreover, there have been no objections to date to the proposed Plan of Allocation.

In sum, the proposed Plan of Allocation was designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants. Accordingly, Plaintiffs' Counsel respectfully submit that the proposed Plan of Allocation is fair and reasonable and should be approved.

## III. NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Notice to class members of a settlement satisfies Rule 23(e) and due process where it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Visa*, 396 F.3d at 114 (discussing Rule 23(e)(1)); *see also In re Bank of Am. Corp. Sec., Derivative and ERISA Litig.*, 772 F.3d 125, 133 n.5 (2d Cir. 2014) (similar notice plan sufficient). Notice need not be perfect or received by every class member, but instead be reasonable under the circumstances. *See* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal."); *Visa*, 396 F.3d at 114. Notice is adequate if the average class member understands the terms of the proposed settlement and the options the class

member has. *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007).

The Court-approved Notice satisfies Rule 23(e) and due process, as well as the specific requirements of Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), by apprising Settlement Class Members of important information including: (i) a detailed explanation of the Actions and the claims asserted; (ii) the definition of the Settlement Class; (iii) the amount of the Settlement; (iv) an explanation of the reasons why the Settlement is proposed; (v) a statement indicating the attorneys' fees and costs that will be sought; (vi) a description of Settlement Class Members' right to opt-out or to object, including the deadlines and process for doing so; (vii) instructions on how to submit a Proof of Claim and the deadline for doing so; and (viii) notice of the binding effect of a judgment on Settlement Class Members. *See generally*, Ex. 1-A.

Moreover, the Notice has been widely distributed to Settlement Class Members in accordance with the plan approved in the Preliminary Approval Order. Specifically, the Court-approved claims administrator, Gilardi & Co. LLC ("Gilardi"), began mailing copies of the Notice Packet to potential Settlement Class Members on May 11, 2023. Ex. 1 ¶ 5. As of June 27, 2023, Gilardi has mailed a total of 13,598 copies of the Notice Packet by first-class mail to potential Settlement Class Members and nominees. *Id.* at ¶ 11. In addition, Gilardi published the Summary Notice in *The Wall Street Journal* and over the *Business Wire* on May 19, 2023. *Id.* at ¶ 12. Copies of the Notice, Claim Form, proposed Plan of Allocation, and Stipulation were made available on the Settlement website maintained by Gilardi beginning on May 11, 2023. *Id.* at ¶ 14.

This combination of individual notification by mail, publication in a national newspaper focusing on investors, and dissemination over the internet using a wire service and a dedicated website provided "the best notice . . . practicable under the circumstances." Fed. R. Civ. P.

23(c)(2)(B); *see, e.g., Advanced Battery Techs.*, 298 F.R.D. at 182-83; *Marsh & McLennan*, 2009 WL 5178546, at *12-*13.

## IV.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

Nothing has changed to alter the propriety of the Court's preliminary certification of the Settlement Class for settlement purposes only in the Preliminary Approval Order. Therefore, Plaintiffs respectfully request that the Court grant final certification of the Settlement Class pursuant to Rules 23(a) and (b)(3) for all the reasons set forth in Plaintiffs' previous briefing. *See* ECF No. 72 at 15-21.

## V.  THE COURT HAS JURISDICTION TO APPROVE THE GLOBAL SETTLEMENT

As explained in Plaintiffs' Preliminary Approval brief (ECF No. 72 at 25), this Court may approve this global Settlement, which also settles the State Court Action, because the State Court Action alleges the same violations of the federal securities laws—specifically Sections 11 and 15 of the Securities Act of 1933—on behalf of the same class of Hepsiburada shareholders against substantially the same Defendants as in the Federal Court Action.  In other words, the claims in the State Court Action and the Settlement Class on behalf of which they are brought overlap with the Federal Court Action.  Accordingly, the Parties do not dispute that this Court has jurisdiction to consider and approve the global settlement, which also settles the State Court Action.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for final approval of the Settlement and Plan of Allocation and enter the proposed final judgment and order submitted as Exhibit A to the Notice of Motion.

Dated: June 30, 2023                       Respectfully submitted,

By: */s/   Frederic S. Fox*

Frederic S. Fox
Donald R. Hall
Melinda Campbell
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Lead Counsel for Lead Plaintiff and the
proposed Settlement Class*
**ROBBINS GELLER RUDMAN
  & DOWD LLP**
SAMUEL H. RUDMAN
MICHAEL G. CAPECI

 */s/ Samuel H. Rudman*
 SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mcapeci@rgrdlaw.com

**JOHNSON FISTEL, LLP**
RALPH M. STONE
1700 Broadway, 41st Floor
New York, NY  10019
Telephone:  212/292-5690
212/292-5680 (fax)
ralphs@johnsonfistel.com

**JOHNSON FISTEL, LLP**
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA  30064
Telephone:  470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com

*Counsel for the State Court Plaintiff and the
proposed Settlement Class*

21