# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| IWA-FOREST INDUSTRY PENSION PLAN, : Individually and on Behalf of All Others Similarly Situated, :<br>: | Civil Action No. 1:21-cv-08634-PKC<br><br>CLASS ACTION |
| Plaintiff, :<br>: | Honorable P. Kevin Castel |
| vs. :<br>: | |
| D-MARKET ELEKTRONIK HIZMETLER VE TICARET ANONIM ŞIRKETI a/k/a D MARKET ELECTRONIC SERVICES & TRADING d/b/a/ HEPSIBURADA, MEHMET MURAT EMIRDAĞ, HALIL KORHAN ÖZ, HANZADE VASFIYE, DOĞAN BOYNER, ERMAN KALKANDELEN, MEHMET EROL ÇAMUR, CEMAL AHMET BOZER, VUSLAT DOĞAN SABANCI, MUSTAFA AYDEMIR, TOLGA BABALI, COLLEEN A. DE VRIES, COGENCY GLOBAL INC., MORGAN STANLEY & CO. LLC, J.P. MORGAN SECURITIES LLC, GOLDMAN, SACHS & CO. LLC, BOFA SECURITIES INC., UBS SECURITIES LLC, and TURKCOMMERCE B.V., :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | |
| Defendants. :<br>: | |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND  EXPENSES

## <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF AUTHORITIES ......................................................................................... ii

I.    PRELIMINARY STATEMENT ......................................................................... 1

II.   THE REQUESTED FEE IS REASONABLE UNDER EITHER THE
      PERCENTAGE OR LODESTAR METHOD .................................................... 5

      A.    The Requested Attorneys' Fee Is Reasonable Under the Percentage-of-the-
            Fund Method.......................................................................................... 6

      B.    The Requested Attorneys' Fee Is Reasonable Based On A Lodestar Cross-
            Check...................................................................................................... 7

III.  THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING
      THE SECOND CIRCUIT'S FACTORS ........................................................ 10

      A.    Plaintiffs' Counsel  Devoted Significant Time and Labor to the Actions ........... 10

      B.    The Magnitude and Complexity of the Actions Support the Requested Fee......... 11

      C.    The Risks of the Litigation Support the Requested Fee ........................................ 14

      D.    The Quality of Plaintiffs' Counsel's Representation Supports the
            Requested Fee ....................................................................................... 15

      E.    The Requested Fee in Relation to the Settlement ................................................ 16

      F.    Public Policy Considerations Support the Requested Fee .................................... 16

IV.   THE REACTION OF THE SETTLEMENT CLASS TO DATE SUPPORTS THE
      REQUESTED FEE........................................................................................ 18

V.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE
      NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ................. 18

VI.   PLAINTIFFS' REQUEST FOR REIMBURSEMENT OF THEIR TIME AND
      EXPENSES IS APPROPRIATE UNDER THE PSLRA ................................................. 19

VII.  CONCLUSION ............................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Akerman v. Oryx Comms., Inc.,*
   810 F.2d 336 (2d Cir. 1987) ................................................................................12

*Arbuthnot v. Pierson,*
   607 F. App'x 73 (2d Cir. 2015) ...........................................................................12

*Backman v. Polaroid Corp.,*
   910 F.2d 10 (1st Cir. 1990) ..................................................................................13

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
   472 U.S. 299 (1985) .......................................................................................5, 16

*Bentley v. Legent Corp.,*
   849 F. Supp. 429 (E.D. Va. 1994) .......................................................................13

*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980) ...............................................................................................5

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ................................................................................14

*City of Providence v. Aeropostale, Inc.,*
   No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014)............12

*Comverse,*
   2010 WL 2653354.............................................................................................8, 16

*Del Glob. Techs. Corp.,*
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................9, 11

*Eichler, Hill Richards, Inc. v. Berner,*
   472 U.S. 299 (1985) .......................................................................................5, 16

*EVCI Career Colls. Holding Corp. Sec. Litig.,*
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ......................................................17

*FLAG Telecom,*
   2010 WL 4537550...........................................................................................passim

*Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.,*
   925 F.3d 63 (2d Cir. 2019) ....................................................................................6

*Goldberger v. Integrated Res, Inc.*,
  209 F.3d 43 (2d Cir. 2000) ........................................................................................passim

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc., et al.*,
  2022 WL 4136175 (S.D.N.Y. Feb. 14, 2022)............................................................7

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ...............................................................................................15

*Herman v. Legent Corp.*,
  50 F.3d 6 (4th Cir. 1995) ........................................................................................13

*Hicks v. Morgan Stanley*,
  No. 01 Civ. 10071(RJG), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................5, 17

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) .................................................................................13

*In re Am. Bank Note Holographics Inc. Sec. Litig.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) .........................................................................14

*In re Am. Int'l Grp., Inc.*,
  No. 04 Civ. 8141(DAB), 2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010) ...............................20

*In re Amgen Inc. Sec. Litig.*,
  No. CV 7-2536 PSG (PLAx), 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .......................13

*In re Bristol-Myers Squibb Sec. Litig.*,
  361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ..................................................................7

*In re China Sunergy Sec. Litig.*,
  No. 07 Civ. 7895(DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ...............................18

*In re Colgate-Palmolive*, Co. ERISA Litigation,
  36 F. Supp. 3d (S.D.N.Y. 2014)................................................................................7

*In re Facebook, Inc. IPO Securities and Derivative Litigation*
  343 F. Supp. 3d (S.D.N.Y. 2018)..............................................................................20

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................................13

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................................15

*In re GSE Bonds Antitrust Litig.*,
   2020 U.S. Dist. LEXIS 104842 (S.D.N.Y. June 16, 2020) ....................................................8

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................................15, 16

*In re Omega Healthcare Invs., Inc. Sec. Litig.*,
   2023 WL 3069770 (S.D.N.Y. Apr. 25, 2023) .........................................................................7

*In re PPDAI Grp. Inc. Sec. Litig.*,
   2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ...........................................................................7

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) ...........................................................................................11

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) .......................................................................6, 12, 14

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ..............................11

*In re Vivendi Universal, S.A. Sec. Litig.*,
   765 F. Supp. 2d 512 (S.D.N.Y. 2011) ...................................................................................13

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) .............................................................................15, 20

*Machniewicz v. Uxin Ltd., et al.*,
   2021 WL 9409860 (E.D.N.Y. Sept. 8, 2021) .........................................................................7

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .........................................................................9, 11, 17

*Marsh & McLennan*,
   2009 WL 5178546 ...........................................................................................15, 16, 20

*McDaniel v. Cnty. of Schenectady*,
   595 F.3d 411 (2d Cir. 2010) ...................................................................................................5

*Morrison v. Nat'l Austl. Bank Ltd.*,
   561 U.S. 247 (2010) ...............................................................................................................13

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   No. 08-cv-10783, 2016 WL 3369534 (S.D.N.Y. May 2, 2016) ..............................................8

*Panther Partners Inc. v. Jianpu Tech. Inc., et al.*,
   No. 1:18-cv-09848-PGG, ECF 130 (S.D.N.Y. May 12, 2022) ..................................7

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
   2012 WL 651640 (S.D.N.Y. Feb. 24, 2012)..............................................................8

*Savoie v. Merchs. Bank*,
   166 F.3d 456 (2d Cir. 1999) .....................................................................................6

*Sewell v. Bovis Lead Lease, Inc.*,
   2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ...........................................................8

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   No. 01-CV-11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ..................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ...........................................................................................5, 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) .......................................................................................6

*Willix v. Healthfirst, Inc.*,
   No. 07 Civ. 1143 (ENV) (RER), 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ........9

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
   No. 14-CV-8925 (KMW), 2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) ...............9

**Statutes**

15 U.S.C. §77z-1(a)(4)...................................................................................................1, 19

**Rules**

Fed. R. Civ. P. 23(h) .........................................................................................................1

**Other Authorities**

H.R. Rep. No. 104-369, *as reprinted in* 1995 U.S.C.C.A.N. 730 ................................20

Pursuant to Federal Rule of Civil Procedure ("Rule") 23(h), Court-appointed Lead Counsel Kaplan Fox & Kilsheimer LLP ( "Lead Counsel"), along with State Court Lead Counsel Robbins Geller Rudman & Dowd LLP and Johnson Fistel, LLP (collectively "State Court Lead Counsel," and together with Lead Counsel, "Plaintiffs' Counsel"), respectfully submit this memorandum of law in support of their motion for: (i) an award of attorneys' fees in the amount of 30% of the Settlement Amount, plus interest; (ii) Litigation Expenses of $62,816.47 that were reasonable and necessary in prosecuting and resolving the Actions, plus interest; and (iii) Plaintiffs' time and expenses in the amount of $3,458.98 in the aggregate pursuant to 15 U.S.C. §77z-1(a)(4) in connection with their representation of the Settlement Class in the Actions.[1]

## I.    PRELIMINARY STATEMENT

After three years of dedicated litigation efforts, Plaintiffs' Counsel have successfully negotiated a settlement of this securities class action with defendants D-MARKET Elektronik Hizmetler Ve Ticaret Anonim Şirketi a/k/a D-MARKET Electronic Services & Trading d/b/a Hepsiburada ("Hepsiburada" or the "Company") TurkCommerce B.V. ("TurkCommerce"); Hanzade Vasfive Doğan Boyner, Mehmet Murat Emirdağ, Halil Korhan Öz, Erman Kalkandelen, Mehmet Erol Çamur, Cemal Ahmet Bozer, Vuslat Doğan Sabanci, Mustafa Aydemir, Tolga Babali, and Tayfun Bayazit (the "Individual Defendants"); Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC, Goldman, Sachs & Co. LLC, BofA Securities, Inc., and UBS Securities LLC (the "Underwriter Defendants"); and Colleen A. De Vries ("De Vries") and Cogency Global,

---

[1]    All capitalized terms not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated March 22, 2023 ("Stipulation") (ECF No. 73-1). All citations to "¶ __" herein refer to paragraphs in the Joint Declaration of Frederic S. Fox and Michael G. Capeci in Support of (1) Plaintiffs' Motion for Approval of Settlement and Plan of Allocation; and (2) Plaintiffs' Counsel's Motion for Award of Attorneys' Fees and Expenses ("Joint Declaration" or "Joint Decl."), filed herewith. Citations to "Ex. __" refer to exhibits to the Joint Declaration. Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

Inc. (with De Vries, the "Cogency Defendants," and collectively with Hepsiburada, TurkCommerce, the Individual Defendants, and the Underwriter Defendants, "Defendants"). The proposed Settlement, if approved by the Court, will resolve the Actions in their entirety in exchange for $13.9 million in cash. Based on Plaintiffs' Counsel's and Plaintiffs' thorough understanding of the risks and uncertainties in these Actions, and the assessment of reasonably recoverable class-wide damages, this recovery is a significant, favorable result for the Settlement Class.

The benefits of the Settlement are clear when weighed against the risk that the Settlement Class might recover less than the Settlement Amount (or nothing) if the Actions were litigated through the pending motions to dismiss, further discovery, class certification, summary judgment, trial, and post-trial appeals. The Settlement eliminates these risks and provides a substantial benefit without further delay.

As fully set forth in the Joint Declaration, the litigation risks were substantial, both from a liability and damages perspective, and counsel faced additional risks given that many of the Defendants were located outside of the Court's jurisdiction and any judgment may well have proven to be uncollectable. Plaintiffs' Counsel assumed all of those risks by litigating the Actions on a fully contingent basis and devoting substantial resources to prosecuting the Actions against highly-skilled opposing counsel in order to achieve the Settlement. Among other work detailed in the Joint Declaration, Plaintiffs' Counsel: (i) conducted a thorough investigation of potential claims against Defendants; (ii) reviewed and analyzed the Company's filings with the United States Securities and Exchange Commission ("SEC"), press releases, and representations to investors and analysts on conference calls and investor conferences; (iii) compiled and analyzed investigative materials to prepare and draft an amended complaint; (iv) researched the applicable

law with respect to the claims of Plaintiffs and the Settlement Class against Defendants and the potential defenses thereto; (vi) opposed Defendants' motions to dismiss; (vii) consulted extensively with an expert in the areas of negative causation and damages; and (viii) participated in lengthy and complicated mediation discussions, including the preparation and exchange of mediation statements, with the assistance of an independent and neutral mediator.[2] ¶ 68.

Plaintiffs' Counsel also engaged in protracted and hard-fought settlement negotiations with Defendants, including a formal mediation session overseen by an experienced mediator, Judge Layn R. Phillips (Ret.), of Phillips ADR. ¶ 8, 28-29. Prior to the mediation session, the Parties exchanged detailed mediation statements with citations to evidence supporting their positions on liability, damages, and class certification. Although the mediation session was unsuccessful, the Parties' settlement negotiations continued over the following three months and resulted in an agreement in principle to resolve the Actions on December 5, 2022. ¶ 29. Negotiations of the complex terms of the Stipulation were concluded on March 22, 2023. ¶ 31.

 Plaintiffs' Counsel have devoted over 2,000 hours, with a resulting lodestar of $1,500,763.50, to the investigation, prosecution, and resolution of the Actions. ¶ 66; Exs. 2-4. Plaintiffs' Counsel's fee request of 30% of the Settlement Amount represents a 2.78 multiplier to the total lodestar value of the time Plaintiffs' Counsel dedicated to the Actions. *Id.*  As further detailed herein, Plaintiffs' Counsel will spend additional time directing the distribution process, and no additional fees or expenses will be sought for those efforts.

---

[2]     For the sake of brevity in this memorandum of law, the Court is respectfully referred to the Joint Declaration for a detailed description of, among other things: the nature of the claims asserted (¶¶ 15-16); the procedural history of the Actions and the work performed by Plaintiffs' Counsel (¶¶ 17-34); the Settlement negotiations (¶¶ 35-40); and the risks of continued litigation (¶¶ 49-64).

Pursuant to the Court's Preliminary Approval Order, as of June 27, 2023, 13,598 Notices have been disseminated to potential Settlement Class Members and nominees, and the Summary Notice was published in the national edition of *The Wall Street Journal* and transmitted over *Business Wire*. ¶¶ 34, 36.[3] The Notice advises recipients that Plaintiffs' Counsel would be applying to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount, plus and Litigation Expenses not to exceed $150,000, plus interest on both amounts, and awards to Plaintiffs for their time and expenses related to their representation of the Settlement Class. ¶ 58. The fees and expenses that Plaintiffs' Counsel and Plaintiffs now request do not exceed these amounts. The Notice further informs Settlement Class Members that they may object to the requests for attorneys' fees and expenses until July 18, 2023. ¶ 61. While the deadline to object has not yet passed, to date, no objections to the amount of attorneys' fees and expenses set forth in the Notice have been received. *Id.*[4]

For the reasons discussed herein, Plaintiffs' Counsel respectfully submit that the requested fee is fair and reasonable under the applicable legal standards. In addition, Plaintiffs' Counsel also respectfully submit that the Litigation Expenses were reasonable and necessary for the successful prosecution of the Actions, as were the costs and expenses for which Plaintiffs now seek payment. Accordingly, Plaintiffs' Counsel respectfully submits that the motion for attorneys' fees and expenses should be granted in full.

---

[3]     *See also,* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date (the "Mailing Declaration") on behalf of the Court-appointed Claims Administrator Gilardi & Co. LLC ("Gilardi"), Ex. 2 ¶¶ 8-9.

[4]     If any objections are received following this submission, Plaintiffs' Counsel will address them in the reply brief to be filed with the Court on July 25, 2023.

## II.   THE REQUESTED FEE IS REASONABLE UNDER EITHER THE PERCENTAGE OR LODESTAR METHOD

The propriety of awarding attorneys' fees from a common fund is well established. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). The Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and [SEC] civil enforcement actions…." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of securities laws and are 'a necessary supplement to [SEC] action'"). Compensating counsel for bringing these actions is important because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071(RJG), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

In the Second Circuit, courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). "[W]hether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." *Goldberger v. Integrated Res, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

In this case, the requested fee award—30% of the Settlement Amount, translating to a multiplier of approximately 2.78 of Plaintiffs' Counsel's lodestar —is well supported under either the "percentage" or "lodestar" method.

A.   **The Requested Attorneys' Fee Is Reasonable Under the Percentage-of-the-Fund Method**

Plaintiffs' Counsel respectfully submit that the Court should award a fee based on a percentage of the common fund obtained. The Second Circuit has approved the percentage method, recognizing that the "trend in this Circuit is toward the percentage method" and that the method "directly aligns the interests of the class and its counsel and provides a  powerful incentive for the efficient prosecution and early resolution of litigation."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("*Visa*"); *see also Goldberger*, 209 F.3d at 48-50 (either percentage of fund method or lodestar method may be used to determine fees, but noting the "lodestar method proved vexing" and results in "inevitable waste of judicial resources"); *see also Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 71 (2d Cir. 2019) ("[f]irst, a fee awarded under the common-fund doctrine provides class counsel with the incentive to maximize the settlement payout for the class because a larger settlement yields a proportionally larger fee; second, a district court is required to review class settlements and class counsel's fees, providing an extra layer of security…"); ; *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) ("percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 & n.7 (S.D.N.Y. 2008) ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.").  The PSLRA likewise contemplates that fees be awarded on a percentage basis, authorizing attorneys' fees and expenses that do not exceed "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6).

Courts in the Second Circuit commonly award percentage fees of as much as 33% in cases with comparable settlement values to this one. *See, e.g., In re Omega Healthcare Invs., Inc. Sec.*

*Litig.*, 2023 WL 3069770, at *12 (S.D.N.Y. Apr. 25, 2023) (awarding 30% of $30,750,000 settlement, plus expenses); *Erlandson v. Triterras, Inc., et al.*, No. 7:20-cv-10795-CS, ECF 82 at 1 (¶4) (S.D.N.Y. Sept. 8, 2022) (awarding one-third of $9 million settlement); *Panther Partners Inc. v. Jianpu Tech. Inc., et al.*, No. 1:18-cv-09848-PGG, ECF 130 at 1 (¶4) (S.D.N.Y. May 12, 2022) (awarding one-third of $7.5 million settlement); *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc., et al.*, 2022 WL 4136175, at *1 (S.D.N.Y. Feb. 14, 2022) (awarding one-third of $18 million settlement); *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *16-*17 (E.D.N.Y. Jan. 21, 2022) (noting a one-third fee for a $9 million settlement resolving parallel federal and state actions alleging Securities Act of 1933 claims "constitutes a proportion routinely approved as reasonable"); *Machniewicz v. Uxin Ltd., et al.*, 2021 WL 9409860, at *4 (E.D.N.Y. Sept. 8, 2021) (awarding 33.33% of $9.5 million settlement of parallel federal and state actions alleging Securities Act of 1933 claims).

For this reason, the requested 30% fee is reasonable and should be approved.

## B.   The Requested Attorneys' Fee Is Reasonable Based On A Lodestar Cross-Check

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, district courts may "cross-check" the proposed percentage fee award against counsel's lodestar, *Goldberger*, 209 F.3d at 50, "to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *In re Colgate-Palmolive Co. ERISA Litigation*, 36 F. Supp. 3d at 353 (S.D.N.Y. 2014). *See also In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."). When used a "mere cross check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.

In complex, contingent litigation such as the Actions, fees representing multiples above the lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors. *See FLAG Telecom*, 2010 WL 4537550, at *26 ("a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors"); *Comverse*, 2010 WL 2653354, at *5 ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar").

Accordingly, in complex contingent litigation, "[c]ourts commonly award lodestar multipliers between two and six." *Sewell v. Bovis Lead Lease, Inc.*, 2012 WL 1320124, at * 13 (S.D.N.Y. Apr. 16, 2012), and even higher particularly where, as here, "Class Counsel were able to use their considerable expertise in the type of claims asserted in th[e] action to achieve an excellent result for the Class in a highly efficient manner at an early stage of litigation." *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, 2012 WL 651640, at * 4 (S.D.N.Y. Feb. 24, 2012).

Here, Plaintiffs' Counsel spent more than 2,000 hours of attorney and other professional staff time litigating the Actions from inception through June 2, 2023. *See* ¶ 61; Exs. 2-4. Plaintiffs' Counsel's lodestar, derived by multiplying the hours spent by each attorney and other professional staff by their current hourly rates, is $1,500,763.50. *Id*. The requested fee of 30% of the Settlement Amount (*i.e.*, a value of $4,170,000.00) therefore represents a multiplier of approximately 2.78 of the total lodestar. This multiplier is within the range approved throughout district courts in this Circuit, and elsewhere, and is additional evidence that the requested fee is reasonable. *See, e.g*., *In re GSE Bonds Antitrust Litig.*, 2020 U.S. Dist. LEXIS 104842, at * 23-24 (S.D.N.Y. June 16, 2020) (awarding fee representing multiplier of 4.09); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 08-cv-10783, 2016 WL 3369534 (S.D.N.Y. May 2, 2016) (approving fee

representing 3.9 multiplier); *Woburn Ret. Sys. v. Salix Pharm., Ltd.,* No. 14-CV-8925 (KMW),
2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (3.14 multiplier); *Maley v. Del Glob. Techs.
Corp.,* 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002) (4.65 mulitplier).

   In *Maley*, after almost one year of litigation, the parties reached a "relatively quick
settlement" before the commencement of extensive discovery.  *See Maley*, 186 F. Supp. 2d at 363-
64.  In awarding a fee of one-third that resulted in a lodestar cross-check multiplier of 4.65, the
court held that "[i]n the context of a complex class action, early settlement has far reaching benefits
in the judicial system."  *Id.* at 373.  The court held that the multiplier of 4.65 was "well within the
range awarded by courts in this Circuit and courts throughout the country."  *Id.* at 369.  Here, while
shouldering the risk of non-recovery, Plaintiffs' Counsel litigated the Actions on a contingency
basis for several years.  Accordingly, the relatively modest lodestar multiplier here is well within
the range awarded by courts in this Circuit, and thus Plaintiffs' Counsel's fee is reasonable when
the cross-check is performed.

   Additional work will be required of Plaintiffs' Counsel on an ongoing basis, including:
correspondence with Settlement Class Members; preparation for, and participation in, the
Settlement Fairness Hearing; supervising the claims administration process being conducted by
the Claims Administrator; and supervising the distribution of the Net Settlement Fund to Settlement
Class Members who have submitted valid Claim Forms. However, Plaintiffs' Counsel will not
seek any additional payment for this work. *See Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV)
(RER), 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("The fact that Class Counsel's fee
award will not only compensate them for time and effort already expended, but for time that they
will be required to spend administering the settlement going forward also supports their fee
request.").

For all these reasons, the lodestar cross-check supports the reasonableness of the requested fee.

## III.   THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING THE SECOND CIRCUIT'S FACTORS

The Second Circuit has set forth the following criteria to guide courts when reviewing a request for attorneys' fees in a common fund case, whether under the percentage approach or the lodestar multiplier approach:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. As discussed below, these factors and the analyses above demonstrate that Plaintiffs' Counsel's requested fee is reasonable.

### A.   Plaintiffs' Counsel Devoted Significant Time and Labor to the Actions

Plaintiffs' Counsel vigorously litigated the Actions before the Settlement was reached. As detailed in the Joint Declaration, the Actions were settled only after Plaintiffs' Counsel conducted an extensive investigation into the Settlement Class's claims, prepared and filed detailed amended complaints describing Defendants' alleged violations of the securities laws, conducted legal research and opposed Defendants' motions to dismiss. ¶¶ 6, 16-32, 68. Likewise, Plaintiffs' Counsel devoted significant time and resources to meeting and conferring with expert economics consultants to assist in developing the claims that would be asserted in the amended complaints and to establish an appropriate model for and calculation of damages in the Actions. ¶¶ 6, 8, 79. Substantial time was also spent in the process of mediating and settling the Actions, including time spent conferring with Plaintiffs about the mediation and negotiations, preparing Plaintiffs' mediation brief and analyzing Defendants' mediation brief, preparing for and attending the in-

person mediation session with Judge Phillips, subsequent negotiations to reach an agreed-upon Term Sheet, and negotiation of the Stipulation and supporting documents. ¶¶ 6, 8, 28-31.

As noted above, Plaintiffs' Counsel expended more than 2,000 hours investigating, prosecuting and resolving the Actions with a total lodestar value of $1,500,763.50. Exs. 2-4. The significant amount of time and effort devoted to this case by Plaintiffs' Counsel and the efficient and effective management of the Actions confirm that the fee request here is reasonable.

**B.      The Magnitude and Complexity of the Actions Support the Requested Fee**

Courts have long recognized that "[s]ecurities class actions such as this are 'notably difficult and notoriously uncertain.'" *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400(CM)(PED), 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115808, at *5 (S.D.N.Y. Nov. 7, 2007) ("A securities case, 'by its very nature, is a complex animal.'") (quoting *Maley v. Del Glob. Techs. Corp.,* 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002)).

Had the Actions not settled, the Parties would have proceeded with preparations for any oral argument on the motions to dismiss, discovery, including depositions and expert discovery, motions for class certification, and assuming certification was granted, the Actions would have proceeded to summary judgment motions.[5] To survive summary judgment, Plaintiffs would need to marshal sufficient evidence to establish the elements of their claims, including, for example, falsity and materiality, and to combat Defendants' defenses, including negative causation.

---

[5]      As noted in the Joint Declaration, obtaining discovery from Defendants in this case would have been complicated by the fact that many were located in Turkey. ¶11.

As detailed in the Joint Declaration, Defendants advanced considerable challenges to Plaintiffs' claims. Regarding the alleged misrepresentations, Defendants strongly disputed that they made any material misrepresentations or omissions, arguing that the Registration Statement did not contain any false or misleading statements based on the facts that existed at the time, and that Defendants were under no duty to make additional disclosures. ¶ 44. Defendants also argued with regard to allegedly misleading statements of opinion, that they had a reasonable basis to believe their statements in the Registration Statement were true when made. ¶ 45.

Plaintiffs would also have confronted risks when contesting Defendants' arguments concerning negative causation and damages. ¶ 79. On these issues, Plaintiffs would have to provide evidence (through expert testimony) to undermine Defendants' burden of proof in "showing that the misstatement did not cause the stock price to decline." *Akerman v. Oryx Comms., Inc.*¸ 810 F.2d 336, 341 (2d Cir. 1987) (Section 11 "expressly creates an affirmative defense of disproving causation"). Meanwhile, Defendants would contend, with the help of their experts, that the price declines on each of the alleged corrective disclosure dates were caused, in whole or in substantial part, by information unrelated to the alleged Registration Statement misrepresentations. Due to the complexities of establishing causation and damages, both sides would be required to rely on expert testimony and involve an uncertain battle of experts at trial. *See City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson,* 607 F. App'x 73 (2d Cir. 2015) ("Undoubtedly, the Parties' competing expert testimony on damages would inevitably reduce the trial of these issues to a risky 'battle of the experts' and the 'jury's verdict with respect to damages would depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable.'"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (in this "battle of experts, it is

virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found"); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury.").

Even if Plaintiffs defeated Defendants' summary judgment motions and were successful against Defendants at trial, Plaintiffs' efforts in establishing their claims would, in all likelihood, not end with a judgment at trial, but would continue through one or more levels of appellate review. *See In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAx), 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016) ("A trial of a complex, fact-intensive case like this could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could have added years to the litigation."). Thus, in complex litigation such as this, even a victory at the trial stage does not guarantee ultimate success. *See Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (following plaintiff verdict after four-week trial, court granted defendants' post-trial motion for judgment as a matter of law on loss causation grounds, which judgment was affirmed on appeal); *In re Vivendi Universal, S.A. Sec. Litig.,* 765 F. Supp. 2d 512, 524, 533 (S.D.N.Y. 2011) (after verdict for class plaintiffs, the district court granted judgment for defendants on claims by investors in Vivendi's ordinary shares based on change of law announced in *Morrison v. Nat'l Austl. Bank Ltd.,* 561 U.S. 247 (2010)).[6]

Despite the difficulty of the issues raised and the risks faced, Plaintiffs' Counsel has secured a favorable result for the Settlement Class while avoiding the risks and delays of continued

---

[6]     *See also e.g.*, *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd sub nom.*, *Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995) (directed verdict after plaintiffs' presentation of its case to the jury); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (after eleven years of litigation, and following a jury verdict for plaintiffs and an affirmance by a First Circuit panel, plaintiffs' claims were dismissed by an *en banc* decision and plaintiff received nothing).

litigation. As a result, this factor strongly supports against foreign-based defendants the requested fee award.

### C.      The Risks of the Litigation Support the Requested Fee

The risk of litigation is one of the most important *Goldberger* factors. 209 F.3d at 54; *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) ("'the risk of the litigation' is a pivotal factor in assessing the appropriate attorneys' fees"). The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted), *abrogated on other grounds by Goldberger*, 209 F.3d 43. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.,* No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); *see also In re Am. Bank Note Holographics Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take this [contingent-fee] risk into account in determining the appropriate fee to award").

As discussed above and in the Joint Declaration, Plaintiffs' Counsel faced substantial risks in establishing Defendants' liability and damages, including the pending motions to dismiss. ¶¶ 40-48. Despite these uncertainties, Plaintiffs' Counsel undertook this case on a wholly contingent basis, knowing that the litigation could last for years and would require the devotion of a substantial amount of attorney time and a significant advance of litigation expenses with no guarantee of compensation. "In numerous class actions, including complex securities cases,

plaintiffs' counsel have expended thousands of hours and advanced significant out-of-pocket expenses and received no remuneration whatsoever." *Marsh & McLennan*, 2009 WL 5178546, at *18. Unlike defense counsel, who are typically paid substantial hourly rates and reimbursed for their expenses on a regular basis, Plaintiffs' Counsel have not been compensated for their time or expenses since this case began in 2021. Plaintiffs' Counsel's assumption of this contingent fee risk and diligent prosecution of the Action further supports the reasonableness of the requested fee. *See FLAG Telecom*, 2010 WL 4537550, at *27 ("the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### D. The Quality of Plaintiffs' Counsel's Representation Supports the Requested Fee

The quality of the representation by Plaintiffs' Counsel is another important factor that supports the reasonableness of the requested fee. Plaintiffs' Counsel respectfully submits that the quality of its representation is evidenced by the favorable result achieved. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"); *Goldberger*, 209 F.3d at 55; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 358 (S.D.N.Y. 2005); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004).

In addition, Plaintiffs' Counsel's substantial experience in complex federal civil litigation, particularly in the area of securities class actions (*see* Exs. 2-4) clearly benefited the Settlement Class and aided in the efficient prosecution of the Actions. *See WorldCom*, 388 F. Supp. 2d at 359 ("If the Lead Plaintiff had been represented by less tenacious and competent counsel, it is by no means clear that it would have achieved the success it did here on behalf of the Class.").

The quality of opposing counsel is also relevant here. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."). Plaintiffs' Counsel faced talented adversaries in the Actions. Counsel for Defendants included the prominent defense firms Latham & Watkins LLP, Shearman & Sterling, LLP and K & L Gates, LLP. In the face of this skilled opposition, Plaintiffs' Counsel developed a case that was sufficiently strong to settle on terms favorable to the Settlement Class. Plaintiffs' Counsel's diligent work and the favorable resulting Settlement, despite formidable opposition, strongly support the requested fee award.

### E.    The Requested Fee in Relation to the Settlement

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2010 WL 2653354, at *3 (E.D.N.Y. June 24, 2010) (quoting *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *19 (S.D.N.Y. Dec. 23, 2009)). As discussed in detail in Section II(A), *supra*, the requested fee is well within the range of percentage fees that this Court and others have awarded in comparable cases and, accordingly, the fee requested is reasonable in relation to the Settlement.

### F.    Public Policy Considerations Support the Requested Fee

The Supreme Court has emphasized that private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs*, 551 U.S. at 318-19 (noting that the Supreme Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal

prosecutions and civil enforcement actions). Thus, a strong public policy favors rewarding firms for bringing successful securities litigations. *See FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."). This factor supports Plaintiffs' Counsel's fee and expense application.

Moreover, courts in this circuit have found that "public policy considerations support[] the [fee] award" when a large public pension fund, serving as lead plaintiff, "conscientiously supervised the work of lead counsel, and had given its endorsement to the fee request." *EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007).

Here, the 30% fee requested has been approved by Plaintiffs, an institutional investor and individual investor, respectively. As detailed below and in the Declaration of Brandon Wiebe in Support of Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees and Expenses dated June 27, 2023 (the "Wiebe Declaration," Ex.5), Lead Plaintiff actively supervised the prosecution of the Federal Court Action from its commencement through settlement. Ex. 6 ¶ 8. Similarly, as stated in the Declaration of James Benson in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, dated May 31, 2023 (the "State Court Plaintiff Declaration," Ex. 6), State Court Plaintiff actively participated in and supervised the State Court Action, and the events leading to the Settlement of the Actions. Ex. 6 ¶ 6. Based

on their involvement in the Actions, Plaintiffs have evaluated Plaintiffs' Counsel's fee request and believe that it is fair and reasonable and warrants approval by the Court. Exs. 5-6 ¶ ¶ 5, 8.

## IV.   THE REACTION OF THE SETTLEMENT CLASS TO DATE SUPPORTS THE REQUESTED FEE

The reaction of the Settlement Class to date also supports the fee request. First, through June 27, 2023, the Claims Administrator has mailed 13,598 copies of the Notice Packet to potential Settlement Class Members and nominees informing them that, among other things, Plaintiffs' Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount and up to $150,000 in expenses, plus interest on both amounts, which may include the expenses of Plaintiffs directly related to their representation of the Settlement Class. ¶¶4-11. Additionally, the Summary Notice was published in *The Wall Street Journal* and transmitted over the *BusinessWire*. ¶ 12. While the time to object to the Fee and Expense Application does not expire until July 18, 2023, to date no objections have been received. ¶¶ 15-16. Plaintiffs' Counsel will address any objections that are submitted in their reply papers, which will be filed on July 25, 2023.  Requests for exclusion are due July 18, 2023 and to date Plaintiffs' Counsel is not aware of any exclusion.

## V.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

In addition to a reasonable attorneys' fee, Plaintiffs' Counsel respectfully seeks $62,816.47 for litigation expenses reasonably incurred by Plaintiffs' Counsel in connection with prosecuting the claims against Defendants. ¶¶ 62, 69, 71, 77. These expenses are properly recoverable by counsel. *See In re China Sunergy Sec. Litig.,* No. 07 Civ. 7895(DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'") (citation omitted); *FLAG Telecom*, 2010 WL

4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.").

As detailed in the Joint Declaration, Plaintiffs' Counsel utilized experts and consultants to assist in developing the claims asserted in the amended complaints, assess causation and classwide damages in preparation for settlement negotiations, and develop the Plan of Allocation after a Settlement was reached. ¶ 8, 79. A significant expense was the cost of the mediation services of Judge Layn R. Phillips (Ret.). ($42,281.25, *see* ¶¶ 28-30, 81), which represented Plaintiffs' half of the total fee for his assistance in resolving the Actions. Plaintiffs' Counsel also incurred expenses for the cost of digital legal research services in connection with their legal and financial research conducted over the course of the Actions ($8,259.32, *see* ¶¶ 81). ¶ 81. All of the foregoing costs and expenses were necessarily incurred for the effective prosecution of the Actions and thus, payment of these expenses is reasonable and appropriate.

The Notice informed potential Settlement Class Members that Plaintiffs' Counsel would apply for payment of their litigation expenses in an amount not to exceed $150,000, including reimbursement of Plaintiffs' time and expenses directly incurred in its representation of the Settlement Class. ¶ 83. The total amount of expenses requested is below that amount and, to date, there has been no objection to the request for expenses. ¶¶ 62, 83.

## VI.     PLAINTIFFS' REQUEST FOR REIMBURSEMENT OF THEIR TIME AND EXPENSES IS APPROPRIATE UNDER THE PSLRA

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §77z-1(a)(4). Congress

specifically acknowledged the importance of awarding appropriate reimbursement to class representatives. *See* H.R. Rep. No. 104-369, at 36 *as reprinted in* 1995 U.S.C.C.A.N. 730, 734 ("The Conference Committee recognizes that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the court discretion to award fees."). As detailed in the Wiebe Declaration and the State Court Plaintiff Declaration, Plaintiffs are seeking a total of $3,458.98 ($1,958.98[7] for Lead Plaintiff and $1,500 for State Court Plaintiff) in reimbursement for expenses directly related to their representation of the Settlement Class in the Actions. Ex. 5, ¶¶ 7-10, Ex. 6, ¶ 10.

Numerous cases have approved reasonable payments to compensate class representatives for their costs and expenses. *See, e.g., In re WorldCom*, 388 F. Supp. 2d at 359 (finding "[r]eimbursement of Lead Plaintiff's expenses is appropriate" and awarding reimbursement of $11,063.54); *In re Facebook, Inc. IPO Securities and Derivative Litigation*, 343 F. Supp. 3d at 418 (S.D.N.Y. 2018) (approving reimbursement to lead plaintiff of $56,792.53 for time and expenses in the litigation); *In re Am. Int'l Grp., Inc.*, No. 04 Civ. 8141(DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (granting PSLRA award of $30,000 to lead plaintiffs "to compensate them for the time and effort they devoted on behalf of [the] class"); *Marsh & McLennan*, 2009 WL 5178546, at *21 (awarding a combined $214,657 to two lead plaintiffs).

Here, Lead Plaintiff, through its Chief Executive Officer, has devoted at least 24 hours to the Federal Court Action, which included time spent, *inter alia*: (i) conferring with Lead Counsel on a regular basis regarding counsel's strategy for the prosecution and eventual settlement of the case, among other subjects; (ii) reviewing pleadings, briefs, and other material documents filed

---

[7]     This amount was converted from the CDN$2,595.88 described in the Wiebe Declaration at the prevailing exchange rate on June 29, 2023.

throughout the case; and (iii) analyzing and approving the proposed Settlement. Ex. 5 ¶¶ 7, 10. This is time that Lead Plaintiff's staff was unable to devote to their regular duties on behalf of Lead Plaintiff.

Similarly, State Court Plaintiff expended substantial time and effort in his participation and supervision of the State Court Action, which included, *inter alia*: (i) regularly communicating with State Court Lead Counsel about the status and progress of the State Court Action; (ii) reviewing pleadings, briefs, and orders in the State Court Action; and (iii) participating in settlement discussions before and after the mediation.  Ex. 6 ¶¶ 5-6, 10.

As noted above, the Notice informed investors that Plaintiffs may seek reimbursement of their costs and expenses and there have been no objections received to date. Plaintiffs' Counsel therefore respectfully submits that the $3,458.98 sought, based on Plaintiffs' active involvement in the Actions from inception to settlement, is eminently reasonable and should be granted.

**VII.   CONCLUSION**

For the reasons stated herein and in the Joint Declaration, Plaintiffs' Counsel respectfully requests that the Court award attorneys' fees in the amount of 30% of the Settlement Amount, plus interest; award Plaintiffs' Counsel's Litigation Expenses in the amount of $62,816.47, plus interest; and reimbursement of Plaintiffs' costs and expenses in the amount of $3,458.98.

Dated: June 30, 2023                    Respectfully submitted,

                                        By: */s/   Frederic S. Fox*

                                        Frederic S. Fox
                                        Donald R. Hall
                                        Melinda Campbell
                                        **KAPLAN FOX & KILSHEIMER LLP**
                                        800 Third Avenue, 38th Floor
                                        New York, NY 10022
                                        Telephone: (212) 687-1980
                                        Facsimile: (212) 687-7714

*Lead Counsel for Lead Plaintiff and the
proposed Settlement Class*

**ROBBINS GELLER RUDMAN
  & DOWD LLP**
SAMUEL H. RUDMAN
MICHAEL G. CAPECI


                    */s/ Samuel H. Rudman*
                  SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mcapeci@rgrdlaw.com

**JOHNSON FISTEL, LLP**
RALPH M. STONE
1700 Broadway, 41st Floor
New York, NY  10019
Telephone:  212/292-5690
212/292-5680 (fax)
ralphs@johnsonfistel.com

**JOHNSON FISTEL, LLP**
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA  30064
Telephone:  470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com

*Counsel for the State Court Plaintiff and the
proposed Settlement Class*