**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— x

IWA-FOREST INDUSTRY PENSION PLAN, :    Civil Action No. 1:21-cv-08634-PKC
Individually and on Behalf of All Others   :
Similarly Situated,                            :    <u>CLASS ACTION</u>
                                        :
                    Plaintiff,    :    Honorable P. Kevin Castel
                                        :
   vs.                                           :
                                        :
D-MARKET ELEKTRONIK HIZMETLER    :
VE TICARET ANONIM ŞIRKETI a/k/a D    :
MARKET ELECTRONIC SERVICES &    :
TRADING d/b/a/ HEPSIBURADA, MEHMET    :
MURAT EMIRDAĞ, HALIL KORHAN ÖZ,    :
HANZADE VASFIYE, DOĞAN BOYNER,    :
ERMAN KALKANDELEN, MEHMET EROL    :
ÇAMUR, CEMAL AHMET BOZER,    :
VUSLAT DOĞAN SABANCI, MUSTAFA    :
AYDEMIR, TOLGA BABALI, COLLEEN A.    :
DE VRIES, COGENCY GLOBAL INC.,    :
MORGAN STANLEY & CO. LLC, J.P.    :
MORGAN SECURITIES LLC, GOLDMAN,    :
SACHS & CO. LLC, BOFA SECURITIES    :
INC., UBS SECURITIES LLC, and    :
TURKCOMMERCE B.V.,                   :
                                        :
                  Defendants.    :

———————————————————— x

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION

———————————————————— x
                        :

JAMES BENSON, Individually and on Behalf  :   Index No. 655701/2021
of All Others Similarly Situated,              :

                        :   CLASS ACTION
             Plaintiff,   :

                        :   The Honorable Robert R. Reed, J.S.C.
     v.                  :

                        :   Part 43
D-MARKET ELEKTRONIK HIZMETLER  :
VE TICARET ANONIM ŞIRKETI,       :
HANZADE VASFIYE DOĞAN BOYNER,  :
MEHMET MURAT EMIRDAĞ, HALIL    :
KORHAN ÖZ, ERMAN KALKANDELEN,  :
MEHMET EROL ÇAMUR, CEMAL AHMET  :
BOZER, VUSLAT DOĞAN SABANCI,    :
MUSTAFA AYDEMIR, TOLGA BABALI,   :
TAYFUN BAYAZIT, COLLEEN A. DE     :
VRIES, COGENCY GLOBAL INC.,       :
TURKCOMMERCE B.V., MORGAN       :
STANLEY & CO. LLC, J.P. MORGAN     :
SECURITIES LLC, GOLDMAN, SACHS &  :
CO. LLC, BOFA SECURITIES, INC., and  :
UBS SECURITIES LLC,            :

                        :
           Defendants.  :
———————————————————— x

**DECLARATION OF FREDERIC S. FOX AND MICHAEL G. CAPECI IN SUPPORT OF
(1) PLAINTIFFS' MOTION FOR APPROVAL OF SETTLEMENT AND PLAN OF
ALLOCATION; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND  EXPENSES**

## TABLE OF CONTENTS

**Page(s)**

I.      THE RECOVERY ACHIEVED ................................................................................2

II.     FACTUAL SUMMARY OF PLAINTIFFS' CLAIMS AGAINST
        DEFENDANTS ...................................................................................................5

III.    PROCEDURAL HISTORY OF THE ACTION .........................................................6

        A.      The State Court Action ...................................................................................6

                The Federal Action ........................................................................................7

        C.      IWA'sAppointment as Lead Plaintiff ............................................................7

        D.      Investigating, Drafting, and Filing the Federal Court Complaint ...........................7

        E.      Defendants' Motion to Dismiss the Federal Court Complaint ...............................8

                Settlement Negotiations and Terms of the Settlement .......................................9

IV.     NOTICE OF THE SETTLEMENT AND SETTLEMENT FAIRNESS HEARING
        WAS PROVIDED TO SETTLEMENT CLASS MEMBERS .......................................10

V.      THE SETTLEMENT IS A FAVORABLE RESULT FOR THE SETTLEMENT
        CLASS IN LIGHT OF THE RISKS OF CONTINUING LITIGATION .......................11

        A.      Risks Related to Proving Defendants' Liability ...................................................12

        B.      Risks Related to a Post-Judgment Appeal by Defendants ...................................13

VI.     THE PLAN OF ALLOCATION ..............................................................................13

VII.    PLAINTIFFS' COMPLIANCE WITH THE PRELIMINARY APPROVAL
        ORDER ...............................................................................................................15

VIII.   PLAINTIFFS' COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND
        EXPENSES ...........................................................................................................17

        A.      The Requested Fee is Fair and Reasonable ........................................................17

        B.      The Considerable Time and Labor Expended by Lead Counsel ...........................18

        C.      The Risks of Litigation ...................................................................................18

        D.      Quality of Representation ...............................................................................19

E.    Awards in Similar Cases ..................................................................20

F.    The Reaction of the Settlement Class ..............................................20

G.    The Litigation Expenses Are Reasonable and Were Necessarily Incurred
      to Achieve the Benefit Obtained......................................................21

IX.   PLAINTIFFS' REQUEST FOR AN AWARD OF COSTS AND EXPENSES .............22

X.    CONCLUSION ...........................................................................................23

**TABLE OF EXHIBITS**

| EXHIBIT NO. | DESCRIPTION |
|:---:|:---|
| Ex. 1 | Declaration of Ross D. Murray Regarding: (A) Notice Dissemination; (B) Publication of Summary Notice; and (C) Requests for Exclusion Received to Date, dated June 30, 2023. |
| Ex. 2 | Declaration of Donald R. Hall on Behalf of Kaplan Fox & Kilsheimer LLP in Support of Application of Lead Counsel for an Award of Attorneys' Fees and Expenses, with Exhibits: (A) Firm Resume; (B) Time and Lodestar Report; and (C) Expense Report. |
| Ex. 3 | Declaration of Michael G. Capeci Filed on Behalf of Robbins Geller Rudman & Dowd LLP In Support of Application for Award of Attorney's Fees and Expenses |
| Ex. 4 | Declaration of Michael I. Fistel, Jr. Filed on Behalf of Johnson Fistel, LLP in Support of Application for Award of Attorneys' Fees and Expenses |
| Ex. 5 | Declaration of Bandon Wiebe in Support of Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees and Expenses |
| Ex. 6 | Declaration of James Benson in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement |

We, Frederic S. Fox and Michael G. Capeci, pursuant to 28 U.S.C. §1746, hereby declare as follows:

1.      Frederic S. Fox is a partner in the law firm of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox" or "Lead Counsel").[1] I am duly admitted to practice law in New York State and before this Court.  Kaplan Fox is the Lead Counsel in the Federal Court Action.  Michael G. Capeci is a partner of Robbins Geller Rudman & Dowd LLP ("RGRD"), which, along with Johnson Fistel LLP, is State Court Lead Counsel in the State Court Action.  I am duly admitted to practice law in New York State and before this Court.  We have personal knowledge of the matters set forth herein with respect to our respective cases, and, if called upon, we could and would competently testify hereto.

2.      We submit this declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, which the Court preliminarily approved by its Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, dated April 20, 2023 (the "Preliminary Approval Order").  ECF No. 75.  The Settlement will resolve all claims asserted in the Actions on behalf of the Settlement Class, which is defined as "all Persons that purchased or otherwise acquired Hepsiburada ADSs pursuant and/or traceable to Hepsiburada's July 1, 2021 IPO through November 23, 2021, inclusive." Stip. at ¶ 1.42.[2]

---

[1]      Unless otherwise indicated here, capitalized terms have the same definitions as in the Stipulation of Settlement (the "Stipulation") (ECF No. 73-1).

[2]      Excluded from the Settlement Class are: (i) Defendants; (ii) members of the immediate family of any Defendant who is an individual; (iii) any person  who was an officer or director of Hepsiburada during the Class Period;  (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) Hepsiburada's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (vi) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person.

3.      This declaration is also submitted in support of approval of Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses, including the reasonable time and expenses incurred by the Plaintiffs in connection with their representation of the Settlement Class.

4.      For the reasons set forth below and in the accompanying memoranda,[3] Plaintiffs and Plaintiffs' Counsel respectfully submit that (i) the terms of the Settlement are fair, reasonable and adequate in all respects and should be approved by the Court; (ii) the proposed Plan of Allocation is fair and reasonable and should be approved by the Court; and (iii) the Fee and Expense Application is supported by the facts and the law and should be granted in all respects.

## I.      THE RECOVERY ACHIEVED

5.      The Settlement provides a significant recovery of thirteen million, nine hundred thousand dollars ($13,900,000.00) to resolve the Actions against Defendants, as memorialized in the Stipulation. The Settlement is the result of nearly two years of litigation and a vigorously negotiated settlement with the assistance of an experienced mediator, Judge Layn R. Phillips (Ret.) of Phillips ADR.

6.      Before agreeing to the Settlement, Plaintiffs' Counsel diligently litigated the Actions, including by, among other things, (i) conducting a thorough investigation of potential claims against Defendants; (ii) reviewing and analyzing the Company's filings with the United States Securities and Exchange Commission ("SEC"), press releases, and representations to investors and analysts on conference calls and investor conferences; (iii) compiling and analyzing

---

[3]      In conjunction with this Declaration, Plaintiffs and Plaintiffs' Counsel are also submitting (i) the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation (the "Settlement Memorandum") and (ii) the Memorandum of Law in Support of Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses (the "Fee Memorandum").

investigative materials to prepare and file detailed amended complaints; (iv) researching the applicable law with respect to the claims of Plaintiffs and the Settlement Class against Defendants and the potential defenses thereto; (v) opposing Defendants' motions to dismiss; (vi) consulting with an expert in the areas of causation and damages; and (vii) participating in lengthy and complicated mediation discussions, including the preparation and exchange of mediation statements, with the assistance of an independent and neutral mediator. Thus, by the time the Settlement was reached, Plaintiffs' Counsel had developed a solid understanding of the strengths and weaknesses of the Actions.

7.      As described in the Declarations of Brandon Wiebe and James Benson in Support of Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees and Expenses (the "Plaintiffs' Declarations," attached as Exhibits 5 and 6), Plaintiffs also had a good understanding of the strengths and weaknesses of the Actions by the time of settlement. Plaintiffs were active and informed participants in the Actions and, among other things, (i) regularly communicated with Plaintiffs' Counsel regarding the posture and progress of the Actions; (ii) received all significant pleadings and motions filed in the Actions; (iii) received or discussed significant decisions in the Actions; (iv) consulted with Plaintiffs' Counsel throughout the subsequent settlement negotiations; and (v) evaluated and approved the proposed Settlement. *See* Exs. 5 and 6.

8.      The Settlement was ultimately accomplished through arm's-length settlement discussions over a period spanning three months, facilitated by a highly experienced mediator chosen by the Settling Parties—Judge Layn R. Phillips (Ret.). The mediation process included briefing followed by an in-person mediation session with attorneys representing each side focusing on liability and damages. Additionally, Plaintiffs' Counsel devoted significant time and resources

to consulting with a damages expert to establish an appropriate model for, and calculation of, classwide damages in the Actions. After the mediation, there were multiple follow-up communications to reach an agreement in principle. Thereafter, the Parties continued to negotiate for an additional month over the specific terms of the Stipulation.

9.      Plaintiffs obtained this substantial recovery for the Settlement Class despite the significant risks inherent in complex securities class actions generally, and the significant case-specific risks in prosecuting the Actions against mostly foreign-based Defendants. The extensive pre-complaint investigation, legal research, and the Parties' mediation and settlement negotiations informed Plaintiffs and Plaintiffs' Counsel that, while the Actions against Defendants were meritorious, there were also risks that had to be carefully evaluated in determining what path forward was in the best interest of the Settlement Class (*i.e.,* whether to settle and on what terms, or to continue to litigate through rulings on the motions to dismiss, discovery, class certification, summary judgment, trial, and likely appeal).

10.      As summarized below, while Plaintiffs' allegations are supported by their investigation and legal authority, victory against Defendants was not guaranteed. There were uncertainties with respect to Plaintiffs' ability to overcome the factual and legal defenses marshalled by the experienced lawyers representing Defendants, and the challenges of litigating claims in the United States against Turkish defendants.

11.      Plaintiffs' Counsel unequivocally believe, based on our knowledge and understanding of the claims and defenses asserted in the Actions, that the $13.9 million Settlement is a good result for the Settlement Class, particularly when considered against the risk of a much smaller recovery—or even no recovery—after a trial of the Actions, and the inevitable and lengthy appeals that would follow a successful verdict at trial, if any and the collectability of any judgment.

Further, the fact that the Company is located in Turkey illustrates the difficulty Plaintiffs would encounter in obtaining discovery and ultimately enforcing a judgment.

12.     For all of the reasons set forth herein, including the favorable result obtained and the significant litigation risks, we respectfully submit that the Settlement and Plan of Allocation are "fair, reasonable and adequate" in all respects and should be approved, and that Plaintiffs' Counsel's application for an award of attorneys' fees and an award of expenses, including awards to Plaintiffs, should be granted.

## II.     FACTUAL SUMMARY OF PLAINTIFFS' CLAIMS AGAINST DEFENDANTS

13.     Plaintiffs alleged that Defendants violated the Securities Act of 1933 by making materially false and misleading statements, as well as failing to disclose material information that was required to be disclosed, in the Company's Registration Statement for its IPO.

14.     Specifically, Plaintiffs alleged that Defendants failed to disclose material information regarding (i) Hepsiburada's substantial slowdown in growth in 2Q21, *i.e.*, before the IPO; (ii) the negative impact to Hepsiburada's business and operations as of the IPO caused by Turkey's easing of COVID-19 lockdown restrictions, particularly the weekday reopening of marketplaces and shopping malls in May 2021; and (iii) Hepsiburada's need to make significant investments and customer discounts prior to the IPO to offset these negative developments.

15.     Plaintiffs allege that as a direct and proximate cause of Defendants' alleged material misrepresentations and omissions, Plaintiffs and the Settlement Class suffered damages in connection with their purchases of publicly traded Hepsiburada American Depository Shares ("ADSs" or "shares") sold in the IPO.

III.    **PROCEDURAL HISTORY OF THE ACTION**

    A.    <u>**The State Court Action**</u>

16.    On September 28, 2021, plaintiff James Benson, represented by State Court Lead Counsel, filed a putative class action in the Supreme Court of the State of New York, County of New York, Commercial Division ("State Court") against Defendants alleging violations of Sections 11 and 15 of the Securities Act on behalf of all persons who purchased or otherwise acquired Hepsiburada ADSs pursuant and/or traceable to Hepsiburada's Registration Statement issued in connection with its IPO.  NYSCEF No. 1

17.    On December 10, 2021, the State Court Plaintiff filed an Amended Class Action Complaint for Violations of the Securities Act of 1933 (the "State Court Complaint"), asserting claims under Section 11 against all Defendants and under Section 15 claims against Hepsiburada, TurkCommerce, the Individual Defendants, and Cogency Global, Inc.  NYSCEF No. 16.

18.    State Court Lead Counsel moved for alternative service on the same day it filed the State Court Complaint because the Individual Defendants, who reside in Turkey, remained unserved.  NYSCEF No. 19.  State Court Lead Counsel argued that because Turkey is a signatory to the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, service is only permitted through Turkey's Central Authority.  *Id.*  Thus, State Court Lead Counsel asserted that direct service on the Individual Defendants would result in significant costs, complications, and delay, and argued that service should be accomplished instead via email service or via service on Hepsiburada and De Vries's U.S.-based counsel.  *Id.*  Briefing on this motion concluded on February 4, 2022.  *See* NYSCEF Nos. 36, 41.

19.    On February 8, 2022, Hepsiburada and the Underwriter Defendants moved to dismiss the State Court Complaint, and the Cogency Defendants joined their motion.  NYSCEF Nos. 73, 88.

20.     The motion to dismiss asserted that the State Court Complaint failed to identify a material false or misleading statement or omission, and that Hepsiburada was not required to supplement the Registration Statement with yet-to-be finalized information about a fiscal quarter that ended the day before the Offering.  Briefing on the motion to dismiss concluded on April 22, 2022.  *See* NYSCEF Nos. 96, 99-101.

**B.     The Federal Action**

21.     This securities class action commenced with the filing of a complaint on October 31, 2021. ECF No. 1.

**C.     IWA'sAppointment as Lead Plaintiff**

22.     On January 5, 2022, the Court entered a Case Management Order appointing IWA as Lead Plaintiff for the proposed class and approved IWA's selection of Kaplan Fox & Kilsheimer LLP as Lead Counsel pursuant to the PSLRA. ECF No. 36. The order also set the schedule for filing an amended class complaint, Defendants' answers or motions, if any, and Lead Plaintiff's response or further amendment of the pleadings.

**D.     Investigating, Drafting, and Filing the Federal Court Complaint**

23.     Lead Counsel's pre-filing investigation included, among other things, a detailed review and analysis of (i) documents filed publicly by the Company with the SEC; (ii) publicly available information and data, including press releases, news articles, and other public statements issued by or concerning Hepsiburada; (iii) research reports issued by financial analysts concerning the Company; and (iv) the applicable law governing the claims and potential defenses.

24.     Additionally, Lead Counsel's in-house investigator searched publicly-available databases and compiled information relevant to the potential claims.

25.     Lead Counsel also retained a consulting expert in the area of damages to assist in developing the claims that would ultimately be asserted against Defendants.

26.     The operative complaint in the Federal Court Action, the Amended Complaint for Violations of the Securities Act of 1933 (the "Federal Court Complaint"), was filed on February 4, 2022. ECF No. 37. The Federal Court Complaint alleged violations of the Securities Act under (i) Section 11 against all Defendants (except Tayfun Bayazit); (ii) Section 12(a)(2) against Hepsiburada, Emirdağ, Öz, TurkCommerce, and the Underwriter Defendants; and (iii) Section 15 against the Individual Defendants (except Tayfun Bayazit).

### E.     Defendants' Motion to Dismiss the Federal Court Complaint

27.     On April 15, 2022, Defendants moved to dismiss the Federal Court Complaint (ECF Nos. 47-49). In their motion to dismiss, Defendants asserted that the Registration Statement did not contain any false or misleading statements or omissions based on the facts that existed at the time, and that Defendants were under no duty to make additional disclosures about financial results during the Class Period. *Id.* Further, Defendants moved to stay the Federal Court Action in favor of the State Court Action pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ("*Colorado River*"). ECF Nos. 51-52. After researching and drafting arguments, Lead Plaintiff opposed Defendants' motion to dismiss on May 13, 2022 (ECF Nos. 51-52). On May 27, 2022, Defendants filed a reply in further support of their motion. ECF No. 53. On June 15, 2022, Defendant TurkCommerce filed a Notice of Joinder in Hepsiburada and the Underwriter Defendants' Motion to Dismiss the Amended Complaint or Alternatively to Stay the Action. ECF No. 57. Lead Plaintiff opposed the Notice of Joinder on June 29, 2022. ECF No. 58. On July 6, 2022, Defendant TurkCommerce filed a reply in further support of its Notice of Joinder. ECF Nos. 59-60. After engaging in mediation with Plaintiffs, Defendants withdrew their *Colorado River* argument.

F.      **Settlement Negotiations and Terms of the Settlement**

28.     In the late summer of 2022, Plaintiffs and Hepsiburada agreed to explore a global resolution of the Actions and engaged the services of Judge Layn R. Phillips (Ret.) of Phillips ADR, a nationally recognized mediator experienced in complex shareholder litigation. In connection with the mediation, Plaintiffs and Hepsiburada provided Judge Phillips and exchanged with each other confidential mediation statements setting forth their respective positions on the issues of liability, causation, and damages.  On September 2, 2022, Plaintiffs and Hepsiburada attended an in-person, all-day mediation in New York, NY with Judge Phillips.

29.     Plaintiffs and Hepsiburada did not reach a settlement at the mediation, but they and Judge Phillips continued to discuss a possible settlement of the Actions.  Ultimately, on December 5, 2022, Plaintiffs and Hepsiburada reached an agreement in principle to settle the Actions on behalf of all Parties for $13.9 million in cash, subject to execution of a Stipulation of Settlement and approval by the Federal Court following notice to the Settlement Class.

30.     While negotiations of the formal terms of the Settlement as contained in the draft Stipulation were underway, Plaintiffs' Counsel began to draft a motion for preliminary approval of the proposed settlement, the proposed notice to the Class, and the claim form.

31.     On March 22, 2023 Lead Plaintiff filed the motion for preliminary approval and all supporting papers, including the Stipulation. ECF Nos. 71-73.

32.     The Preliminary Approval Order was signed and entered on April 20, 2023 and the motion for final approval of the Settlement and the Settlement Fairness Hearing was set for August 1, 2023.  ECF No. 75.

**IV.    NOTICE OF THE SETTLEMENT AND SETTLEMENT FAIRNESS HEARING WAS PROVIDED TO SETTLEMENT CLASS MEMBERS**

33.    On May 11, 2023, pursuant to the Preliminary Approval Order, the Court-appointed claims administrator Gilardi & Co LLC ("Gilardi") began mailing the Notice of Proposed Settlement of Class Action ("Notice") and the Proof of Claim and Release form ("Claim Form" and, together with the Notice, the "Notice Packet") to potential Settlement Class Members and nominees. *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date (the "Mailing Declaration") ¶ 7, attached as Exhibit 1 hereto.

34.    On May 19, 2023, pursuant to the Preliminary Approval Order, Gilardi caused the Summary Notice to be published both in *The Wall Street Journal* and over the *Business Wire*. *Id.* at ¶ 12.

35.    On May 11, 2023, Gilardi activated a public access website for the Action, (http://www.hepsiburadasecuritieslitigation.com/), publishing significant documents online, including the Notice Packet, Stipulation, and Complaint. *Id.* at ¶ 14.

36.    As of June 27, 2023, a total of 13,598 Claim Packages have been mailed by Gilardi to potential Settlement Class Members and their nominees. *Id.* at ¶ 11.

37.    The Notice explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Settlement Class Members who submit a valid and timely Proof of Claim, pursuant to the proposed Plan of Allocation included in the Notice and subject to Court approval. *See generally*, Ex. 1. Further, the Notice informed Settlement Class Members of the nature of the Actions, the reasons for settling the Actions, and the maximum attorneys' fees and expenses that would be sought. *Id.* at Ex. A. The Notice further details: (i) the procedure and deadline for objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees

and expenses; (ii) the procedure and deadline for requesting exclusion from the Settlement Class; and (iii) the date, time, and location of the Settlement Fairness Hearing. *Id.*

38.     Pursuant to the Preliminary Approval Order, Settlement Class Members who wish to opt out of the Settlement Class must do so no later than July 10, 2023. Ex. 1 at ¶. 15.  Any objections to the to the Settlement, the Plan of Allocation, or the Request for Attorneys' Fees and Expenses must do so no later than July 18, 2023.  *Id.* at Exhibit A, page 3.

39.     To date, neither Lead Counsel nor Gilardi have received any requests for exclusion. Ex. 1 at ¶ 16. Nor have any objections been filed or received.  If any objections are received, Plaintiffs' Counsel will respond them in Plaintiffs' reply brief, which is due to be filed on July 25, 2023.

## V.     THE SETTLEMENT IS A FAVORABLE RESULT FOR THE SETTLEMENT CLASS IN LIGHT OF THE RISKS OF CONTINUING LITIGATION

40.     Based upon Plaintiffs' Counsel's investigation, coupled with our review and understanding of the claims alleged in the Actions, we believe Plaintiffs' claims have merit. While we believe Plaintiffs would have prevailed, Plaintiffs and Plaintiffs' Counsel are cognizant of the risks of continued prosecution against Defendants, and Defendants continue to deny liability. All of those risks were carefully considered in evaluating whether the proposed Settlement is fair, reasonable, and adequate, and in the best interests of Settlement Class Members.

41.     Among the litigation risks informing Plaintiffs' decision to settle the Action were the risks of obtaining an unfavorable ruling on the pending motions to dismiss, challenges in obtaining class certification, and the difficulties of proving the Sections 11, 12(a)(2) and 15 claims against formidable defenses brought by Defendants. The risks of prevailing on summary judgment and ultimately proving these claims at trial (and collecting any judgment on behalf of the

Settlement Class) were considered in light of Plaintiffs' Counsel's experience, understanding of the relevant case law, and understanding of the factual record.

42.     Here, Plaintiffs faced a number of risks related to their claims, including the risks that Plaintiffs (i) would not be able to prove liability, *i.e.*, that Defendants made material misstatements and omissions in the IPO's Registration statement, and that Plaintiffs and the Settlement Class were damaged thereby; (ii) would face difficulties obtaining discovery and collecting settlement funds because Defendants reside in Turkey; and (iii) would, even if successful at trial, face numerous appeals. These risks are discussed further below.

A.     **Risks Related to Proving Defendants' Liability**

43.     Defendants' motion to dismiss briefing (and their arguments during the mediation) provided Plaintiffs with a preview of the arguments against liability and affirmative defenses that Defendants would undoubtedly have raised again at class certification, summary judgment and trial.

44.     Defendants strongly disputed that they made any material misrepresentations or omissions, arguing that the Registration Statement did not contain any false or misleading statements based on the facts that existed at the time, and that Defendants were under no duty to make additional disclosures about financial results during the Settlement Class Period.

45.     Specifically, Defendants asserted that a number of the challenged statements in the Registration Statement were opinion statements, puffery, or both, which Defendants asserted were non-actionable. Defendants also contested Plaintiffs' omissions theory, asserting that the Complaint "contains no allegations that Hepsiburada's frequency of orders or active customer base were any different from what the Company disclosed, or that consumers in the Turkish market were no longer shopping online." ECF No. 48 at 10.

46.     Further, Defendants asserted that no rule or regulation required the Company to report Q2 2021 results in the Registration Statement and that the Registration Statement contained ample warnings and disclosures that Hepsiburada's historical results for any prior period were not indicative of results expected in any future period.

47.     Last, Defendants argued that because the shifting state of COVID-19 restrictions in Turkey was public information, Hepsiburada had no duty to speculate about the potential impact of changes to COVID-19 policies that came into effect *after* the Registration Statement became effective.

48.     While Plaintiffs' Counsel are confident in their ability to refute these arguments, the outcome of these issues is far from certain. Such risks, when balanced against the immediate benefits of this Settlement, favor a finding that the Settlement is reasonable.

### B.     Risks Related to a Post-Judgment Appeal by Defendants

49.     Even if Plaintiffs prevailed at summary judgment and at trial, Defendants would likely have appealed the judgment—leading to many additional months, if not years, of further litigation. On appeal, Defendants would have renewed their numerous arguments as to why Plaintiffs had failed to establish liability and damages, thereby exposing Plaintiffs to the risk of having any favorable judgment reversed or reduced below the Settlement value.

50.     In summary, there are numerous risks to litigating the Actions through the motions to dismiss, class certification, summary judgment, trial, and appeal. Settlement now avoids these risks and provides a substantial benefit to the Settlement Class without further delay.

## VI.     THE PLAN OF ALLOCATION

51.     Pursuant to the Preliminary Approval Order (ECF No. 75 at ¶14), and as set forth in the Notice, all Settlement Class Members who wish to be eligible to participate in the distribution of the Net Settlement Fund (*i.e.*, the Settlement Fund less (i) any Taxes and Tax Expenses,

(ii) any Notice and Administration Costs, (iii) any Litigation Expenses awarded by the Court; and (iv) any attorneys' fees awarded by the Court) must submit a valid Proof of Claim and all required information to the Court-approved Claims Administrator, Gilardi, postmarked on or received no later than September 27, 2023.

52.     If approved by the Court, the proposed Plan of Allocation described in the Notice and posted on the settlement website will govern how the Net Settlement Fund will be distributed among Authorized Claimants.[4]

53.     The Plan is designed to equitably distribute the Settlement proceeds among Settlement Class Members who were allegedly injured by Defendants' alleged misrepresentations and who submit valid Claim Forms that are approved for payment. The Plan provides for the calculation of a "Recognized Loss" for each properly documented purchase or acquisition of Hepsiburada ADSs during the Settlement Class Period. A claimant's total Recognized Loss will depend on, among other things, when their shares were purchased and/or sold during the Settlement Class Period in relation to the disclosure dates alleged in the Actions, whether and how long the shares were held or sold, and the value of the shares when they were held or sold.

54.     The Recognized Loss formulas are tied to theories of liability and damages. In developing the Plan of Allocation, Plaintiffs' damages expert considered, consistent with Plaintiffs' damages theory under the Securities Act, the amount of artificial inflation allegedly present in Hepsiburada ADSs throughout the Settlement Class Period that was purportedly caused by the alleged misstatements and/or omissions. An inflation table was created and is included in the Plan of Allocation and will be utilized by the Claims Administrator in calculating Recognized

---

[4]     As defined in Paragraph 1(c) of the Stipulation, an "Authorized Claimant" means a Settlement Class Member who or which submits a Claim Form to the Claims Administrator that is approved by the Court for payment from the Net Settlement Fund.

Loss amounts for claimants. The Claims Administrator will calculate claimants' Recognized Losses using the transactional information provided by claimants in their claim forms. The Claims Administrator will then determine each eligible claimant's pro rata share of the Net Settlement Fund based upon each claimant's total "Recognized Claim" compared to the aggregate Recognized Claims of all eligible claimants.

55.     In sum, the proposed Plan of Allocation, developed in consultation with Plaintiffs' consulting expert, was designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants. No objections to the Plan of Allocation have been filed to date. Accordingly, Plaintiffs' Counsel respectfully submits that the proposed Plan of Allocation is fair and reasonable and should be approved.

## VII.    PLAINTIFFS' COMPLIANCE WITH THE PRELIMINARY APPROVAL ORDER

56.     The Preliminary Approval Order directed that Notice be disseminated to the Settlement Class, set the deadline for Settlement Class Members to submit requests for exclusion from the Settlement Class or objections to the Settlement, the Plan of Allocation and/or the Fee and Expense Application by July 18, 2023, and set a Settlement Fairness Hearing date of August 1, 2023.

57.     The Preliminary Approval Order authorized Plaintiffs' Counsel to retain Gilardi as the Claims Administrator in the Actions and ordered the mailing of the Court-approved Notice Packet to potential Settlement Class Members within 21 calendar days after the entry of the Preliminary Approval Order (*i.e.*, by May 11, 2023, the "Notice Date"), posting of the Notice, Claim Form, and Summary Notice on the website designated for the Actions, http://www.hepsiburadasecuritieslitigation.com/, on or before the Notice Date, and publishing of the Summary Notice once in the national edition of *The Wall Street Journal* and over the *Business Wire* no later than ten (10) calendar days after the Notice Date (*i.e.*, by May 21, 2023).

58.     A description of the terms of the Settlement and the proposed Plan of Allocation are set forth in the Notice, which also provides potential Settlement Class Members with, among other things, a description of their right to opt out of the Settlement Class or object to any aspect of the Settlement, the Plan of Allocation, and/or Plaintiffs' Counsel's request for an award of attorneys' fees and an award of Litigation Expenses, and the manner and deadline for submitting a Proof of Claim in order to be eligible to receive a payment from the Settlement.  The Notice informs Settlement Class Members of Plaintiffs' Counsel's intention to apply for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund (which amount includes interest),  for payment of Litigation Expenses paid or incurred in connection with the prosecution and resolution of the Actions in an amount not to exceed $150,000.00, and for payments to the Plaintiffs pursuant to 15 U.S.C. §77z-1(a)(4) in connection with their representation of the Settlement Class.

59.     As set forth in the Murray Declaration, on May 11, 2023, Gilardi disseminated 4,679 copies of the Claim Packages to potential Settlement Class Members and nominees by first-class mail. Ex. 1 ¶ 5. Gilardi also electronically delivered Claim Packages to 390 registered electronic filers.  *Id*. at ¶ 6.  As of June 27, 2023, a total of 13,598 Claim Packages have been mailed to potential Settlement Class Members and their nominees. *Id*. ¶ 11.

60.     On May 19, 2023, in advance of the deadline set by the Preliminary Approval Order, Gilardi caused the Summary Notice to be published in *The Wall Street Journal* and to be transmitted once over the *Business Wire*. *Id.* ¶ 12.

61.     The Court-ordered deadline for Settlement Class Members to file objections to the Settlement, the Plan of Allocation and/or the Fee and Expense Application is July 18, 2023.  To

date, no objections have been received. The deadline to request exclusion from the Class is July 10, 2023. To date, Gilardi has received no requests for exclusion from the Class. *Id*. ¶¶ 15-16.

## VIII. PLAINTIFFS' COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

62.     Concurrent with seeking final approval of the Settlement, Plaintiffs' Counsel is seeking an award of attorneys' fees of 30% of the Settlement Fund, plus interest. Further, Plaintiffs' Counsel is seeking payment for litigation expenses, which total $62,816.47, plus interest.

63.     The legal authorities supporting the requested fees and expenses are set forth in the accompanying Fee Memorandum. The primary factual bases for the requested fees and expenses are summarized below.

### A.     <u>The Requested Fee is Fair and Reasonable</u>

64.     Based on the efforts expended on behalf of the Settlement Class, the favorable result achieved, the risks of the litigation and the contingent nature of their representation, Plaintiffs' Counsel submit that their request for an award of attorneys' fees in the amount of 30% of the Settlement Fund is justified and should be approved.

65.     As set forth in the accompanying Fee Memorandum, the requested fee is reasonable under either the "percentage of the fund" or the "lodestar cross-check" method. Plaintiffs' Counsel's request for a fee award of 30% of the Settlement Fund is well within the range of fees awarded in similar cases, as set forth in the Fee Memorandum.

66.     Likewise, the requested fee is reasonable based on a lodestar cross-check. Since the inception of the Actions, Plaintiffs' Counsel have dedicated over 2,000 hours to the investigation, prosecution, and resolution of the claims against Defendants, resulting in a total lodestar of $1,500,763.50. *See* Exs. 2-4, (the Declarations  of Donald R Hall, Micheal G. Capeci, Michael I.

Fistel, Jr. annexed hereto as Exhibits 2-4in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses). Applying a lodestar cross-check, the requested fee of 30% of the $13.9 million Settlement, yields a modest multiplier of approximately 2.78 on the value of the time expended by Plaintiffs' Counsel. As described in the Fee Memorandum, the attorneys' fees sought here are consistent with fees awarded in this jurisdiction and are reasonable in light of the risks undertaken by Plaintiffs' Counsel and the result obtained.

67.     True and correct copies of Plaintiffs' Counsel's time and lodestar reports are attached as Exhibits 2, 3, and 4. The time and lodestar reports were prepared from contemporaneous time records regularly prepared and maintained by Plaintiffs' Counsel. Exs. 2-4. The hourly rates for the attorneys and professional support staff included in the schedule are commensurate with the hourly rates submitted to Courts in connection with fee applications in other complex litigations.

**B.     The Considerable Time and Labor Expended by Lead Counsel**

68.     Plaintiffs' Counsel undertook time-consuming and risky work to prosecute the claims against Defendants to achieve this Settlement. As detailed above, the Actions were settled only after Plaintiffs' Counsel conducted an extensive investigation of publicly available documents and SEC filings regarding Hepsiburada, thoroughly researched the facts and applicable law related to the claims and defenses, opposed Defendants' motion to dismiss, prepared a mediation statement, attended a mediation session, and engaged in additional negotiations over the course of three months.

**C.     The Risks of Litigation**

69.     The Actions were undertaken by Plaintiffs' Counsel on a wholly contingent basis. From the outset, Plaintiffs' Counsel understood that they were embarking on a complex,

expensive, and lengthy litigation with no guarantee of ever being compensated for the investment of time and money the Actions would require. In undertaking that responsibility, Plaintiffs' Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Actions and that funds were available to compensate staff and pay the considerable expenses that cases such as this entail. Indeed, because of the nature of a contingent practice where cases are predominantly complex and last several years, not only do contingent-litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. With a lag time of many years for these cases to typically conclude, the financial burden on contingent counsel is far greater than that on a firm which is paid on an ongoing basis. Indeed, Plaintiffs' Counsel have received no compensation during the course of the Actions and have advanced or incurred $62,816.47 in expenses in prosecuting the Actions for the benefit of the Settlement Class.

70.     Plaintiffs' Counsel also bore the risk that no recovery would be achieved.  There have been many hard-fought lawsuits where, because of discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by plaintiffs' counsel produced no recovery, and hence no fee.

71.     In circumstances such as these, and in consideration of Plaintiffs' Counsel's hard work and the favorable result achieved, the requested fee of 30% of the Settlement Fund and payment of $62,816.47 in litigation expenses, as detailed below, are reasonable and should be approved.

**D.     Quality of Representation**

72.     Plaintiffs' Counsel are highly experienced in prosecuting complex litigation, particularly securities class actions, and worked diligently and efficiently in prosecuting the

Actions. As demonstrated by Plaintiffs' Counsel's firm resumes, attached as Exhibits 2-4, Plaintiffs' Counsel are among the most experienced and skilled firms in the securities litigation field, and have long and successful track records in securities cases throughout the country.

  **E.**  **Awards in Similar Cases**

  73.  The Settlement of $13.9 million resulted from Plaintiffs' Counsel's litigation efforts and contentious settlement negotiations, as detailed herein. The Settlement is a favorable recovery to the Settlement Class, especially in light of the difficulty of obtaining discovery and collecting settlement funds from a foreign Defendant.

  74.  As detailed in the Fee Memorandum, the requested fee award is also consistent with the attorney's fees awarded for other class action settlements that were comparable in size in this Circuit.

  75.  Further, as a result of this Settlement, Settlement Class Members potentially will be eligible to benefit and receive some compensation for their losses and avoid the substantial risk of recovering nothing in the absence of this Settlement.

  **F.**  **The Reaction of the Settlement Class**

  76.  In accordance with the Preliminary Approval Order, a total of 13,598 Notice Packets have been mailed to date to potential Settlement Class Members and nominees (Ex. 1 ¶ 11) advising them that Plaintiffs' Counsel would seek attorneys' fees in an amount not to exceed 30% of the Settlement Fund and payment of expenses paid or incurred in connection with the prosecution and resolution of the Actions in an amount not to exceed $150,000 (Ex. 1). On May 11, 2023, all of the important settlement-related documents in the Actions including, among others, the Stipulation, Preliminary Approval Order, Notice, Claim Form, and Summary Notice, were posted on the website designated for this Action, http://www.hepsiburadasecuritieslitigation.com.

Ex. 1 ¶ 14. Additionally, the Summary Notice was published on May 19, 2023 in the national edition of *Wall Street Journal* and over the *Business Wire*. *Id.* ¶ 12.  As noted above, the deadline set by the Court for Settlement Class Members to object to the attorneys' fees and expenses has not yet passed; however, to date, Plaintiffs' Counsel are not aware of any objections. If any objections are timely received, Plaintiffs' Counsel will address them in their reply papers to be filed with the Court on July 25, 2023.

### G.   The Litigation Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained

77.    Plaintiffs' Counsel seek an award of $62,816.47 for expenses that were reasonable and necessary, and incurred to achieve the benefits obtained on behalf of the Settlement Class.

78.    The expenses incurred relating to this case are reflected in the books and records of Plaintiffs' Counsel, which are maintained in the ordinary course of business. The books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. *See* Exs. 2-4.  These expenses were reasonable and necessary to the prosecution and resolution of the Actions and are the type of expenses that counsel typically incur in complex litigation, and for which counsel are typically awarded when the litigation gives rise to a common fund.

79.    ***Expert Consultant:*** Plaintiffs' Counsel retained an economics and damages expert to analyze and advise on issues of causation and damages. This expert was essential to the overall prosecution and resolution of the Actions and worked with Plaintiffs' Counsel to assist in: (i) developing the claims asserted; (ii) assessing the strengths and weaknesses of Plaintiffs' claims and Defendants' affirmative defense of negative causation, and class-wide damages for settlement negotiations; and (iii) developing the Plan of Allocation.

80. **_Mediation:_** Plaintiffs' Counsel were responsible for one-half of Judge Phillips' mediation fees, which included his review of the Parties' mediation briefs, one mediation session, and related telephonic and written communications following the mediation through the Parties' agreement on the Settlement.

81. **_Computerized Legal Research:_** Plaintiffs' Counsel utilized digital research services in connection with their legal research conducted over the course of the approximately two years the Actions have been pending. Legal research expenses are based upon the amounts billed by the providers.

82. The remaining expenses relate primarily to filing fees, transcript fees, and postage.

83. The Notice advises potential Settlement Class Members that Plaintiffs' Counsel would seeking an award of expenses not to exceed $150,000.00. As noted above, there have been no objections to the request for payment of expenses as stated in the Notice. In view of the complex nature of the Actions, the expenses incurred were reasonable and necessary to pursue the interests of the Settlement Class. Accordingly, the expenses should be paid in full.

## IX.    PLAINTIFFS' REQUEST FOR AN AWARD OF COSTS AND EXPENSES

84. The Notice informed Settlement Class Members that Plaintiffs may apply to the Court for an award of their reasonable costs and expenses directly relating to their representation of the Settlement Class. Ex. 1.

85. Plaintiffs have devoted a substantial amount of time to the Actions. Plaintiffs each spent time reviewing the pleadings and other key litigation materials, communicating and corresponding with relevant Plaintiffs' Counsel, and evaluating the Settlement. *See generally* Exs. 5-6.

86. As set forth in the declaration of Brandon Wiebe, Lead Plaintiff  IWA Forrest requests an award of CDN$2,595.88 for time spent litigating this matter on behalf of itself and the

Settlement Class, as permitted under the PSLRA. Ex. 5.  Likewise, State Court Plaintiff requests an award of $1,500 for his time litigating this matter on behalf of himself and the Settlement Class. Ex. 6. No objections to these requests have been filed.

## X.     CONCLUSION

87.     For all the reasons detailed above, Plaintiffs and Plaintiffs' Counsel respectfully request that that the Court approve the Stipulation, the Plan of Allocation, and Plaintiffs' Counsel's request for attorneys' fees and litigation expenses, including awards to Plaintiffs pursuant to 15 U.S.C. §77z-1(a)(4).

We declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed June 30, 2023 in New York, NY          /s/  Frederic S. Fox
                                                 Frederic S. Fox

Executed June 30, 2023 in Melville, NY           /s/  Michael G. Capeci
                                                 Michael G. Capeci