N81ZZGOLC-NK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

GOLDEN HORN ASSET AND
MANAGEMENT, LTD.,

                 Plaintiff,

          v.                        21-cv-08634-PKC

D-MARKET ELECTRONIK HIZMETLER
VE TICARET ANONIM IRKETI,
et al.,

                 Defendants.        Fairness Hearing
------------------------------x
                                    New York, N.Y.
                                    August 1, 2023
                                    2:00 p.m.

Before:

                    HON. P. KEVIN CASTEL,

                                    District Judge

                         APPEARANCES

KAPLAN FOX & KILSHEIMER, LLP
     Attorneys for Plaintiff
BY:  DONALD HALL, ESQ.
BY:  FREDERIC S. FOX, ESQ.


LATHAM & WATKINS, LLP
     Attorneys for Defendants
BY:  KEVIN S. McDONOUGH, ESQ.

SHEARMAN & STERLING, LLP
     Attorneys for Underwriter MORGAN STANLEY & CO. LLC, et al.
BY:  BENJAMIN KLEBANOFF, ESQ.

N81ZZGOLC-NK

(Case called)

THE DEPUTY CLERK:  For plaintiff?

MR. HALL:  Good afternoon, your Honor.

Donald Hall from the law firm of Kaplan Fox & Kilsheimer, LLP, and with me today is my partner, Frederic Fox.

MR. FOX:  Good afternoon, your Honor.

THE COURT:  All right.  Good afternoon to you both.

And for the defendant?

MR. MCDONOUGH:  Good afternoon, your Honor.

Kevin McDonough of Latham & Watkins, on behalf of the issuer Defendant D-MARKET and Defendant TurkCommerce.

We're joined today by three guests from Turkey, your Honor, and I'd like to introduce them with your Honor's permission.

THE COURT:  Wonderful.

MR. MCDONOUGH:  We have Mr. Tolga Babali from Hepsiburada, along with Gunes Akman, who is in-house legal counsel to the company.  And they are joined by Mr. Tuvan Yalim, who is outside legal counsel in Turkey.

THE COURT:  All right.  Welcome to you all.

MR. MCDONOUGH:  Thank you, your Honor.

THE COURT:  And also appearing?

MR. KLEBANOFF:  Good afternoon, your Honor.

Benjamin Klebanoff, from Shearman & Sterling on behalf of the underwriters.

THE COURT:  All right.  Good afternoon to you, sir.

So the first question I have is with regard to the state court action.  So I have subject matter jurisdiction over the action before me, and a consequence of final approval, if final approval is granted, I have the authority to preclude members of the class or any other person from commencing an identical action, one that is resolved by the action before me elsewhere.  But, analytically, that is different than approving a settlement of an action that is not before me.

Is what I am doing here today nothing more than settling the action before me or considering a settlement under Rule 23 of an action before me?

MR. HALL:  I think your Honor is correct.  Before you is the settlement from the federal court action.  The state court action was -- which has the same claims and an overlap of class members, will then, pursuant to the parties in that action, they will voluntarily dismiss that case once your Honor resolves the litigation here in federal court.

THE COURT:  All right.  Excellent.

Now, is there any update on the opt-outs, objectors, exclusions?

MR. HALL:  To date, your Honor, there have been no exclusions received.  They weren't -- they were not timely received, which expired a couple of weeks ago.  And we checked this morning.  There has been none received after the

deadlines.  The same for objections.  And I don't believe there are any objectors here today.

THE COURT:  If there are any objectors, please identify yourself.

No one is identifying himself as an objector.

Go ahead.

MR. HALL:  And we didn't receive any objections, and I don't believe any were filed with the Court.

THE COURT:  All right.  Thank you.  Thank you.

Now, this is your opportunity, if there is anything you want to add to your papers or highlight in your papers, from either side, I'll give you the opportunity to do so.  If you want to simply rely on your papers, that's fine as well.

MR. HALL:  We believe that our papers set forth the basis for final approval of the settlement as fair, adequate, and reasonable, but we're here to answer any questions your Honor may have.

THE COURT:  Thank you.

And the same question for each group of defendants.

MR. MCDONOUGH:  Your Honor, on behalf of Hepsiburada and TurkCommerce, we believe the proposed settlement is fair, adequate, and reasonable, and we have nothing to add to the submissions before your Honor.

THE COURT:  Thank you.

MR. KLEBANOFF:  Your Honor, the underwriters, the

defendants, do not have anything to add.

THE COURT:  Thank you.

These are the Court's findings of fact and conclusions of law on the application for final approval of the settlement of this action:  Lead plaintiff IWA-Forest Industry Pension Plan, which I'll refer to as IWA, moves for final approval of a class action settlement with the consideration of $13,900,000 as the settlement proceeds.  There is a parallel state court action pending in Supreme Court, New York County, Benson v. D-MARKET, et al.  The settlement of the action before me will, if it's approved, foreclose the action in state court by operation of law.

Lead counsel in the action before me is the law firm of Kaplan Fox, and I guess the state court plaintiff is represented by Robbins Geller.

Is that correct?

MR. HALL:  Yes, your Honor.

THE COURT:  All right.  So counsel in this action is Kaplan Fox & Kilsheimer.  Plaintiff's counsel seeks an attorney fee award of 30 percent of the settlement amount and they also seek reimbursement of combined total expenses of $62,000 and change.  And the lead plaintiff, IWA, seeks reimbursement of $1,958.78, which reflects 24 hours of attorney time spent on the prosecution of this action.

Plaintiff in this action brings claims under the '33

Act on behalf of persons or entities who purchased or otherwise acquired Hepsiburada American Depository Shares, ADSs. They assert that the defendant made materially false and misleading statements as well as failed to disclose material information that was required to be disclosed in the company's registration statement for its initial public offering. Specifically, plaintiff alleges that defendants failed to disclose material information regarding Hepsiburada's substantial slowdown in growth in Q2 2021, which was before the IPO, the negative impact to Hepsiburada's business and operations as of the IPO caused by Turkey's easing of COVID-19 lockdown restrictions, particularly the weekday reopening of marketplaces and shopping malls in 2021, and Hepsiburada's need to make significant investments and customer discounts prior to the IPO to offset these negative developments.

Defendants in this action are D-MARKET Elektronik Hizmetler ve Ticaret Anonim Irketi, D-MARKET Electronik Services and Trading, d/b/a as Hepsiburada, the underwriters for the IPO, which include Morgan Stanley, J.P. Morgan Securities, Goldman Sachs, Bank of America Securities, UBS Securities, and a number of individual defendants, as well as Cogency Global Inc. and TurkCommerce B.V.

A declaration submitted on behalf of the claims administrator dated July 24, 2023 states that as of that date, 14,229 claims packages had been mailed to potential class

N81ZZGOLC-NK

members.  The claims administrator has received no requests for exclusion.  No objections have been filed.

Now, for a class to be certified, even for settlement purposes, it must satisfy the requirements of Rule 23(a), and the settlement class here is defined as all persons who purchased or otherwise acquired Hepsiburada ADSs during the period from July 1, 2021 through November 23, 2021.  Certain persons are excluded, such as Hepsiburada's officers and directors and their immediate family.  I conclude that the proposed class satisfies the requirements, the initial requirements, of Rule 23(a).

On numerosity, while the exact number of class members is unknown, the purchasers are likely in the thousands, and that's reflected in the number of claim packages that have been mailed out.  The Court finds the class is so numerous that joinder of all members is impracticable.

The proposed class satisfies the requirement that its members have common questions of law in fact.  All class members purchased acquired ADSs at prices that were alleged to be artificially inflated and were injured when the value of those ADSs declined after the market learned the truth about Hepsiburada's Q2 2021 slowdown.  Common questions include whether the defendants violated the securities laws and any resulting injury to plaintiffs.  So the class satisfies Rule 23(a)(2).

The claims of lead plaintiff IWA are typical of the claims that would be raised by members of the class.  IWA alleged injury as a result of material misstatements and omissions about the Q2 2021 slowdown.  So the typicality requirement is satisfied.

Here the Court concludes that the lead plaintiff has fairly and adequately protected the interests of the class as required by Rule 23(a)(4).  Brandon Wiebe, general counsel of IWA, has filed a declaration stating that its attorneys have actively participated in the prosecution of the case, including communicating with their outside lead counsel for the class regarding the status of the case, counsel's strategy for its prosecution, and the settlement discussion, and additionally IWA's in-house attorneys have reviewed pleadings and other material documents.  As an additional investor that purchased 77,530 ADSs, IWA has a strong incentive to maximize recovery and to effectively prosecute this action.

I also conclude that in addition to satisfying Rule 23(a), this proposed class satisfies Rule 23(b)(3), which "permits certification if 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class

N81ZZGOLC-NK

member's case as a genuine controversy can be achieved through generalized proof.  And if these particular issues are more substantial than the issues subject only to individualized proof.

Here the Court concludes that Rule 23(b)(3) is satisfied because resolution of plaintiffs' claims can be satisfied with generalized proof, and these generalized issues are more substantial than any individualized proof.

And this is not just the nature of the alleged misrepresentation but also proving loss causation of shareholders and these issues are more substantial than any individualized group.

So the settlement class is certified.

Rule 23(e) provides that "[t]he claims. . . of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." And it requires a Court to make certain findings in order for a settlement to be binding on class members.

And Rule 23(e)(2), as amended back in 2018, has set forth certain required considerations, which I will address, and then there are additional considerations that are relevant in this circuit that I will also address.

So has the class representative and class counsel adequately represented the class?  The initial complaint was filed by Golden Horn Asset Management on October 21, 2021, and

then in December of 2021, IWA moved for appointment as Lead Plaintiff, and I granted that motion on January 5 of 2022.

IWA filed an amended complaint on February 4, 2022. After pre-motion letters, Hepsiburada and the underwriter defendants filed a motion to dismiss. The motion was fully briefed and pending at the time of settlement. Defendant TurkCommerce filed a Notice of Joinder in the motion to dismiss, which IWA opposed. At the time of the settlement, a motion to dismiss, I understand, was also pending in the state court action.

Lead counsel had conducted an investigation before filing the complaint in this action, including reviewing and analyzing publicly available information, using an in-house investigator and retaining a damages expert.

The parties engaged in mediation before retired Judge Layne Phillips. The mediation session was held in September 2022. While it did not result in an agreement, the parties continued negotiations with the assistance of Judge Phillips and arrived at a proposed settlement on or about December 5, 2022.

The Court concludes that lead plaintiff and lead counsel have adequately represented the class. This weighs in favor of settlement.

Settlement was negotiated at arm's length. I just recounted what transpired before the retaining private

mediator. So it was an arm's length negotiation. And that counts in favor of approval.

I've examined whether the relief provided to the class is adequate, and in doing so, I've considered the costs, risks, and delay of trial and appeal, which are significant, and there would have been many intervening steps required before the plaintiff could successfully litigate this action.

Securities class actions tend to be complex, and plaintiffs' proof of damages and loss causation likely would have relied heavily on expert opinion. Assuming the plaintiff survived the motion to dismiss, it would then need to complete discovery in both the United States and Turkey, and then litigate the case through summary judgment, a jury trial, a jury verdict, and any posttrial proceedings. This would have been costly and protracted and plaintiffs would have had to overcome procedural and evidentiary hurdles. Of course, then there would be the prospects of an appeal, adding more uncertainty.

I've looked at the plan of allocation, and it appears that the proceeds of settlement will be distributed pro rata to class members who submit eligible claim forms to the claims administrator.

And the damages paid to each class member are determined in part by the timing of the purchase of the ADS, and these values are set forth in a table included in the

notice to class members.  Class members are eligible for distribution only if they suffered a net overall loss in the class period.

The Court finds that the plan of allocation is designed to fairly allocate settlement proceeds to class members.  It's consistent with methods used in many securities class actions.

Another consideration is the terms of the proposed attorneys' fees, including the timing of payment, and the proposal is 30% of the settlement fund in the context of a matter in which the lodestar is about 1.5 million, and, therefore, the award reflects a multiplier of 2.78 of the lodestar.

The Court will address whether or not to approve the attorneys' fee application separately.

The parties seeking approval must file a statement identifying any agreement made in connection with the settlement and the parties identify a standard supplemental agreement giving defendants the opportunity to opt out if certain percentage of class members seek exclusion from the class.  That provision is not triggered and plays little role here.

Lead plaintiff states that there are no additional undisclosed agreements.

Can you confirm that in open court?

MR. HALL:  I can confirm that to your Honor.

THE COURT:  All right.  And that's true as to any form of sharing of fees or any such --

MR. HALL:  Correct, your Honor.

THE COURT:  -- matters?

MR. HALL:  The firms that would share in any fee are put in the declarations that were submitted to this Court and nothing beyond that.

THE COURT:  Yes.  And any payment to any class member is as approved in an order of this Court; is that correct?

MR. HALL:  Correct, your Honor.

THE COURT:  Including the lead plaintiff?

MR. HALL:  Correct, your Honor.

THE COURT:  Okay.  All right.  I've considered whether the settlement treats class members equitably relative to each other.  It's a pro rata plan and it does treat them equitably relative to each other.

Now, looking at the Second Circuit's *Grinnell* factors, the reaction of the class has been favorable.  There have been no objections and no opt-outs.

The size of the settlement, I've considered in relation to the possible recovery, and there's a wide range of possible recoveries that could occur in this case, and even if a judgment were obtained, there might be difficulties in enforcing that judgment in Turkey where Hepsiburada is based

and where most of its assets are.

I've considered the risk of maintaining the class action through trial.  I've already noted the significant litigation hurdles remaining.  Yes, it's possible that defendants could withstand a possibly greater judgment, but that's a typical circumstance in class action settlements, and this factor is afforded little weight in reviewing the settlement.

I've considered the notice given to class members, which must be, "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through a reasonable effort," and Ross Murray, an officer of the claims administrator, Gilardi, has submitted a declaration that describes the dissemination of notice to the class.  As mentioned, Gilardi has sent a total of 14,229 claim packages to potential class members.

And also they published a summary notice in the Wall Street Journal and caused it to be transmitted over the Business Wire.

And Gilardi has maintained a case-specific telephone help line and a dedicated settlement website that includes essential notices and litigation documents and permits class members to submit proofs of claim.

So having reviewed the factors in 23(e)(2) and the additional factors in *Grinnell*, the Court concludes that the

proposed settlement is fair, reasonable, and adequate, and it is approved by the Court.

So turning to the fee application, in reviewing a fee application in this context, the "court is 'to act as a fiduciary who must serve as a guardian of the rights of absent class members." The award "must reflect 'the actual effort made by the attorney to benefit the class...."  And there's much guidance given by the Second Circuit in the *Goldberger* decision issued the year 2000.  And I'm required to consider in setting a percentage of the fee, a percentage of the award or recovery method, "the time and labor expended by counsel; the magnitude and complexities of the litigation; the risk of the litigation...; the quality of representation; the requested fee in relation to the settlement;" and any relevant, "public policy considerations."

"The lodestar remains useful as a baseline check even if the percentage method is used." It's a useful cross-check.

So Kaplan Fox & Kilsheimer expended 974.7 hours of attorney and professional time on the case.  It has a lodestar of $721,161.50.

There is an action, as noted, pending in state court, and that time and expenditure resources assisted in bringing this case to a conclusion, and Kaplan Fox seeks approval of the attorney time spent by the attorneys at Robbins Geller and Johnson Fistel in the state court action.

Is that correct, sir?

MR. HALL:  That's correct, your Honor.

THE COURT:  All right.  And Robbins Geller spent 668 hours of professional time, and Johnson Fistel spent about 360 hours of professional time.  In total, plaintiffs' counsel in the two actions spent 2,003 hours with a lodestar of a little over $1.5 million.  And there's a lodestar multiplier here which I referenced previously of about 2.7 in this case.

I've considered the magnitude and complexities and risks of the litigation, which I've already reviewed.  That weighs in favor of the fee award.  I've considered the quality of the representation, which has been quite good, and that counsels in favor of the settlement.

In terms of the fee in relation to the settlement, counsel again seeks 30 percent, and they cite to several actions in which courts have awarded up to 33 percent of the total recovery.  IWA supports the fee request, and that's a valid consideration for this Court to consider.

In reviewing this case, the lodestar, the lodestar multiple, the result achieved, which is quite excellent, the Court concludes that an award of 25 percent of the total settlement fund or $3,475,000 plus expenses will appropriately compensate plaintiffs for their work in prosecuting this action.  This also satisfies the public policy considerations in rewarding attorneys that bring successful securities actions

and it fosters enforcement of the federal securities laws.

As noted, there's no objections from the class.

One moment, please.

So I'm approving lodestar multiple that's in excess of twice the lodestar, a little bit more than twice the lodestar.

Plaintiffs' counsel also seek reimbursement of $62,816.47 in expenses. About two-thirds represents the plaintiffs' half of the mediator's fee. I conclude the expenses are reasonable. They're approved.

Lead plaintiff IWA seeks reimbursement of $1,958.78 and which reflects 24 hours of attorney time spent by IWA counsel, Mr. Wiebe and his predecessor, who spent at least 24 hours on the prosecution of the litigation. And this was time that was taken away from their conducting IWA's usual business. I conclude that amount is reasonable.

In connection with Mr. Benson, who is the plaintiff in the state court action, it's a different situation. As I've written in the *Silverblatt* case and in other cases, the principal consideration and the principal protection for absent class members is that when the class does well, the lead plaintiff does well or the class representative does well, and the mere fact that someone steps forward to be class plaintiff and reviews pleadings is not a reason to provide a differential payment. And so I adhere to my decision in *Silverblatt*, the rulings of other of my colleagues over the decades on this

precise issue, and I decline to approve the differential payment to the state court plaintiff.  There's no indication that he lost any vacation time, any bonus, any commissions, any out-of-pocket, nor is this a situation where an employee is rendered unemployable or nearly unemployable because they participated in a class action.

So I'm approving it as to IWA's request, but I'm not in the case of the state court plaintiff.

So those are my findings of fact and conclusions of law.

I have in front of me three documents—proposed order and final judgment, an order awarding attorneys' fees and expenses, and an order approving a plan of allocation.  Is there any objection to my approving with the modification relevant to the fee and differential payment which I indicated? Any objection to my signing those orders as tendered?

MR. HALL:  No, your Honor.

THE COURT:  All right.  Okay.  Congratulations to everybody on the successful conclusion of this action on a fair, reasonable, and adequate basis.  The litigation was conducted, as far as I could tell, in a very professional and efficient manner.  And I commend everyone for their work on the case.

And unless there's something additional, this session of court is adjourned.  Thank you.

N81ZZGOLC-NK

MR. FOX:  Thank you, your Honor.

MR. HALL:  Thank you, your Honor.

MR. FOX:  Thank you, your Honor, for your time and attention to this.

THE COURT:  And thank you to our guests for being here.

o0o